# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUFFOLK SUPERIOR COURT
TRIAL COURT DEPARTMENT
BUSINESS LAW SECTION
DOCKET NO:

KELLIE PEARSON, ROGER BURRELL, )
BRIAN GIVENS, and THE LAW )
OFFICES OF MARK BOOKER, on )
behalf of themselves and those )
similarly situated, )
        )
       Plaintiffs, )
        )
v. )
        )
THOMAS M. HODGSON, )
   Individually and )
   In His Official capacity as Sheriff )
   Of Bristol County )
        )
and )
        )
SECURUS TECHNOLOGIES, INC. )
        )
       Defendants. )



RECEIVED

MAY - 2 2018

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## COMPLAINT

### INTRODUCTION

1.    The Plaintiffs seek to end an illegal kickback scheme orchestrated by the

Defendants that has nearly doubled the cost of telephone calls made from Bristol

County correctional facilities—causing harm to prisoners, their children, and

other loved ones; making prisoner reentry to the community more difficult; and making legal representation more costly. Plaintiffs request an injunction to halt the unlawful payment scheme and seek restitution of the unjust enrichment collected through kickbacks.

2.      Prisoners in Bristol County who want to communicate by phone with family, friends and legal representatives have only one option available to them—they must use the privatized system operated by Defendant Securus Technologies, Inc. ("Securus"). The cost of these calls is grossly inflated because Securus agreed to pay the BCSO illegal kickbacks in order to secure its exclusive phone service contract—and now passes along the costs of those payments to prisoners' loved ones and attorneys.

3.      Securus funds these illegal kickbacks to the BCSO—prearranged cash payments sometimes referred to as "site commissions"—through charges to the consumers of its phone service, who have no option but to pay the inflated amounts billed to them by Securus when they receive a phone call.

4.      Defendant Thomas M. Hodgson ("Sheriff Hodgson"), the Sheriff and head of the BCSO, contracts with Securus to extract revenue from prisoners' phone calls through kickbacks not authorized by applicable Massachusetts law—seeking to evade limitations on fees by arranging for a private vendor to extract revenues from Plaintiffs on his behalf.

5.      For many—including those with physical disabilities or mental health conditions

2

that make other forms of communication difficult or impossible — phone calls are the primary means of maintaining family ties and securing legal counsel during their incarceration.

6. The excessive cost of these calls has imposed significant financial strain on prisoners and their loved ones, impeding their ability to maintain regular contact.

7. The inflated charges also impact prisoners' access to counsel, since phone calls are the primary means of communication between lawyers and their incarcerated clients and the cost of such calls is borne by the lawyers.

8. From August 2011, when Securus signed the current phone contract with the BCSO, to date, Securus has funneled payments to the BCSO, paid by arrangement between the Defendants in cash transfers either monthly or at other intervals.

9. Whether by monthly "site commission" payments, prearranged lump-sum payments in lieu of such commissions, the funding of administrative services, or any other device by which Securus conspires with Sheriff Hodgson to impose costs of incarceration upon prisoners, their loved ones, or their lawyers, Securus's practices violate Chapter 93A and other Massachusetts laws.

10. By contracting for and accepting these payments from Securus, without express authorization by the Massachusetts General Court or the Commissioner of the Department of Correction, Sheriff Hodgson is levying an unlawful tax or an

3

unlawful fee on Plaintiffs.

11.     Plaintiffs, individually and on behalf of all others similarly situated, bring this

class action to challenge Securus's practice of assessing the cost of unlawful

kickbacks from telephone calls made by prisoners in correctional facilities

operated by Sheriff Hodgson, and using the additional revenue to make

payments to the BCSO.

## PARTIES

12.     Kellie Pearson is a mental health clinician residing in Fall River, Massachusetts.

Between September 2015 and June 2017, Ms. Pearson received and paid for calls

from her fiancé, Michael T. Ray, who ultimately took his own life while

incarcerated at the Bristol County House of Correction. Prior to his death, Mr.

Ray called regularly to speak to Ms. Pearson and their daughter, a talented

sprinter who received encouragement from Mr. Ray by phone before her track

meets. The high cost of Securus phone calls placed a significant strain on Ms.

Pearson's finances, forcing her to make difficult decisions about paying to receive

these calls from her fiancé and making payments on other bills and expenses.

That financial strain was a constant source of stress for her and Mr. Ray—whose

desire to speak regularly with Ms. Pearson and his daughter was in tension with

the family's limited ability to pay for Securus calls.

13.     Roger Burrell was incarcerated at the Bristol County House of Correction. He

uses the telephone system operated by Securus to make calls to his mother, sister

4

and to legal counsel, all Massachusetts residents. Mr. Burrell, who is elderly, has no other option to communicate with his family: a medical issue prevents him from writing letters by hand and in-person visits are not a feasible option for his 95-year-old mother and disabled sister, both of whom live over 100 miles away and cannot travel easily.  The excessive cost of Securus phone calls has subjected Mr. Burrell's mother and sister to financial hardship and prevents them from having more regular contact with Mr. Burrell.

14.   Brian Givens was incarcerated at the Bristol County House of Correction. He uses the telephone system operated by Securus to make calls to his attorney and to his friend, both Massachusetts residents. Mr. Givens, who was being held on bond while awaiting trial, makes these phone calls to help coordinate his medical, financial, and legal needs.  He also makes Securus calls to speak to his elderly grandmother, who is experiencing heart trouble and is in poor health. When Mr. Givens is unable to reach his loved ones, he feels anxious and alone. Accordingly, the excessive cost of Securus phone calls has been a source of hardship for him and his family and friends.

15.   The Law Offices of Mark Booker is a criminal defense law firm in Boston, Massachusetts. The office receives and pays for calls from its incarcerated clients, including clients in Bristol County correctional facilities.

16.   Defendant Thomas M. Hodgson is, pursuant to G. L. c. 126, § 16, responsible for the custody and control of all prisoners committed to the Bristol County Jail, the

5

Bristol County House of Correction, the Bristol County Sheriff's Office Women's Center, the Carlos Carreiro Immigration Detention Center, and the Ash Street Jail and Regional Lock-Up.  His business address is 400 Faunce Corner Road, North Dartmouth, Massachusetts.  He is acting under color of law and is sued in his individual and official capacities.

17.     Defendant Securus Technologies, Inc. is a Delaware limited liability corporation with the business address 4000 International Parkway, Carrollton, Texas. Securus is a telecommunications service and technology provider that offers "inmate calling services" (ICS) to correctional facilities throughout Massachusetts and the United States.  Exclusionary terms in Securus's contracts with correctional facilities require that prisoners in facilities serviced by Securus be bound to use the corporation's services for all telephone communications with family members, friends, attorneys, and other approved individuals.

## FACTS

### A. General Allegations Concerning the Kickback Scheme

18.     Securus is the exclusive provider of ICS at all correctional facilities operated by the BCSO.  Those facilities include the Bristol County Jail, Bristol County House of Correction, Bristol County Sheriff's Office Women's Center, Carlos Carreiro Immigration Detention Center, and Ash Street Jail and Regional Lock-Up.

19.     When the BCSO solicits bids for telephone services, its Request for Response ("RFR") requires the payment of site "commissions" or other "compensations."

6

20.    The kickback scheme that has resulted from this requirement ensures that correctional departments have an incentive to select the telephone company that provides the highest kickback, rather than the service that offers the best value to Massachusetts consumers.

21.    Securus obtained its exclusive contract with the BCSO by agreeing to pay "commissions" to the BCSO.

22.    Under this contract, the kickback payments have been made in various forms: initially as monthly payments of 48 percent of revenues and later, pursuant to a contract amendment, as annual lump-sum payments of $820, 000, paid in advance.

23.    Under either formula, these kickback payments amount to nearly half of all gross revenues from collect and debit calls made from the BCSO correctional facilities.

24.    Securus passes on this cost to ICS consumers, approximately doubling what prison families, attorneys and other consumers pay, regardless of indigence.

25.    The kickbacks bear no relationship to the actual cost of providing ICS or the quality of ICS.

26.    Indeed, a number of states—including California, Michigan, Nebraska, New Mexico, New York, Rhode Island, and South Carolina—have banned the practice of collecting "site commissions" for ICS, with no resulting decrease in quality. These states have seen immediate and drastic price decreases with no impacts on service availability.

27.     These kickbacks function as de facto taxes or government fees, not authorized by

statute, assessed against and paid by the in-state recipients of calls made by

prisoners.

## B. The 2011 Site Commission Scheme

28.     In May 2011, the BCSO released an RFR for an inmate telephone system for the

BCSO.

29.     Section 5.1.21 of the BCSO's RFR required bidders to include in their responses

site "commissions" based on gross revenues from ICS.

30.     Section 4.14 of the BCSO's RFR states, "All commissions and/or compensations

must be paid to the BCSO."

31.     On May 23, 2011, Securus responded to the BCSO's RFR.  The cover letter of its

response read, in large bold print:

> Securus is proud to propose the following offer to the BCSO.
> **Proposed Commission Percentage = 48%**
> **Annual Funding for Two On-Site Administrator Positions - $130,000**
> **($65,000 each) to be Paid in a Lump Sum or Monthly**
> **$75,000 Annual Technology Fee Paid in Monthly Installments**

32.     On August 8, 2011, Securus executed a contract for Coinless Inmate & Public

Telephone System for the Bristol County Sheriff's Office ("the Contract").

33.     The Contract covered a term of five years and provided options for four

additional 1-year contract renewals.

34.     The Contract provided monthly payments of 48% of gross revenues from

Securus's ICS to the BCSO.

35.     From August 2011 to June 2013, Securus funneled an aggregate of $1,172,748.76
        in monthly payments to the BCSO.

## C. Government Actions Preceding Contract Amendments

36.     On September 26, 2013, the Federal Communications Commission ("FCC")
        released *Report And Order And Further Notice Of Proposed Rulemaking In The Matter
        Of Rates For Interstate Inmate Calling Services* ("First Order"), which determined
        that market rates for ICS consistently failed to meet just, reasonable, and fair
        standards. *Rates for Interstate Inmate Calling Services*, WC Docket No. 12-375,
        Report and Order and Further Notice of Proposed Rulemaking, 28 FCC Rcd.
        14107 (2013).

37.     The First Order effectively limited site commissions by requiring that interstate
        ICS rates be based on cost and holding that site commission payments are not
        legitimate costs of providing ICS.  *Rates for Interstate Inmate Calling Services*, WC
        Docket No. 12-375, Report and Order and Further Notice of Proposed
        Rulemaking, 28 FCC Rcd. 14107 (2013).

38.     On October 17, 2014, the FCC adopted the *Second Further Notice of Proposed
        Rulemaking* ("Second Notice"), which states: "Excessive rates are primarily
        caused by the widespread use of site commission payments – fees paid by ICS
        providers to correctional facilities or departments of corrections to win the
        exclusive right to provide inmate calling service at a facility."  *Rates for Interstate
        Inmate Calling Services*, WC Docket No. 12-375, Second Further Notice of

9

Proposed Rulemaking, 29 FCC Rcd. 13170 (2014).

39.    On October 22, 2015, the FCC adopted the *Second Report and Order and Third Further Notice of Proposed Rulemaking* ("Second Order"), which discouraged the practice of ICS site commissions.  The Second Order states: "The record is clear that site commissions are the primary reason ICS rates are unjust and unreasonable and ICS compensation is unfair, and that such payments have continued to increase since our Order."  *Rates for Interstate Inmate Calling Services*, WC Docket No. 12-375, Second Report and Order and Third Further Notice of Proposed Rulemaking, 30 FCC Rcd. 12763 (2015).

40.    The FCC's most recent action occurred on August 4, 2016, when it set new rate caps for local and long-distance inmate calling. Those rates were stayed by a court order. Order, *Securus Techs. v. FCC*, No. 16-1321 ("*Securus II*") (D.C. Cir. Nov. 2, 2016), ECF No. 1644302. As a result, the FCC's interim rate caps remain in effect for interstate long-distance calls, but not in-state long distance or local calls. Those interstate rates are 21 cents a minute for debit/prepaid calls, and 25 cents a minute for collect calls.

### D. The 2015 Contract Amendments

41.    On October 21, 2015, the day before the FCC was scheduled to release its Second Order on ICS, the BCSO and Securus executed an Amendment of Agreement for Coinless Inmate and Public Telephone System to the Contract.

42.    The Contract was amended to alter the form and timing of Securus's payments to

10

the BCSO through June 30, 2020—and specifying that the form and timing of

payments beyond that date would be contingent on future federal regulation of

monthly commissions:

> The CONTRACTOR, commencing upon the signing of this amendment,
> **shall** cease paying monthly commissions for the duration of the contract
> term ending June 30, 2020; and commissions will resume if allowed by law
> pursuant to the Federal Communications Commission (FCC) after that
> date.

43.   The amendment further provided that Securus would make a lump-sum

payment of "Eight Hundred Twenty Thousand Dollars ($820,000)" to the BCSO.

44.   In exchange for Securus's agreement to make a lump-sum payment in lieu of

monthly site commissions, the contract was amended to cancel the Contract

provision for four optional 1-year renewal periods, replacing it with a 4-year

renewal.  The amended contract states:

> Contracts will be made with the awarded Vendor for a five-year period
> from the date of contract execution and **will** be renewed for an additional
> four (4) year term at the sole discretion of the Sheriff's Office.

45.   On November 11, 2015, the BCSO and Securus executed a Second Amendment of

Agreement for Coinless Inmate and Public Telephone System to the Contract.

46.   These contract modifications altered the timing and form of the payments from

Securus to the BCSO, but the structure of the cash transfers remained the same:

now as before, Securus inflates the cost of every call with overcharges that are

then unlawfully redirected to BCSO as kickbacks.

11

### E. Securus's Rejection of Department of Telecommunications and Cable Jurisdiction and Rate Caps

47.     Securus is a party to an action brought by consumers of ICS before the Massachusetts Department of Telecommunications and Cable ("DTC") seeking just and reasonable ICS rates. See *Petition of Recipients of Collect Calls from Prisoners at Correctional Institutions in Massachusetts Seeking Relief from the Unjust and Unreasonable Cost of Such Calls*, No. DTC 11-16.  In a June 14, 2016, Order in that case, the DTC limited intrastate ICS calling rates to $0.21 per minute for prepaid, debit, and prepaid collect calls and $0.25 per minute for collect calls, and ordered service providers to file an amended rate schedule in compliance these rates with an effective date of June 20, 2016.

48.     On June 28, 2016, Securus notified the DTC that it intended to withdraw and cancel its tariff, stating that its ICS technology is Internet Protocol Enabled (IP-Enabled) and therefore exempt from regulation under G.L. c. 25C § 6A.  On July 1, 2016, it gave notice to the DTC officially withdrawing and canceling its tariff effective August 1, 2016.  On August 2, 2016, it requested to be removed from the service list of DTC 11-16.

49.     Since then, Securus has charged consumers for telephone calls far in excess of what is permitted by the DTC.

50.     The DTC has not issued any decision regarding the effect of G.L. c. 25C § 6A on its jurisdiction or sought to enforce its rate caps against Securus.

## CLASS ACTION ALLEGATIONS

51.     This is a class action under Rule 23 of the Massachusetts Rules of Civil Procedure

and Chapter 93A, Section 9, of the Massachusetts General Laws, which is the

Massachusetts Consumer Protection Act.

### A. Class Certification for Injunctive Relief
### (on behalf of Class Representatives Law Offices of Mark Booker, Mr. Burrell, and Mr. Givens, and those that they represent, against Defendants Securus and Sheriff Hodgson)

52.     Plaintiffs Law Offices of Mark Booker, Mr. Burrell, and Mr. Givens seek to certify

a Class for injunctive relief pursuant to Rule 23 of the Massachusetts Rule of Civil

Procedure and Chapter 93A, Section 9, of the Massachusetts General Laws. The

Class is defined as: all Massachusetts residents who in the future are subject to

Securus charges for use of ICS by BCSO prisoners under the terms of the

Contract as most recently amended.

53.     Pending any modifications necessitated by discovery, all persons who reside in

Massachusetts and reasonably anticipate or expect to use Securus's call services

to make or receive phone calls from the Bristol County Jail, Bristol County House

of Correction, Bristol County Sheriff's Office Women's Center, Carlos Carreiro

Immigration Detention Center, and Ash Street Jail and Regional Lock-Up—

including prisoners and their family members, friends, attorneys, and other

approved individuals—are members of this Class. This Class is referred to as the

"Injunctive Relief Class."

54.     Certification of the Injunctive Class is appropriate because Defendants—through

13

their execution of the amended Contract—have acted and are acting on grounds generally applicable to the Class.

55. Membership in the Class is so numerous that joinder of all members is impracticable. There are approximately 1,500 persons in BCSO custody at any given time, and the population is constantly changing as persons are incarcerated and released.

56. The assessment and collection of illegal kickbacks is causing Plaintiffs to suffer injuries similar to numerous other persons.

57. Plaintiffs' claims involve common questions of law and fact and are typical of the claims of the Class as a whole.

58. These common questions predominate over any questions affecting only individual Class members. The Defendants are acting on grounds generally applicable to the Injunctive Class, making equitable relief with respect to the Class appropriate.

59. The common facts, include, without limitation, the following:

    (a)    Plaintiffs are Massachusetts residents who may pay Securus for use of ICS by BCSO prisoners under the terms of the Contract;

    (b)    The cost of those telephone calls will be charged by and paid to Securus;

    (c)    Those telephone calls will, under the terms of the Contract, incur charges, a portion of which Securus will use to make payments to

14

the BCSO;

(d)     Securus's payments to the BCSO, made under the terms of the

Contract, are in violation of Massachusetts law;

(e)     Plaintiffs are entitled to injunctive relief enjoining Securus from

making illegal payments to the BCSO; and

(f)     Plaintiffs are entitled to injunctive relief compelling Defendants to

cease charging or collecting amounts from members of the

Injunctive Class in order to finance these illegal payments.

60.     Defendants are acting on grounds generally applicable to the Class so that final

declaratory and injunctive relief would be appropriate to the Class as a whole.

61.     Plaintiffs have a strong personal interest in the outcome of this litigation, are

represented by competent counsel, and will adequately and fairly protect and

represent the interests of the Class.

62.     A class action is superior to any other available method for a fair and efficient

adjudication of this controversy.  Separate actions by individual members of the

Class would create a risk of inconsistent or differing adjudications and delay the

ultimate resolution of the issues at stake.

63.     Injunctive relief compelling the Defendants to cease their unlawful conduct will

protect each member of the Injunctive Class from being subjected to the

Defendants' unlawful policies and practices. Therefore, declaratory and

injunctive relief with respect to the Injunctive Class as a whole is appropriate.

15

**B. Class Certification for Monetary Relief**
**(on behalf of Class Representatives Ms. Pearson and Law Offices of Mark Booker,**
**and those that they represent, against Defendant Securus)**

64.   Plaintiffs Ms. Pearson and the Law Offices of Mark Booker seek to certify a Class

for monetary relief pursuant to Rule 23 of the Massachusetts Rule of Civil

Procedure and Chapter 93A, Section 9.  The Class is defined as: all Massachusetts

residents who have paid Securus for use of ICS with BCSO prisoners since the

start of the Monetary Relief Class Period.

65.   The Monetary Relief Class Period is defined as beginning on the first day

permitted by the applicable statute of limitations and continuing until judgment

or execution of a settlement that is finally approved by this Court.

66.   Pending any modifications necessitated by discovery, all persons who resided in

Massachusetts and paid for Securus's call services during the Monetary Relief

Class Period from the Bristol County Jail, Bristol County House of Correction,

Bristol County Sheriff's Office Women's Center, Carlos Carreiro Immigration

Detention Center, and Ash Street Jail and Regional Lock-Up—including

prisoners and their family members, friends, attorneys, and other approved

individuals—are members of this Class. This Class is referred to as the

"Monetary Relief Class."

67.   Membership in the Class is so numerous that joinder of all members is

impracticable.  There are approximately 1,500 persons in BCSO custody at any

given time, and the population is constantly changing as persons are incarcerated

16

and released.

68. Securus's unfair and deceptive acts and practices have caused the Monetary

Relief Class to suffer similar injuries to numerous other persons similarly

situated.

69. Class members' claims involve common questions of law and fact and are typical

of the claims of the Monetary Relief Class as a whole.

70. These common questions predominate over any questions affecting only

individual Class members.  The common facts, include, without limitation, the

following:

    (a)    Between the start of the Monetary Relief Class Period and the present, members of the Monetary Relief Class paid for telephone calls by prisoners in BCSO facilities;

    (b)    Members of the Monetary Relief Class, were charged by Securus for the cost of those telephone calls;

    (c)    Those telephone calls, paid for by members of the Monetary Relief Class, incurred charges, a portion of which Securus used to make prearranged payments to the BCSO;

    (d)    Securus's payments to the BCSO, made under the terms of the Contract, is in violation of Massachusetts law; and

    (e)    Plaintiffs are entitled to refunds of the excess amounts they were charged in order for Securus to make the unlawful payments to the BCSO.

71. Plaintiffs have a strong personal interest in the outcome of this litigation, are

represented by competent counsel, and will adequately and fairly protect and

17

represent the interests of the Class.

72.  A class action is superior to any other available method for a fair and efficient adjudication of this controversy.  Separate actions by individual members of the Class would create a risk of inconsistent or differing adjudications and delay the ultimate resolution of the issues at stake. A class action is manageable because Securus and the BCSO have records of all calls, bills, and prisoners during the relevant Class Period.

## CLAIMS FOR RELIEF
### COUNT I
**(Declaratory Judgment, M.G.L. c. 231A – against Sheriff Hodgson, on behalf of the Injunctive Relief and Monetary Relief Classes)**

73.  Plaintiffs incorporate by reference the previous allegations as though fully set forth herein.

74.  A real and actual controversy exists between the parties as to whether the BCSO's receipt of payments from Securus under the terms of the Contract— including monthly "site commissions" and lump-sum payments—that are ultimately funded by prisoners and those with whom they communicate is contrary to the Supreme Judicial Court's decision in *Souza v. Sheriff of Bristol County*, 455 Mass. 573 (2010) and the Massachusetts state laws and regulations it is based upon.

75.  Plaintiffs are entitled to a judgment declaring that the manner in which the BCSO has contracted with Securus to provide for ICS in BCSO facilities is prohibited by

18

Massachusetts law.

## COUNT II
### (Declaratory Judgment, M.G.L. c. 231A – against Sheriff Hodgson, on behalf of the Injunctive Relief and Monetary Relief Classes)

76.   Plaintiffs incorporate by reference the previous allegations as though fully set forth herein.

77.   A real and actual controversy exists between the parties as to the legal status of the payments that are made by Securus to the BCSO under the terms of the Contract and ultimately funded by prisoners and those with whom they communicate.

78.   Plaintiffs are entitled to a judgment declaring that the inflated charges Plaintiffs paid are unlawful taxes, or in the alternative, that they are unlawful fees, because the BCSO has no statutory authority to exact such payments.

## COUNT III
### (Ultra Vires Taxation – against Sheriff Hodgson, on behalf of the Monetary Relief Class)

79.   Plaintiffs incorporate by reference the previous allegations as though fully set forth herein.

80.   The BCSO levied unlawful taxes on members of the Monetary Relief Class by requiring kickback payments that Securus passed directly on to Class members in the form of exorbitant, unnecessary exactions.

81.   Members of the Monetary Relief Class received no benefit in exchange for paying the kickback overcharges, which bear no relationship to the real costs of

19

providing ICS.

82. Members of the Monetary Relief Class had no choice but to pay the kickback

overcharges. The BCSO contracted exclusively with Securus to provide ICS. The

BCSO demanded "commissions" from Securus, which imposed their cost on

Class members as mandatory charges.

83. BCSO uses the kickback payments to fund unrelated expenditures, not to defray

any real costs of providing ICS to Plaintiffs.

84. Because the BCSO has no statutory authority to levy taxes, the payment scheme

is ultra vires and void.

85. The commission scheme violates Part 1, article XXIII of the Massachusetts

Constitution.

## COUNT IV
**(Ultra Vires Fee Collection – against Sheriff Hodgson, on behalf of the Monetary
Relief Class)**

86. Plaintiffs incorporate by reference the previous allegations as though fully set

forth herein.

87. In the alternative to Count III, the BCSO extracted unlawful fees from Plaintiffs

by requiring kickback payments that Securus passed directly on to members of

the Monetary Relief Class in the form of exorbitant, unnecessary exactions.

88. The inflated charges that were paid by members of the Monetary Relief Class

were taxes. If not, they were fees.

89. Because the BCSO has no statutory authority to charge unauthorized fees for the

20

costs of incarceration, the commission scheme is ultra vires and void.

90.     The commission scheme violates G.L. c. 126 § 29.

## COUNT V
### (Conversion – against Securus, on behalf of the Monetary Relief Class)

91.     Plaintiffs incorporate by reference the previous allegations as though fully set

forth herein.

92.     By taking Monetary Relief Class members' funds through coercion and without

legal authority, Securus has committed the tort of conversion.

93.     Securus has been unjustly enriched with revenues coerced or otherwise taken

from members of the Monetary Relief Class when they paid for telephone calls

with prisoners at BCSO facilities.

## COUNT VI
### (Violation of Massachusetts Consumer Protection Act, M.G.L. c. 93A – against Securus, on behalf of the Injunctive Relief and Monetary Relief Classes)

94.     Plaintiffs incorporate by reference the previous allegations as though fully set

forth herein.

95.     At all times relevant to this complaint, Defendant Securus was engaged in trade

or commerce.

96.     Plaintiffs and the Class members have suffered or may suffer injury directly due

to unfair or deceptive acts or practices engaged in by Securus, in violation of

M.G.L. c. 93A, § 2 and 940 C.M.R. § 3.16(2).

97.     The unfair or deceptive acts or practices include, but are not limited to:

21

(a)     Charging and collecting money from the Monetary Relief Class
        members for telephone calls made by prisoners, in order to make
        unlawful payments to the BCSO;

(b)     Taking Plaintiffs' funds through coercion and without legal
        authority; and

(c)     Using funds derived from the telephone calls pay "commissions"
        and prearranged lump-sum payments to the BCSO in violation of
        Massachusetts statutes and regulations.

98.    The actions of Securus described herein were performed willfully and
       knowingly.

99.    As a result, Plaintiffs and the Class members have incurred monetary harm in an
       amount to be determined at trial.

100.   On February 14, 2018, Plaintiffs, though their counsel, sent Securus a written
       demand for relief pursuant to M.G.L. c. 93A, § 9, identifying the claimants and
       reasonably describing the unfair or deceptive acts or practices committed and the
       injuries suffered.  A copy of the demand letter is attached hereto as Exhibit A.

101.   To date, Plaintiffs have received no reasonable offer of relief from Securus.
       Securus's refusal to grant relief was made in bad faith with knowledge or reason
       to know that Securus's acts violated M.G.L. c. 93A, § 2.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court enter judgment in their favor,
in favor of the Classes, and against Securus and Sheriff Hodgson as follows:

(a)     Certify this case as a class action with the named Plaintiffs as Class
        representatives and their attorneys as counsel on behalf of the Classes

22

described herein;

(b) Declare that the manner in which the BCSO, by and through Defendant Sheriff Hodgson, has contracted with Defendant Securus to provide ICS is contrary to applicable Massachusetts law;

(c) Declare that the payments made by Securus to the BCSO under the terms of the Contract, funded by prisoners and those with whom they communicate, constitute unlawful taxes or unlawful fees;

(d) Enter an order on behalf of the Injunctive Relief Class enjoining Securus (1) from making payments to the BCSO with funds derived from ICS; (2) by further requiring that ICS charges be reduced accordingly; and (3) from taking any action to interfere with Plaintiffs' right to maintain this action, or from retaliating in any way against Plaintiffs for bringing this action;

(e) Enter judgment against Securus for the greater of statutory damages or restitution of illegal payments collected from members of the Monetary Damages Class by reason of the unlawful conduct alleged above, including, without limitation, restitution for all funds Class members paid that were funneled to the BCSO as commissions or other prearranged lump-sum payments, plus interest upon any restitution awarded;

(f) Treble such monetary relief awarded to Plaintiffs as provided by M.G.L. c. 93A, § 9(3);

(g) Award the Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this action as provided by M.G.L. c. 93A, §9(4);  and

(h) Grant such other and further relief as the Court deems necessary and proper.

Dated: May 2, 2018

Respectfully submitted,

By _____
Stuart Rossman
*On Behalf of Plaintiffs' Counsel*

23

Stuart Rossman, MA Bar No. 430640
Joanna K. Darcus, MA Bar No. 601146
Brian Highsmith*
NATIONAL CONSUMER LAW
CENTER
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
F: (617) 542-8028
srossman@nclc.org
jdarcus@nclc.org
bhighsmith@nclc.org

Bonita Tenneriello, MA Bar No. 662132
Elizabeth Matos, MA Bar No. 671505
PRISONERS' LEGAL SERVICES OF
MASSACHUSETTS
10 Winthrop Square, 3rd Floor
Boston, MA  02110
P: (617) 482-2773
F: (617) 451-6383
btenneriello@plsma.org
lmatos@plsma.org

Roger Bertling, MA Bar No. 560246
THE WILMERHALE LEGAL SERVICES
CENTER OF HARVARD LAW
SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
P: (617) 522-3003
F: (617) 522-0715
rbertlin@law.harvard.edu

John Roddy, MA Bar No. 424240
Elizabeth Ryan, MA Bar No. 549632
BAILEY & GLASSER LLP
99 High Street, Suite 304
Boston MA 02110
P: (617) 439-6730
F: (617) 951-3954

24

jroddy@baileyglasser.com
eryan@baileyglasser.com

*Admitted to practice law in Maryland;
application pending for limited practice
in Massachusetts under SJC Rule 3.04.

*Attorneys for Plaintiffs and Proposed
Classes*

NCLC®

NATIONAL
CONSUMER
LAW
CENTER®

Advancing Fairness
in the Marketplace for All

BOSTON HEADQUARTERS
7 Winthrop Square, Boston, MA 02110-1245
Phone: 617-542-8010 • Fax: 617-542-8028

WASHINGTON OFFICE
1001 Connecticut Avenue NW, Suite 510, Washington, DC 20036
Phone: 202-452-6252 • Fax: 202-296-4062

www.nclc.org

February 14, 2018

Dennis Reinhold
Vice President and General Counsel
Securus Technologies, Inc.
4000 International Parkway
Carrollton, Texas 75007

Re:   Massachusetts Consumer Protection Act
      M.G.L. c. 93A Demand Letter on behalf of
      Kellie Pearson, the Law Offices of Mark Booker, Roger Burrell, and Brian Givens,
      individually and as representative for all others similarly situated.

Dear Mr. Reinhold:

We represent Kellie Pearson, the Law Offices of Mark Booker, Roger Burrell, and Brian Givens, acting individually and on behalf of all others similarly situated. We write this demand letter pursuant to Massachusetts General Laws, Chapter 93A, Section 9, of the Massachusetts Consumer Protection Act. Securus Technologies Inc. ("Securus") has engaged in unfair and deceptive practices related to charges for the delivery of telephone service for prisoners at correctional facilities operated by the Bristol County, Massachusetts Sheriff's Office ("BCSO"). This letter describes the conduct for which Securus is liable under Massachusetts law. It also states the resulting injuries to Kellie Pearson, the Law Offices of Mark Booker, Roger Burrell, and Brian Givens (and other class members), and sets forth a demand for relief.

Kellie Pearson is a mental health clinician residing in Fall River, Massachusetts. Between September 2015 and June 2017, Pearson received and paid for calls from her husband, Michael T. Ray, who was during that time incarcerated at the Bristol County House Of Correction.

The Law Offices of Mark Booker is a criminal defense law firm in Boston, Massachusetts. The office receives and pays for calls that it receives from its incarcerated clients, including clients in Bristol County correctional facilities.

Roger Burrell is currently incarcerated at the Bristol County House Of Correction. He uses the telephone system operated by Securus to make calls to his mother and sister and to legal counsel, all Massachusetts residents.

Brian Givens is currently incarcerated at the Bristol County House Of Correction. He uses the telephone system operated by Securus to make calls to his attorney and to his friend, both Massachusetts residents.

Securus competes for exclusive telephone-service provider contracts in state and county correctional facilities across the country. During the contract procurement process, Securus includes "site commissions" in its contract proposals. Site commissions are fees added to the costs of a phone call from the correctional facilities to induce sheriffs and other facility operators to select among providers based on economic self-interest, rather than on only the price and quality of inmate calling services. Securus has a current contract with the BCSO that includes site commissions or analogous payments.

Securus has violated the Massachusetts Consumer Protection Act and caused harm to Pearson (and class). The violations include, but are not limited to:

a. Inflation of the call rates and fees charged by Securus for calls made by prisoners in correctional facilities operated by the BCSO, and using the additional revenue to pay "site commissions" to the BCSO. These fees are charged to prisoners' families, friends, and attorneys, but the fees bear no relationship to the actual cost of providing inmate calling services and are not used to enhance call quality or service;

b. Conversion of the monies paid by Pearson and the class for artificially high calling rates used by Securus to pay illegal and unfair kickback payments to the Sheriff;

c. In Massachusetts, sheriffs are not authorized to charge or receive site commissions from prisoner collect calls. As the Supreme Judicial Court of Massachusetts has held, sheriffs are not permitted to charge fees absent an explicit statutory mandate. *Souza v. Sheriff of Bristol Cty.*, 455 Mass. 573, 579 (2010). Neither the sheriff nor Securus has legislative authorization to charge or distribute excess fees from prisoner collect calls. Because no statutory scheme "affirmatively permit[s]" such payments, the site commissions that Securus pays to the BCSO, although it is a government entity, are illegal and not immune from the coverage of the Massachusetts Consumer Protection Act. *Com. v. Fremont Inv. & Loan*, 452 Mass. 733, 750 (2008);

d. To the extent that the BCSO uses the site commissions it receives from Securus, derived from prisoner calls, to pay for running its facilities, Pearson and the class members have been coerced by Securus into subsidizing the continued incarceration of BCSO prisoners.

e. Because Securus operates as a monopoly provider to a captive market, Pearson and the class members have no choice but to use its services. Securus has abused its market power by inflating the price of calls to fund unlawful site commissions. That practice is both oppressive and unconscionable, and is thus unfair and deceptive within the meaning of the Massachusetts Consumer Protection Act. M.G.L. ch. 93A, sec. 2; Mass. Regs. Code. Tit. 940, sec. 3.16(1).

As a result of the activities of Securus described above, and other activities, Pearson (and class) have suffered substantial injury due to the inflated prices they must pay when they receive collect calls from prisoners in BCSO jails. Therefore, Securus is liable for these unfair and deceptive practices.

What appears in this letter is not an exhaustive recitation of the facts or law that may give rise to Securus's liability under the Massachusetts Consumer Protection Act.  This letter serves merely as "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" as required by M.G.L. c. 93A, sec. 9.

Kellie Pearson, the Law Offices of Mark Booker, Roger Burrell, and Brian Givens (and class) request the following relief as a result of Securus's conduct described above: reimbursement of all excess fees and charges paid by Pearson and class during the period within the applicable statute of limitations to Securus, including but not limited to the site commissions Securus paid to the BCSO, as a result of its unfair and deceptive practices. Pearson and class further request that Securus immediately cease and desist from charging inflated call rates and fees, and cease and desist from paying site commissions or analogous amounts to the BCSO.

Failure to make a reasonable written tender of relief within thirty (30) days of your receipt of this demand letter may result in Securus's liability for treble damages, costs, and reasonable attorneys' fees pursuant to Mass. Gen. Laws. Ann, sec. 93A, sec. 9.

We look forward to hearing from you.

Sincerely,

Roger Bertling, Esq.
The Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, Massachusetts 02130-2246
(617) 390-2572
FAX: (617) 522-0109

Brian Highsmith, Esq.
National Consumer Law Center
7 Winthrop Square, Suite 400
Boston, MA 02110-1245
(617) 542-8010
FAX: (617) 542-8028

3

Bonita Tenneriello, Esq.
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA  02110
(617) 482-2773 ext. 106
FAX: (617) 451-6383

4