# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KELLIE PEARSON, ROGER BURRELL, )
BRIAN GIVENS, and THE LAW )
OFFICES OF MARK BOOKER, on )
behalf of themselves and those )
similarly situated, )
                            )
        Plaintiffs, )
                            )
v. )       Case No. 18-cv-11130
                            )
THOMAS M. HODGSON, )
  Individually and )
  In His Official capacity as Sheriff )
  Of Bristol County )
                            )
and )
                            )
SECURUS TECHNOLOGIES, INC. )
                            )
        Defendants. )

## SECURUS TECHNOLOGIES, INC.'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 4

ARGUMENT .............................................................................................................. 5

     I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST SECURUS ................... 6

          A.  Plaintiffs Have Not Alleged the Elements of Conversion ............................... 6

          B.  Plaintiffs Failed to State a Claim for Violation of Chapter 93A ..................... 9

     II.    THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIMS AGAINST SECURUS ...................................................................................... 14

     III.   PLAINTIFFS BURRELL AND GIVENS LACK STANDING TO BRING THIS CASE AND THEIR CLAIMS ARE MOOT ........................................... 17

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Tel. & Telegraph Co. v. Cent. Office Tel. Inc.*,
  524 U.S. 214 (1998)...................................................................................................15, 16

*Arsberry v. Illinois*,
  244 F.3d 558 (7th Cir. 2001) ..................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................6

*BayBank v. Bornhofft*,
  694 N.E.2d 854 (Mass. 1998) ................................................................................10

*Beliveau v. Ware*,
  33 N.E.3d 459 (Mass. App. 2015) ...........................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................5

*Buster v. George W. Moore, Inc.*,
  783 N.E.2d 399 (Mass. 2003) ................................................................................11

*Byrd v. Goord*,
  No. 00 CIV. 2135 (GBD), 2005 WL 2086321 (S.D.N.Y. Aug. 29, 2005) ..............17

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*,
  217 F.3d 33 (1st Cir. 2000).....................................................................................12

*Commonwealth. v. DeCotis*,
  316 N.E.2d 748 (Mass. 1974) ................................................................................13

*Cummings v. HPG Int'l, Inc.*,
  244 F.3d 16 (1st Cir. 2001).....................................................................................10

*D'Alessandro v. NIPMUC, Inc.*,
  061071, 2007 WL 738929 (Mass. Super. Jan. 16, 2007).......................................7, 9

*D'Aloisio v. Morton's, Inc.*,
  172 N.E.2d 819 (Mass. 1961) ..................................................................................8

*Edinburg v. Allen Squire Co.*,
  12 N.E.2d 718 (Mass. 1938) ..................................................................................7, 8

*Fernandes v. Rodrigue*,
  646 N.E.2d 414, 416 (Mass. App. Ct. 1995) ..........................................................11

*Foreign Car Ctr., Inc. v. Essex Process Serv., Inc. (No. 1)*,
  821 N.E.2d 483 (Mass. App. Ct. 2005) ..................................................................7

*Global Tel\*Link v. FCC*,
  859 F.3d 39 (D.C. Cir. 2017), *amended and superseded*, 866 F.3d 397 (D.C.
  Cir. 2017) ................................................................................................ *passim*

*GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP*
  *plc*, CIV.A. 12-10293-DPW, 2012 WL 5197545 (D. Mass. Oct. 18, 2012) ...........................11

*Haley v. City of Boston*,
  657 F.3d 39 (1st Cir. 2011)..................................................................................15

*James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.*,
  112 F.3d 1240 (1st Cir. 1997)..........................................................................9, 10

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  412 F.3d 215 (1st Cir. 2005)................................................................................12

*McGuire v. Ameritech Servs., Inc.*,
  253 F. Supp. 2d 988 (S.D. Ohio 2003) ..................................................................17

*Miranda v. Michigan*,
  141 F. Supp. 2d 747 (E.D. Mich. 2001)..................................................................17

*Mojica v. Securus Technologies, Inc.*,
  No. 5:14-cv-05258-TLB, Dkt. 370, Mem. and Order (W. D. Ark.  June 29,
  2018) ..................................................................................................................6

*Natick Auto Sales, Inc. v. Dep't of Procurement and Gen. Servs.*,
  715 N.E.2d 84 (Mass. App. Ct. 1999) ..................................................................11

*Norris v. Global Tel Link Corp.*,
  No. 16-11323-LTS, 2016 WL 4574639 (D. Mass. Sept. 1, 2016)...........................16

*O'Hara v. Standard Fire Ins. Co.*,
  No. 16-12378-GAO, 2018 WL 1557254 (D. Mass. Mar. 30, 2018) ........................12

*Orr v. Dawson*,
  No. CV06-53-S-BLW, 2006 WL 8427300 (D. Idaho Sept. 25, 2006)....................16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  491 F. Supp. 2d 20 (D. Mass. 2007) ......................................................................13

*PMP Assocs., Inc., v. Globe Newspaper Co.*,
    321 N.E.2d 915 (Mass. 1975) ...............................................12

*Schiappa v. Nat'l Marine Underwriters, Inc.*,
    775 N.E.2d 791 (Mass. App. Ct. 2002) ...................................7

*Schwanbeck v. Federal-Mogul Corp.*,
    578 N.E.2d 789 (Mass. App. 1991) *reversed on other grounds* 592 N.E.2d
    1289 (Mass. 1992) .............................................................9

*Stote v. Maloney*,
    No. 03-12067 RWZ, 2006 WL 839497 (D. Mass. Mar. 31, 2006)...................................15, 16

*Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.*,
    126 F. Supp. 2d 40 (D. Mass. 2001) .....................................10

*Town of Norwood v. Fed. Energy Regulatory Comm'n*,
    217 F.3d 24 (1st Cir. 2000)..................................................15

*Valdez v. State*,
    54 P.3d 71 (N.M. 2002) .....................................................17

*White v. R.M. Packer Co., Inc.*,
    635 F.3d 571 (1st Cir. 2011) ...............................................13

*Zuckerman v. McDonald's Corp.*,
    35 F. Supp. 2d 135 (D. Mass. 1999) .....................................11

**Statutes**

47 U.S.C. § 203(a) (1990)...........................................................14

Mass. Gen. Laws ch. 93A, §2 (2018) ........................................9

Mass. Gen. Laws ch. 106, § 2-302(1) (2018) ............................9

Mass. Gen. Laws ch. 159, § 19 (2014) ......................................14

**Rules & Regulations**

103 C.M.R. § 482.06(6) .........................................................2, 12

Fed. R. Civ. P. 8(a)(2).................................................................5

Fed. R. Civ. P. 12(d) ................................................................15

**Other Authorities**

90 C.J.S. Trover and Conversion § 6 (2018) ..............................7

## INTRODUCTION

Securus Technologies, Inc. ("Securus") provides inmate calling services ("ICS") pursuant to contracts executed with prisons and jails. These contracts are exclusive and awarded after a competitive public bidding process conducted in accordance with applicable procurement codes and policies. ICS is not the same as residential or business telephone service. Rather, Securus's ICS involves significant customized security features that are necessary to preserve prison order and public safety. Due to the heightened need for security at prisons and jails, throughout the country, only one telecommunications provider may provide services in any prison or jail.

In August 2011, following a public bidding process, Securus entered into a contract with the Bristol County Sheriff's Office ("BCSO") for the provision of ICS. As part of its contract from 2011 through 2015, Securus was required to pay the BCSO monthly site commissions in the amount of 48% of its gross revenues. As a result, those commissions constituted a cost incurred by Securus for the provision of ICS, which increased calling rates offered by Securus. During roughly that same period, 2011 through 2016, Securus had a tariff filed with the Massachusetts Department of Telecommunications and Cable ("DTC"), which specifically set the rates Securus charged for its ICS services.

In their Complaint, Plaintiffs argue that the rates Securus charged for phone calls made between Massachusetts residents and prisoners in Bristol County (in other words, intrastate calls) were too expensive as a result of Securus's site commission payments. Plaintiffs now attack the commissions Securus was contractually required to pay to the BCSO, using the inflammatory and inaccurate terms "kickback" and "scheme" to describe them.

Plaintiffs' Complaint, however, is more notable for what it conceals than what it alleges. While Plaintiffs rely explicitly on several FCC Orders which address calling rates charged for ICS, they make no mention of the fact that on June 13, 2017, in *Global Tel\*Link v. FCC*, the

D.C. Circuit overturned the bulk of the FCC Orders upon which Plaintiffs rely. 859 F.3d 39 (D.C. Cir. 2017), *amended and superseded* by 866 F.3d 397 (D.C. Cir. 2017), *reh'g denied*, 2017 U.S. App. LEXIS 18597 (D.C. Cir. Sept. 26, 2017). In *Global Tel\*Link,* among other things, the D.C. Circuit made clear that (1) site commission payments are costs to ICS providers, and accordingly, there is no categorical proscription for recovering site commission payments through rates and fees related to intrastate ICS; and (2) the FCC cannot regulate rates and fees related to intrastate ICS. Because site commissions constitute costs of doing business of ICS providers, like Securus, the D.C. Circuit found that it is only rational and proper that ICS providers would take into account those costs in setting their rates. The *Global Tel\*Link* case also made very clear that demands for site commission refunds, such as those effectively made here by Plaintiffs in this case, are unfounded. Plaintiffs conveniently omitted mention of this decision, which overturned the key holdings in the FCC Orders upon which their Complaint rests.

Likewise, while Plaintiffs claim that site commissions are contrary to law, they fail to mention that site commissions are specifically ***permitted*** for Massachusetts state facilities by regulation. *See* 103 Mass. Code Regs. § 482.06(6) (2018). Throughout the country, Securus's ICS services (and those of its competitors) are governed by the statutes and policies of the resident states, counties, and correctional facilities that operate prisons and jails. In their Complaint, Plaintiffs point out that some state legislatures have enacted laws that, as a matter of policy, prohibit site commissions or otherwise circumscribe them. Massachusetts, however, is simply *not* one of those states.

Each of Plaintiffs' claims asserted against Securus are legally defective. Plaintiffs allege claims for conversion (Count V) and violation of Chapter 93A (Count VI) against Securus, based

upon its calling rates and payment of site commissions to the BCSO. Both of these claims should be dismissed pursuant to Rule 12(b)(6).

*First,* Plaintiffs fail to state a claim for either conversion or Ch. 93A. Plaintiffs fail to state a claim for conversion because there is nothing wrongful about Securus charging the rates it charged. Further, Plaintiffs voluntarily paid the rates charged by Securus and there can be no "coercion" where a complaining party voluntarily turned over their money. Plaintiffs' Chapter 93A claim should be dismissed because it is derivative of their conversion claim, which suffers from fatal defects. In addition, Plaintiffs failed to plead *any* wrongful conduct by Securus, let alone *egregiously* wrongful conduct that even comes close to what is required to plead a Chapter 93A violation.

*Second,* even if Plaintiffs could state a claim, the filed rate doctrine limits it. The "filed rate doctrine" prohibits any telecommunications consumer from filing a lawsuit based on any rate that was properly filed with the appropriate regulator (here, the Massachusetts DTC). From May 2014 (the beginning of the putative class period) through August 2016, Securus had a tariff (*i.e.*, a schedule of its services and rates) on file with the Massachusetts DTC. The filed rate doctrine bars both of Plaintiffs' claims insofar as they seek relief for calls made during that time period. Thus, at a minimum, this Court should dismiss all claims against Securus based on rates charged during and prior to August 2016.

*Third,* for the reasons more fully stated in the Motion to Dismiss separately filed by Defendant Sheriff Hodgson, Plaintiffs Roger Burrell and Brian Givens do not allege that they have ever paid for any ICS calls or were even incarcerated at the time the Complaint was filed. Accordingly, they lack standing and their injunctive claims are moot.

## FACTUAL BACKGROUND

Securus is a telecommunications service and technology provider that offers ICS to correctional facilities throughout Massachusetts and the United States. Complaint ("Compl.") ¶ 17. Securus is the exclusive provider of ICS at all correctional facilities operated by the BCSO. Compl. ¶ 18.

In 2011, the BCSO solicited bids for ICS and, in its Request for Response ("RFR"), required the payment of site "commissions" or other "compensations" based on gross revenues from ICS. Compl. ¶¶ 19, 29. As part of a detailed public bidding process, Securus offered monthly payments of site commissions in the amount of 48% of its gross revenues from Securus's provision of ICS to the BCSO. Compl. ¶¶ 28-31. Securus and BCSO entered into a contract in August 2011. Compl. ¶32. From August 2011 to June 2013, Securus paid monthly site commissions to the BCSO, as required by the parties' contact. Compl. ¶ 35. According to the Complaint, because the BCSO required site commissions to be paid, Securus incurred increased operating costs and charged higher rates commensurate with those increased costs. *See* Compl. ¶¶ 1, 46. Plaintiffs do not allege that Securus made additional profit through increased calling rates; rather, they allege that Securus "nearly doubled" the rates in order to cover costs. *See* Compl. ¶¶ 1, 31, 46. Until 2016, Securus had a tariff filed with the DTC, which reported the rates Securus charged for its ICS services. Compl. ¶ 48.

In October 2015, Securus ceased paying monthly site commissions to BCSO, and the parties amended the contract to provide for a single lump-sum payment of $820,000 from Securus to BCSO in exchange for a four-year renewal period. Compl. ¶¶ 42-43, 46. Since the 2015 amendment, Securus has paid no monthly site commissions to the BCSO. Compl. ¶¶ 43, 46.

In June 2017, in *Global Tel*Link v. FCC*, 859 F.3d 39 (D.C. Cir. 2017), *amended and superseded*, 866 F.3d 397 (D.C. Cir. 2017), the D.C. Circuit reviewed and reversed the FCC's

Orders concerning site commissions. The *Global Tel\*Link* decision made clear that payment of site commissions by ICS providers was permissible and that the FCC's "categorical exclusion of site commissions from the calculus used to set ICS rate caps" was unlawful and defied "reasoned decision making because site commissions obviously are costs of doing business incurred by ICS providers." *Global Tel\*Link*, 866 F.3d at 413.

This case pertains solely to intrastate calls – calls from prisoners in Bristol County to Massachusetts residents. Compl. ¶¶ 2, 52-53, 66. Plaintiffs are those "who want to communicate by phone[;]" they are the voluntary recipients of the telephone services that Securus provides. Compl. ¶ 2. Plaintiffs assert no complaints with respect to the quality of the service Securus provides, and allege no misrepresentation by Securus in the rates charged. Rather, Plaintiffs allege that they do not like the price of the phone calls, seeking "immediate and drastic price decreases with no impacts on service availability." Compl. ¶ 26. Plaintiff Kellie Pearson alleges that she "received and paid for calls from her fiancé, Michael T. Ray," who was incarcerated at the Bristol County House of Corrections. Compl. ¶ 12. Plaintiff The Law Offices of Mark Booker alleges that it "receives and pays for calls from its incarcerated clients, including clients in Bristol County correctional facilities." Compl. ¶ 15. Plaintiffs Roger Burrell and Brian Givens both allege that they were incarcerated at the Bristol County House of Correction, but neither alleges that he paid for any phone calls. Compl. ¶ 13, 14.

## ARGUMENT

A properly pleaded complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

Plaintiffs' Complaint fails to state a valid claim against Securus.

## I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST SECURUS.

### A.    Plaintiffs Have Not Alleged the Elements of Conversion.

In Count V, Plaintiffs assert a conversion claim, alleging that Securus has taken the Monetary Relief Class members' funds "through coercion and without legal authority." Compl. ¶ 92. There are three elements to a claim of conversion: (1) intentional and wrongful conduct; (2) exercise of ownership or control over the plaintiffs' personal property; and (3) at the time when the defendant had no legal right of possession. *Beliveau v. Ware*, 33 N.E.3d 459, 462 (Mass. App. 2015). Plaintiffs have failed to plead any of these elements. Paying for a service in an amount in excess of what a person would prefer to pay — but choosing that service and paying for it nevertheless — does not constitute conversion under Massachusetts (or any) law.

Simply put, there was nothing wrongful about Securus's conduct. Conversion requires the *wrongful* exercise of ownership or control. The Complaint concedes that Securus's conduct was part of a competitive bidding process. Compl. ¶¶ 28-31. The Complaint alleges that among its costs were site commissions that comprised 48% of its revenue. Compl. ¶ 31. As a result, the Complaint's allegation that Securus charged approximately "double" the amount per phone call, Compl. ¶ 1, only serves to show that Securus was merely charging rates that allowed it to maintain the same level of return it would receive without the site commissions. As the Court acknowledged in *Global Tel*Link v. FCC*, 859 F.3d 39 (D.C. Cir. 2017), *amended and superseded* by 866 F.3d 397, 413 (D.C. Cir. 2017), such behavior is not only permissible but rational, and there is nothing wrongful about it. *See e.g. Mojica v. Securus Technologies, Inc.*, No. 5:14-cv-05258-TLB, Dkt. 370, Mem. and Order (W. D. Ark. June 29, 2018) (granting summary judgment to Securus in a nationwide class action brought against Securus by plaintiffs alleging excessive rates charged by

Securus due to site commissions). Plaintiffs have failed to allege that Securus's receipt of their funds was "wrongful," because there was no unlawful action by Securus.

Further, because Plaintiffs *voluntarily* paid for the rates Securus charged for its service Plaintiffs cannot show that Securus had no legal right to possession of their money. A claim for conversion is actually similar to a claim for *theft*; the only distinction being that theft requires intent to permanently deprive the owner of property. *Schiappa v. Nat'l Marine Underwriters, Inc.*, 775 N.E.2d 791, 793 (Mass. App. Ct. 2002). Conversion occurs where "there is no right to take the property at all, or if the amount that is taken exceeds in value the amount authorized." *Foreign Car Ctr., Inc. v. Essex Process Serv., Inc. (No. 1)*, 821 N.E.2d 483, 487 (Mass. App. Ct. 2005). There must be a *taking*. Where a plaintiff has agreed to *give* defendant his property, he or she cannot sustain a conversion claim barring allegations of misrepresentation or fraud.

For this reason, in Massachusetts, a well-recognized defense to conversion is the plaintiff's agreement to the defendant's possession of the property at issue. "'[C]onsent by the owner of property to an act, which otherwise might be found to amount to a conversion, would preclude such a finding.'" *D'Alessandro v. NIPMUC, Inc.*, 061071, 2007 WL 738929, at *2 (Mass. Super. Jan. 16, 2007) quoting *Edinburg v. Allen Squire Co.*, 12 N.E.2d 718, 721 (Mass. 1938); *see* 90 C.J.S. Trover and Conversion § 6 (2018) ("In order to constitute conversion, nonconsent to the possession and disposition of the property by the defendant is indispensable. An essential element of conversion is an absence of owner consent or permission."); 18 Am. Jr. 2d Conversion § 1 (2018) (Conversion "is the unauthorized assumption and exercise of right of ownership over goods belonging to another to the exclusion of the owner's rights…. Such dominion is without the owner's consent and without lawful justification.").

Under Massachusetts law, a court should dismiss a conversion claim brought by a plaintiff who voluntarily turned over the property, in the absence of allegations of fraud or misrepresentation. *See D'Aloisio v. Morton's, Inc.*, 172 N.E.2d 819, 823 (Mass. 1961) (no conversion where that plaintiff voluntarily provided a mink coat to defendant for storage and repair); *Edinburg*, 12 N.E.2d at 721 (affirming the trial judge's granting of defendant's motion for judgment on a conversion claim based on oral agreement wherein plaintiff agreed that defendant could remove plaintiff's property from premises). Plaintiffs state that when "[p]risoners in Bristol County [ ] *want* to communicate by phone . . . [t]he cost of these calls is grossly inflated." Compl. ¶ 2 (emphasis added). Plaintiffs voluntarily accepted the rates charged by Securus by *choosing* to make, receive and pay for those calls.

For example, Plaintiff Pearson alleges that she has had "to make difficult *decisions about paying* to receive these calls from her fiancé and making payments on other bills." Compl. ¶ 12 (emphasis added). It is unfortunate for Ms. Pearson that her fiancé is in prison and that she has to make difficult decisions about whether to receive and pay for calls from him. That allegation, however, acknowledges the fact that ultimately she did decide to accept and pay for the calls from her fiancé in prison. Securus did not somehow take her money without her consent; she made the conscious, and allegedly difficult, decision to accept her fiancé's call and pay Securus.

Plaintiffs also describe how phone calls have become the "primary means" of communication for many prisoners and their contacts because other forms of communication are more "difficult." Compl. ¶ 5. That, for some writing letters and in-person visits to the prison are less convenient, or even not feasible, *see* Compl. ¶¶ 5, 13, does not make the act of making and receiving the phone calls any less voluntary. While there may be "no option" but to pay the rates charged, there is always the option not to make or receive the phone calls. Since each Plaintiff

who paid the rates complained of voluntarily accepted the service and the rates and Plaintiffs have not pled any misrepresentation by Securus in the rates it charged, *cf. D'Alessandro, Inc.*, 2007 WL 738929, at *2, Plaintiffs cannot now allege that they were wrongfully deprived of their money.

**B.      Plaintiffs Failed to State a Claim for Violation of Chapter 93A.**

In Count VI, Plaintiffs allege that Securus has violated Chapter 93A by "[c]harging and collecting money from the Monetary Relief Class members for telephone calls made by the prisoners, in order to make unlawful payments to the BCSO" and "[u]sing funds derived from the telephone calls to pay . . . the BCSO."  Compl. ¶ 97.  The allegations that Securus charged alleged "inflated rates" for the services provided cannot support a viable cause of action for violation of Chapter 93A.

Section 2 of Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, §2 (2018).  A determination of unfairness is a question of fact for the trier of fact, but the boundaries of what may qualify as a Chapter 93A violation is a question of law for the court.  *See James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co*., 112 F.3d 1240, 1251 (1st Cir. 1997); Mass. Gen. Laws ch. 106, § 2-302(1) (2018) (unconscionability is a matter of law for the court); *Schwanbeck v. Federal-Mogul Corp.*, 578 N.E.2d 789, 803–804 (Mass. App. 1991) *reversed on other grounds* 592 N.E.2d 1289 (Mass. 1992) ("[a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, … the boundaries of what may qualify for consideration as a c. 93A violation is a question of law.").  Plaintiffs fail to state a Ch. 93A claim for at least two reasons.

<u>First</u>, to support their Ch. 93A claim, Plaintiffs do not allege any scheme, misrepresentation, or acts by Securus beyond the activities forming the basis for their other claim against Securus.  *See* Complaint ¶¶ 94-99.  Because Plaintiffs' Chapter 93A claim is entirely

dependent on Plaintiffs' other cause of action, which is not legally viable, the Chapter 93A claim should be dismissed. Where dismissal is warranted with respect to all other statutory or common law claims pled by a plaintiff, a Chapter 93A claim based entirely upon those claims typically cannot stand on its own. The First Circuit has stated that "[w]hile it is true that an action under Chapter 93A need not articulate every element of a common law tort in order to survive, … a defendant's allegedly unfair conduct 'must at least come within shouting distance of some established concept of unfairness.'" *Cummings v. HPG Int'l, Inc*., 244 F.3d 16, 25 (1st Cir. 2001) (citations omitted). In *Cummings*, the First Circuit held that "[t]here can be no claim of unfairness based on a misrepresentation where, as we previously found, [plaintiff] has failed to show [defendant] made *any* deceitful or even negligently false statements." *Id.* This Court has reached the same outcome based on the same rationale. In evaluating the viability of a Chapter 93A claim in light of its grant of summary judgment as to the antitrust claims on which the Chapter 93A claim relied, this Court decided:

> [T]he chapter 93A claim cannot fall within the penumbra of plaintiff's statutory claims since those claims have been dismissed. In addition, plaintiff makes no unique arguments related to his Chapter 93A claim and has offered no evidence sufficient to show defendants committed unfair or deceptive acts …. [a]s a result, plaintiff's 93A claims perish along with their antitrust hosts.

*Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.*, 126 F. Supp. 2d 40, 50 (D. Mass. 2001).

These cases are not outliers. Where a plaintiff's Chapter 93A claim is entirely dependent on "host" statutory and common law claims and makes no unique allegations specific to the Chapter 93A claim, the Chapter 93A is dismissed. *See e.g. James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co*., 112 F.3d 1240, 1251 (1st Cir. 1997) (where insurer did not breach a fiduciary duty to its agent, the agent's 93A claim based on breach of fiduciary duty also failed.); *BayBank v. Bornhofft*, 694 N.E.2d 854, 859 (Mass. 1998) ("In keeping with our holding above, to the extent

that the defendant's c. 93A claim is based on an alleged violation of ECOA, it is without merit."); *Fernandes v. Rodrigue*, 646 N.E.2d 414, 416 (Mass. App. Ct. 1995) ("As to the 93A claim, we think it is absorbed in and vanishes with the [failed] misrepresentation claim."); *Natick Auto Sales, Inc. v. Dep't of Procurement and Gen. Servs.*, 715 N.E.2d 84, 90 (Mass. App. Ct. 1999) (where summary judgment was granted against claims based on tortious interference with contract, summary judgment on related 93A claims was also granted); *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 147 (D. Mass. 1999) ("[b]ecause plaintiffs' common law misrepresentation claims fail, plaintiffs are unable, as a matter of law, to proceed on their chapter 93A claim"). If this Court finds that dismissal is warranted with respect to Plaintiffs' conversion claim against Securus, the same result should be reached here and this Court should, too, dismiss Plaintiffs' Chapter 93A claim.

Second, Plaintiffs do not even allege any deception in their Complaint; they do not allege that Securus misrepresented the rates charged or that Securus deceived them in any other way. Instead, they tether their claim to allegations of unfair acts alone. Chapter 93A gives no definition of "unfairness," and Massachusetts courts have refrained from establishing such a definition. Instead, "whether an act is unfair or deceptive is best discerned from the circumstances of each case." *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 413-14 (Mass. 2003) (internal quotations and citation omitted). But, to sustain a Chapter 93A claim, "[t]he defendant's conduct must be not only wrong, but also egregiously wrong." *GMO Trust ex rel. GMO Emerging Country Debt Fund v. ICAP PLC*, No. 12-10293-DPW, 2012 WL 5197545, at *10 (D. Mass. Oct. 18, 2012) (internal quotations and citation committed). Adopting the federal "cigarette rule," Massachusetts courts have enumerated several factors to be considered when determining whether a practice is unfair: "(1) whether the practice ... is within at least the penumbra of some common-law, statutory, or

other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."[1] *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005) (quoting *PMP Assocs., Inc., v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)). It is the degree by which the conduct is wrong that is key. This Court has stated: "To trigger liability under c. 93A, courts have said that the conduct in question must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce, ... have an extortionate quality that gives it the rancid flavor of unfairness ..." *O'Hara v. Standard Fire Ins. Co.*, No. 16-12378-GAO, 2018 WL 1557254, at *8 (D. Mass. Mar. 30, 2018) (quoting *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir. 2000)).

Plaintiffs have failed to allege conduct that is even wrongful or unfair, let alone egregiously so. There is no common-law, statute or some other concept of unfairness here. The opposite is true. Plaintiffs should not be able to bring a Ch. 93A claim where Massachusetts specifically allows site commissions to Massachusetts correctional facilities operated by the Department of Corrections. 103 Mass. Code Regs. 482.06(6). That no regulation expressly authorizes this practice as to local sheriffs is of no practical importance; it is the policy statement that matters here, and a Massachusetts regulation favors that practice as to a department of the Commonwealth engaging in virtually the same contracts, with the same providers, and for the same services.

Further, the recent decision of the D.C. Circuit in *Global Tel*Link v. FCC*, 859 F.3d 39 (D.C. Cir. 2017), *amended and superseded*, 866 F.3d 397 (D.C. Cir. 2017)—a decision that overturned an FCC action that Plaintiffs rely upon, Compl. ¶ 39—makes clear that challenges to

---

[1] Since Plaintiffs simply challenge increased calling rates, this third factor relating to "substantial injury" has not been alleged by Plaintiffs and thus is irrelevant.

site commission refunds are unfounded. The court there held that payment of site commissions by ICS providers is permissible and that the FCC's prior "categorical exclusion of site commissions from the calculus used to set ICS rate caps" was unlawful and "defies reasoned decision making because *site commissions obviously are costs of doing business incurred by ICS providers*." *Global Tel\*Link*, 866 F.3d at 413 (emphasis added). Certainly, ICS providers would take into account those costs in setting their rates, and that self-sustaining reaction to a permissible contractual arrangement cannot sustain a Ch. 93A cause of action. Indeed, Securus has not identified a single case in which a court has ever held a telephone services provider of ICS liable for paying site commissions and charging rates to recoup that cost.

Where plaintiffs allege unfair acts under Ch. 93A based on high prices charged to them, their stories require something more than high prices alone in order to meet this standard. There must be a situation where, for example, the prices are so high that the value received was "unconscionably disproportionate to the price paid," such as where a defendant was exacting a fee in exchange for no services *at all*, and where the plaintiffs, "at [the] mercy" of the defendants, had had to pay the fee in order to sell their homes. *Commonwealth. v. DeCotis*, 316 N.E.2d 748, 754–55 (Mass. 1974). *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 95 (D. Mass. 2007), *aff'd*, 582 F.3d 156 (1st Cir. 2009) (finding defendants actions outrageous, unethical, and egregious where spreads for a drug were as high as 1,000% and companies were "marketing those spreads so that doctors would choose a drug based on profit rather than therapeutic value"). There must be some uniquely wrongful conduct to rise to the level of a Ch. 93A violation. *Cf. White v. R.M. Packer Co., Inc.*, 635 F.3d 571, 589 (1st Cir. 2011) (no Ch. 93A violation for high prices of gasoline sold during market emergency where neither the absolute

increases in retail gas price nor the increases in retailers' gross margins during emergency showed any gross disparity in price in violation of state price-gouging regulation.).

The "nearly double[d]" rates for telephone services that Plaintiffs allege that Securus charges them, Compl. ¶ 1, in order to recoup its higher operating costs due to a contractual arrangement that a Massachusetts regulation has explicitly blessed, does not come close to this standard of "egregiously wrongful" conduct. By acknowledging that Securus is charging "nearly double" the rates in order to "pass[] along the costs" of payments of 48%, *i.e.*, nearly half, of its monthly revenue to the BCSO, Plaintiffs actually *concede* there is no price-gouging, and that Securus is roughly maintaining it profit margin in the face of increased costs. Compl. ¶¶ 1, 2, 31. Such rationale and proportional pricing cannot give rise to a claim for violation of Chapter 93A, as a matter of law.

## II. THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIMS AGAINST SECURUS.

To the extent Plaintiffs have stated a claim (and they have not), the filed rate doctrine bars recovery for any challenged conduct that occurred prior to August 1, 2016. The Federal Communications Act of 1934 and Massachusetts law require telecommunication carriers to file schedules, or "tariffs," with the appropriate regulatory agency setting forth the telecommunication services they offer and the rates applied to those services. *See* 47 U.S.C. § 203(a) (1990); Mass. Gen. Laws ch. 159, § 19 (2014) ("No common carrier shall…charge, demand, exact, receive or collect a different rate, joint rate, fare, telephone rental, toll or charge for any service rendered or furnished by it, or to be rendered or furnished, from that applicable to such service as specified in its schedule filed with the department and in effect at the time."). Securus filed tariffs with the

DTC in the years 2011 through 2016,[2] withdrawing its tariff effective August 1, 2016.  Compl. ¶¶ 48-50 (recognizing that Securus withdrew its tariff on the basis that it ICS technology is Internet Protocol Enabled and therefore it was exempt from regulation under Mass. Gen. Laws ch. 25C § 6A, a decision that the DTC has not challenged).  Under the "filed rate doctrine," Plaintiffs cannot obtain relief in this Court for the period during which Securus had a tariff on file.

The "filed rate doctrine" provides that the rates charged by carriers cannot be legally challenged in court; rather, "filings with [a] regulatory agency prevail over unfiled contracts or other claims seeking different rates or terms than those reflected in the filings with the agency." *Town of Norwood v. Fed. Energy Regulatory Comm'n*, 217 F.3d 24, 28 (1st Cir. 2000).  Put another way, any challenge must be directed to the regulatory agency itself because the filed rate doctrine "restricts lawsuits against [telecommunications carriers] to challenge these rates."  *Stote v. Maloney*, No. 03-12067 RWZ, 2006 WL 839497, at *4 (D. Mass. Mar. 31, 2006) (dismissing RICO and Ch. 93A claims against Verizon based on the doctrine).  That Plaintiffs may attempt to "characterize their claims as anything but direct challenges to allegedly inflated rates, for example, as allegations of racketeering activity," does not circumvent this doctrine.  *Id.*  "[T]he fact that a rate claim is susceptible to such re-characterization does not render the doctrine ineffective."  *Id.* (citing *Am. Tel. & Telegraph Co. v. Cent. Office Tel. Inc.*, 524 U.S. 214, 223 (1998)).

For this reason, numerous courts around the country—including this Court—have dismissed challenges to site commissions pursuant to the filed rate doctrine.  In 2006, prisoners at MCI-Cedar Junction brought an action against, among many others, the Massachusetts Department

---

[2] The tariffs Securus filed with the DTC covering years 2011 through August 1, 2016 are available to the public via a public records request made to the DTC.  For this Court's convenience, they are attached at **Exhibit A**.  Since it is a public record, this Court may properly consider these tariffs on this motion to dismiss.  Fed. R. Civ. P. 12(d); *Haley v. City of Boston*, 657 F.3d 39, 44 (1st Cir. 2011) (on a motion to dismiss a court may "embellish [the facts in the complaint] with facts contained in documents incorporated within the complaint and facts susceptible to judicial notice").

of Correction and Verizon Communications, Inc., alleging a conspiracy between Verizon and the Department of Correction resulting in allegedly inflated rates for inmate telephone services in violation of the RICO Act, 42 U.S.C. § 1983, and Ch. 93A. *Stote*, 2006 WL 839497, at *1. This Court found that since the plaintiffs' RICO, 1983, and Ch. 93A claims alleging a conspiracy between the Mass DOC and Verizon "fundamentally implicate Verizon's rates, these claims must largely be dismissed under the filed rate doctrine." *Id.*, at *4.

In 2016, an inmate at a Massachusetts DOC facility sued Global Tel Link Corporation, raising various grievances with the rates charges for the phone calls made from correctional facilities and with the quality of the services provided, and charging Global Tel Link with violations of the FCA. *Norris v. Global Tel Link Corp.*, No. 16-11323-LTS, 2016 WL 4574639, at *3 (D. Mass. Sept. 1, 2016). Although in that case the Court did not grant the defendant's motion, the Court recognized that, "to the extent that [the plaintiff] takes issue with *intrastate* telephone rates," the filed rate doctrine would have barred the claims had it been clear from the complaint, like it is here, that the rates were in fact filed with the proper regulatory authority. *Id.* (emphasis added).

Many other courts have dismissed claims challenging site commissions pursuant to this "undeniably strict"[3] doctrine. *See Arsberry v. Illinois*, 244 F.3d 558, 567 (7th Cir. 2001) (filed rate doctrine barred plaintiffs' site commissions claims "[i]nsofar as [their] concern is with the purely vertical arrangement between each defendant telephone company and a particular prison or jail"); *Orr v. Dawson*, No. CV06-53-S-BLW, 2006 WL 8427300, at *7 (D. Idaho Sept. 25, 2006) (finding that "to the extent inmates are merely challenging the telephone rate, their claims [are] precluded

---

[3] *AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222-23 (1998) (filed rate doctrine is "undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress") (citation omitted).

by the filed rate doctrine"); *Byrd v. Goord*, No. 00 CIV. 2135 (GBD), 2005 WL 2086321, at *7 (S.D.N.Y. Aug. 29, 2005) (dismissing plaintiffs' claims regarding the exorbitant rates charged for collect telephone calls made by prison inmates against MCI on the basis of the filed rate doctrine); *McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1012 (S.D. Ohio 2003) (dismissing site commissions claim under Federal Telecommunications Act); *Miranda v. Michigan*, 141 F. Supp. 2d 747, 757-58 (E.D. Mich. 2001) (dismissing site commissions claims against two defendants under filed rate doctrine); *Valdez v. State*, 54 P.3d 71, 75 (N.M. 2002) (upholding dismissal of plaintiffs' challenge to site commissions under filed rate doctrine).

Plaintiffs allege that Securus paid monthly site commissions to BCSO between August 2011 and sometime in late 2015. Compl. ¶¶ 32, 41, 42, 45. They allege that Securus agreed to make a lump-sum payment in lieu of site commissions when the contract was amended in late 2015. Compl. ¶¶ 43-45. Plaintiffs recognize that the October and November 2015 "contract modifications altered the timing and form of the payments from Securus to the BCSO." Compl. ¶ 46. Yet at the time of the challenged payments, Securus had a tariff filed with the DTC; Securus only "officially withdr[ew] and cancel[led] its tariff effective August 1, 2016." Compl. ¶ 48. Accordingly, whatever complaint Plaintiffs have regarding the effect of the site commissions on Securus's intrastate phone rates from May 2014 to August 2016, the DTC is, or was, the exclusive forum to adjudicate that claim. Accordingly, the filed rate doctrine bars recovery for any challenged conduct that occurred prior to August 1, 2016.

## III. PLAINTIFFS BURRELL AND GIVENS LACK STANDING TO BRING THIS CASE AND THEIR CLAIMS ARE MOOT.

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety. Even if it does not do so, Plaintiffs Burrell and Givens should be dismissed from the action because, for the reasons described in more detail in Sheriff Hodgson's Memorandum of Law in

Support of his Motion to Dismiss, Section III.A, they do not allege they paid for any Securus phone calls and therefore do not have standing to bring claims, and additionally, as former prisoners, Compl. ¶¶ 13, 14, their claims for injunctive relief are moot.

## CONCLUSION

Wherefore, Securus Technologies, Inc. respectfully requests that this Court dismiss each of the two counts asserted against it and dismiss it from this case.

Dated: July 20, 2018                                      Respectfully submitted,

                                                          **SECURUS TECHNOLOGIES, INC.**

                                                          By: */s/ Elizabeth Herrington*
                                                          Jason D. Frank, BBO #634985
                                                          Amanda McGee, BBO #678883
                                                          Morgan, Lewis & Bockius LLP
                                                          One Federal Street
                                                          Boston, MA  02110-1726
                                                          Tel. 617.951.8000
                                                          Fax. 617.951.8736
                                                          jason.frank@morganlewis.com
                                                          amanda.mcgee@morganlewis.com

                                                          Elizabeth B. Herrington *
                                                          Megan R. Braden *
                                                          Morgan, Lewis & Bockius LLP
                                                          77 West Wacker Drive
                                                          Chicago, IL 60601-5094
                                                          Tel. 312.324.1445
                                                          Fax. 312.324.1001
                                                          beth.herrington@morganlewis.com
                                                          megan.braden@morganlewis.com

                                                          *Attorneys for Securus Technologies, Inc.*

                                                          *\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I, Elizabeth Herrington, hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2018.

*/s/ Elizabeth Herrington*
Elizabeth Herrington