# EXHIBIT A

## TITLE PAGE

This tariff applies to intrastate telecommunication services furnished by Securus Technologies, Inc. between one or more points in the Commonwealth of Massachusetts. This tariff is on file with the Massachusetts Department of Telecommunications & Cable ("M.D.T.C."), and copies may be inspected, during normal business hours, at the Company's principal place of business at 14651 Dallas Parkway, Suite 600, Dallas, Texas 75254. Securus Technologies, Inc. was formerly known as Evercom Systems, Inc.

Issued: October 22, 2010

Effective: November 21, 2010

Issued by:  Curtis L. Hopfinger, Director -- Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## CHECK SHEET

This tariff contains sheets 1 through 28, inclusive, each of which is effective on the date shown thereon.

| Sheet | Revision |
|-------|----------|
| 1 | Original |
| 2 | Third* |
| 3 | First* |
| 4 | Original |
| 5 | Original |
| 6 | Original |
| 7 | First* |
| 8 | First* |
| 9 | Original |
| 10 | Original |
| 11 | Original |
| 12 | Original |
| 13 | Original |
| 14 | Original |
| 15 | Original |
| 16 | First* |
| 17 | First* |
| 18 | First* |
| 18.1 | Original* |
| 19 | First* |
| 20 | First* |
| 21 | First* |
| 22 | First* |
| 22.1 | First* |
| 23 | First* |
| 24 | First* |
| 25 | Second* |
| 25.1 | Original |
| 26 | Third* |
| 27 | Original |
| 28 | Original |

* denotes revisions

Issued: June 16, 2016                                    Effective:  June 20, 2016

Issued by:  Curtis L. Hopfinger, Director -- Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## TABLE OF CONTENTS

| | | |
|---|---|---|
| TITLE PAGE | 1 | |
| CHECK SHEET | 2 | |
| TABLE OF CONTENTS | 3 | |
| TARIFF FORMAT | 5 | |
| EXPLANATION OF SYMBOLS | 6 | |
| 1. DEFINITIONS | 7 | |
| 2. APPLICATION OF TARIFF | 9 | |
| 3. GENERAL REGULATIONS | 11 | |
|    3.1 Use of Services | 11 | |
|    3.2 Liability of the Company | 11 | |
|    3.3 Responsibilities of the Customer | 13 | |
|    3.4 Cancellation or Interruption of Services | 13 | |
| 4. RATE DETERMINATION | 15 | |
|    4.1 Time of Day Rate Periods | 15 | |
|    4.2 Distance Measurements | 16 | |
|    4.3 Call Timing | 16 | |
| 5. PAYMENTS AND CHARGES | 17 | |
|    5.1 Billing Arrangements | 17 | |
|    5.2 Validation of Credit | 18 | |
|    5.3 Contested Charges | 18 | |
|    5.4 Returned Check Charge | 18 | |
|    5.5 Payment Fee | 18.1 | (T) |
|    5.6 Deposits | 19 | |
|    5.7 Taxes | 19 | |
| 6. RATES AND CHARGES | 19 | |
|    6.1 Local, IntraLATA and InterLATA Rates and Charges | 19 | (D) |
|    6.2 Prepaid Service | 23 | (D) |

Issued: June 16, 2016          Effective: June 20, 2016

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## TABLE OF CONTENTS (Continued)

7.     PROMOTIONS                                      27
       7.1     General                                 27
       7.2     Demonstration of Services               27
       7.3     Comparable Pricing Promotion            27
       7.4     Debit Services Sponsor Programs          27

8.     CONTRACT SERVICES                               28
       8.1     General                                 28

Issued: October 22, 2010                          Effective:  November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## TARIFF FORMAT

**Sheet Numbering:** Sheet numbers appear in the upper right corner of the sheet. Sheets are numbered sequentially. However, new sheets are occasionally added to the tariff. When a new sheet is added between sheets already in effect, a decimal is added. For example, a new sheet added between sheets 11 and 12 would be Sheet 11.1.

**Revision Numbers:** Revision numbers also appear in the upper right corner of each sheet where applicable. These numbers are used to indicate the most current sheet version on file with the Massachusetts Department of Telecommunications & Cable. For example, 4th Revised Sheet 13 cancels 3rd Revised Sheet 13. Consult the Check Sheet for the sheets currently in effect.

**Paragraph Numbering Sequence:** There are nine levels of paragraphing coding. Each level of coding is subservient to its next higher level:

2
2.1
2.1.1
2.1.1.A
2.1.1.A.1
2.1.1.A.1.(a).I
2.1.1.A.1.(a).I.(i)
2.1.1.A.1.(a).I.(i).1

**Check Sheets:** When a tariff filing is made with the M.D.T.C. an updated Check Sheet is included. The Check Sheet lists the sheets contained in the tariff, with a cross reference to the current Revision Number. When new sheets are added, the Check Sheet is changed to reflect the addition. All revised sheets in a given filing are designated by an asterisk (*) on the Check Sheet. The tariff user should refer to the latest Check Sheet to find out if a particular sheet is the most current on file with the M.D.T.C.

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## EXPLANATION OF SYMBOLS – CODING OF TARIFF REVISIONS

When changes are made in any tariff sheet, a revised sheet will be issued canceling the tariff sheet affected. Charges will be identified on the revised sheet(s) through the use of the following symbols:

| | | |
|---|---|---|
| C | - | Change in Regulation, but No Change in Rate or Charge |
| D | - | Delete or Discontinue |
| I | - | Changed Resulting in an Increase in Rate or Charge |
| M | - | Moved from Another Tariff Location without Change |
| N | - | New |
| R | - | Change Resulting in a Reduction in Rate or Charge |
| T | - | Change in Text, but No Change in Rate or Regulation |

Issued: October 22, 2010

Effective:  November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 1. DEFINITIONS

For the purpose of this tariff, the following definitions will apply:

<u>Ancillary Service Charge</u> – Any charge Consumers may be assessed for the use of Inmate Calling Services that are not included in the per-minute charges assessed for individual calls. (N)

<u>Authorized Fee</u> – A government authorized, but discretionary, fee which a Provider must remit to a federal, state, or local government, and which the Company is permitted, but not required, to pass through to Consumers. An Authorized Fee may not include a markup, unless the markup is specifically authorized by a federal, state, or local statute, rule, or regulation.

<u>Automated Payment Fees</u> – Credit card payment, debit card payment, and bill processing fees, including fees for payments made by interactive voice response (IVR), web, or kiosk. (N)

<u>Collect Calls</u> – Calls billed not to the originating telephone number, but to the called telephone number upon acceptance, via an automated interface, of the call for which charges are billed.

<u>Common Carrier</u> – A company or entity providing telecommunications services to the public.

<u>Company</u> - Securus Technologies, Inc.

<u>Confinement Facility, Correctional Facility, or Correctional Institution</u> – A Jail or a Prison. (N)

<u>Customer</u> – The person or entity responsible for the payment of charges for services offered under this tariff.

<u>Debit Card</u> – A card issued by the Company which provides the Customer or other authorized user with a debit account, an authorization code and instructions for accessing the carrier's network. Customers purchase usage on a prepaid basis.

<u>Debit Card Call</u> – A service whereby the customer or other authorized user dials all of the digits necessary to route and bill a call placed from a location other than his/her residence or normal place of business. Service is accessed via a "1-800" or other access code dialing sequence. Usage charges for Debit Card Calls are deducted from the Customer's debit account on a real time basis. (T)

<u>End User</u> – A customer who receives local, intrastate, or interstate calls using the company's services. (N)

<u>Inmate</u> – A person detained at a Jail or Prison, regardless of the duration of the detention.

<u>Inmate Calling Service</u> – A service that allows Inmates to make calls to individuals outside the Correctional Facility where the Inmate is being held, regardless of the technology used to deliver the service.

<u>Jail</u> – A facility of a local, state, or federal law enforcement agency that is used primarily to hold individuals who are (1) awaiting adjudication of criminal charges; (2) post-conviction and committed to confinement for sentences of one year or less; or (3) post-conviction and awaiting transfer to another facility. The term also includes city, county or regional facilities that have contracted with a private company to manage day-to-day operations; privately-owned and operated facilities primarily engaged in housing city, county or regional Inmates; and facilities used to detain individuals pursuant to a contract with U.S. Immigration and Customs Enforcement. (N)
(M)

Material moved to First Revised Sheet No. 8.

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 1. DEFINITIONS (Continued)

<u>Live Agent Fee</u> – A fee associated with the optional use of a live operator to complete Inmate Calling Services transactions.                                                                                  (N)
                                                                                                  (N)

The below content was previously found on Original Sheet No. 7.                                   (M)

<u>Local Access and Transport Area (LATA)</u> – The term "Local Access Transport Area" denotes a geographical area established by the US District Court for the District of Columbia in Civil Action No 82-0192.

<u>M.D.T.C.</u> – Used throughout this tariff to mean the Massachusetts Department of Telecommunications & Cable or any successor thereto.

<u>Measured Charge</u>- A charge assessed on a per minute basis in calculating the charges for a completed call. Measured Charges are specified as a rate per minute which applies to each minute, with fractional minutes of use counted as one full minute.

<u>Person – to – Person Collect Calls</u> – Calls billed not to the originating telephone number, but to a specific called party upon acceptance, via an automated interface, of the call for which charges are billed.                    (M)

<u>Prison</u> – A facility operated by a territorial, state, or federal agency that is used primarily to confine individuals   (N)
convicted of felonies and sentenced to terms in excess of one year. The term also includes public and private facilities that provide outsource housing to other agencies such as the State Departments of Correction and the Federal Bureau of Prisons; and facilities that would otherwise fall under the definition of a Jail but in which the   (N)
majority of Inmates are post-conviction or are committed to confinement for sentences of longer than one year.   (D)

<u>Station</u> – Any location from which calls may be placed or received.

<u>Telecommunications</u> – The transmission of voice communications or, subject to the transmission capabilities of the services, the transmission of data, facsimile, signaling, metering, or other similar communications.

Issued: June 16, 2016                                                                     Effective: June 20, 2016

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 2.    APPLICATION OF TARIFF

2.1    This tariff contains the regulations and rates applicable to intrastate telecommunications services provided by the Company between points within the Commonwealth of Massachusetts. The Company's services are furnished subject to the availability of facilities and subject to the terms and conditions of this tariff.

2.2    The services offered by the Company subject to this tariff consist of furnishing Collect and Person to Person Collect Calls through store and forward technology incorporating an automated operator and the resale of transmission service of other carriers.

2.3    The Company's Debit Card Call services are offered for Customer use 24 hours a day, seven days a week, to all valid terminating locations specified in this section. Access to the Company's debit services is via a toll-free number. The Customer must input a valid authorization code in addition to the destination number with area code. Purchase of a Debit Card or establishment of a debit account entitles the consumer to access the carrier's network for a present amount of usage. Usage will be debited from the available card or account balance in full-minute increments on a real-time basis. Customers will be interrupted with an announcement when the account balance is about to be exhausted. Balances in debit amounts are non-refundable and will expire on the date specified on the Debit Card, expiration occurs within one year from the state of establishment or last renewal unless otherwise specific in writing by the carrier. Unlike a deposit or advance payment, the Debit Card account balance is not held against future payment as all service is available for immediate consumption. For Customer accounts provide with a renewal option, Customers may renew or increase the available usage balance within an account by making additional payments to the Company or the Company's authorized agents.

2.4    Because the services offered hereunder are provided to inmates of a correctional facility or similar institution, special stipulations may apply. These stipulations are designed to preserve the integrity and security of the facility, the safety of the public and to reduce fraud and harassment. When deemed appropriate by the facility administration, these include: providing outward only calls; providing 0+ Collect and/or Person to Person Collect Calls only for local, IntraLATA toll and InterLATA toll calls and blocking access to all other types or forms of calls; blocking access to local Directory Assistance (411), long distance Directory Assistance (555-1212), 911 calls, toll free numbers including 1- 800, 700, 900, 950, 10XXX and any other telephone numbers the facility administration directs; limiting hours during which telephone service is available to inmates; and/or limiting call duration to a time interval established by the facility administration.

Issued: October 22, 2010                                    Effective: November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 2. APPLICATION OF TARIFF (Continued)

2.5    Service furnished by the Company may be connected with services or facilities of other authorized Common Carriers and with private systems, subject to the technical limitations established by the Company. The services of the Company are not part of a joint undertaking with any other entity providing telecommunications channels facilities or services but do involve the resale of the Message Toll Services (MTS) and Wide Area Telecommunication Services (WATS) of underlying common Carriers who may be subject to the jurisdiction of the M.D.T.C.

2.6    The rates and regulations contained in this tariff apply only to the services furnished by the Company and do not apply, unless otherwise specified, to lines facilities, or services provided by a local exchange telephone company or other Common Carrier for use in accessing the services of the Company.

2.7    The Company's obligation to furnish service hereunder is dependent upon its ability to secure and retain, without unreasonable expense, suitable facilities and contractual rights necessary for the provision of the service.

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

3. **GENERAL REGULATIONS**

    3.1 **Use of Services**

    3.1.1 The Company's services may be used for any lawful purpose consistent with the transmission and switching parameters of the telecommunications facilities utilized in the provision of services.

    3.1.2 The use of the Company's services to make calls which might reasonably be expected to frighten, abuse, torment, or harass another or in such a way as to unreasonably interfere with use by others is prohibited.

    3.1.3 The use of the Company's services without payment for service or attempting to avoid payment for service is prohibited.

    3.1.4 The Company's services are available for use 24 hours per day, seven days per week, except as set forth in Section 2.3 of this tariff.

    3.1.5 The Company does not transmit messages pursuant to this tariff, but its services may be used, for that purpose.

    3.1.6 The Company's services may be denied for non-payment of charges or for other violations of this tariff.

    3.2 **Liability of the Company**

    3.2.1 The Company shall not be liable for loss or damage sustained by reason of any failure in or breakdown of facilities associated with the Company's service or for any interruption or delay of service, whatever shall be the cause of such failure, breakdown, or interruption and whether negligent or otherwise and however long it shall last. In no event shall the Company's liability for any services exceed the charges applicable under this tariff for such service.

Issued: October 22, 2010

Effective: November 21, 2010

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

3.    **GENERAL REGULATIONS (Continued)**

    3.2    **Liability of the Company (Continued)**

        3.2.2    The Company shall be indemnified and saved harmless by any Customer or by any other entity against claims for libel, slander, or the infringement of copyright arising from the material transmitted over its services; and against all other claims arising out of any act or omission of a Customer or of any other entity in connection with services provided by the Company.

        3.2.3    The Company shall not be liable for any act or omission of any entity furnishing facilities or services connected with or provided in conjunction with the services of the Company.

        3.2.4    The Company shall not be liable for any person injury or death of any person or persons, or for any loss or damage sustained by reason of acts, mistakes, omissions, errors or defects in providing its services, whatever shall be the cause and whether negligent or otherwise.

        3.2.5    The Company shall not be liable for an shall be indemnified and saved harmless by any Customer or other entity from any and all loss, claims, demands, suits or other action or any liability whatever, whether suffered, made instituted or asserted by any Customer or any other entity for any person injury to, or death of, any person or persons, and for any loss, damage, defacement or destruction of the premises of any Customer or any other entity or any other property whether owned or controlled by the Customer or others, caused or claimed to have been caused, directly or indirectly, by any act or omission of the Customer or others or by any installation, operation, failure to operate, maintenance, removal, presence, condition, location or use of facilities or equipment provided by the Company. No agents or employees of any other entity shall be deemed to be the agents or employees of the Company.

        3.2.6    The Company shall not be liable for any failure of performance due to causes beyond its control, including, without limitation, acts of God, fires, floods or other catastrophes, national emergencies, insurrections, riots or wars, strikes, lockouts, work stoppages or other labor difficulties, and any law, order regulation or other action of any governing authority or agency thereof.

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

3.     **GENERAL REGULATIONS (Continued)**

    3.3  **Responsibilities of the Customer**

        3.3.1     The Customer is responsible for payment of applicable charges set forth in this tariff.

        3.3.2     The Customer is responsible for compliance with applicable regulations set forth in this tariff.

        3.3.3     The Customer is responsible for establishing its identity as often as necessary during the course of a call.

        3.3.4     The Customer is responsible for identifying the station, party, or person with whom communication is desired and/or made at the called number.

    3.4  **Cancellation or Interruption of Services**

        3.4.1     Without incurring liability the company may immediately discontinue services or may withhold the provision of ordered or contracted services:

            3.4.1.A  For nonpayment of any sum due the Company for the services,

            3.4.1.B  For violation of any of the provisions of this tariff,

            3.4.1.C  For violation of any law, rule, regulation or policy of any governing authority having jurisdiction over the Company's services, or

            3.4.1.D  By reason of any order or decision of a court, state or federal regulatory body or other governing authority prohibiting the Company from furnishing its services.

        3.4.2     Without incurring liability, the Company may interrupt the provision of services at any time in order to perform tests and inspections to assure compliance with tariff regulations and the proper installation and operation of the Company's equipment and facilities and may continue such interruption until any items of noncompliance or improper equipment operation so identified are rectified.

Issued: October 22, 2010

Effective:  November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

3.      **GENERAL REGULATIONS (Continued)**

   3.4      **Cancellation or Interruption of Services (Continued)**

      3.4.3   Service may be discontinued by the Company, without notice, by blocking traffic to certain countries, cities or exchanges or by blocking calls using certain authorization codes, when the Company deems it necessary to take such action to prevent unlawful use of its services, and as set forth in Section 2.3 of this tariff. The Company will restore service as soon as it can be provided without undue risk, and will, upon request by the Customer affected, assign a new authorization code to replace the one that has been deactivated.

      3.4.4   The Company may refuse to provide service without prior notice when the called party refuses to accept the charges or has subscribed to billed number screening, prohibiting acceptance of such calls.

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 4.    RATE DETERMINATION

### 4.1    Time of Day Rate Periods

Time of day rate periods are determined by the time of day at the location of the calling station. When a call designs in one rate period and ends in another, the rate in effect in each rate period applies to the portion of the call occurring within that rate period. In the event that a minute is split between two rate periods, the rate in effect at the start of that minute applies.

Time of Day Rate Periods

| | MON | TUE | WED | THU | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|
| 8:00 a.m. to* 5:00 p.m. | DAY RATE PERIOD | | | | | | |
| 5:00 p.m. to* 11:00 p.m. | EVENING RATE PERIOD | | | | | | EVENING RATE PERIOD |
| 11:00 p.m. to* 8:00 a.m. | NIGHT/WEEKEND RATE PERIOD | | | | | | |

* To but not including.

Issued: October 22, 2010                                   Effective:  November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

4.    **RATE DETERMINATION (Continued)**

4.2    **Distance Measurements**

The airline mileage between two cities can be calculated using the vertical (V) and horizontal (H) coordinates of the serving wire centers associated with the Company's POP locations. The method for calculating the airline mileage is obtained by reference to AT&T's FCC Tariff according to the following formulas:

$$\sqrt{\frac{(V_1V_2)^2 + (H_1H_2)^2}{10}}$$

In the above example, the V1 and H1 correspond to the V&H coordinates of "City 1" and V2 and H2 correspond to the V&H coordinates of "City 2."

4.3    **Call Timing**

Correctional Facilities require time limits be placed on Inmate initiated calls. Timing of Inmate   (T)
initiated calls begins when the End User accepts the call and the Inmate and End User are
connected. The call ends when either the Inmate or End User hangs up, as determined by the
industry standard methods generally in use for ascertaining disconnection or when the call timer
reaches the maximum time allowed by the Correctional Facility. Call attempts that are not   (T)
completed or not accepted by the End User will not be billed.

Issued: June 16, 2016                                     Effective:  June 20, 2016

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

5. **PAYMENTS AND CHARGES**

5.1 **Billing Arrangements**

    5.1.1    Charges for services hereunder may be:

        5.1.1.A  Billed directly by the Company, or

        5.1.1.B  Included on the Customer's regular home or business telephone bill, pursuant to billing and collection agreements established by the Company or its intermediary with the applicable telephone company.

    5.1.2    When billing functions on behalf of the Company or its intermediary are performed by local exchange telephone companies or others, the payment of charge conditions and regulations of such companies and any regulations imposed upon these companies by regulatory bodies having jurisdiction apply.

    5.1.3    The Company's bills are due upon receipt. If a Customer presents an undue risk of nonpayment at any time, the Company may require payments in cash or the equivalent of cash. In the case of any Customer who elects to post a deposit pursuant to Section 5.6, the Company may deduct any past due balances from the deposit.     (D) (D) (T)

    5.1.4    Customers with questions about invoices may contact the Company directly at 14651 Dallas Parkway, Suite 600, Dallas, Texas 75254 Telephone number 1-800-844-6591. If written notice of a dispute as to charges is not received by the Company within thirty (30) days of the date a bill is issued, such charges shall be deemed to be correct and binding on a Customer.

Issued: June 16, 2016

Effective: June 20, 2016

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

5.    **PAYMENTS AND CHARGES (Continued)**

5.1    **Billing Arrangements (Continued)**

5.1.5    In the event the Company incurs fees or expenses, in collecting or attempting to collect, any charges owed the Company, the Customer will be liable to the Company for the payment of all such fees and expenses reasonably incurred.

5.2    **Validation**

The Company reserves the right to validate the creditworthiness of Customers through available verification procedures and to establish a maximum predetermined credit amount. Where a requested billing method cannot be validated, the Company may refuse to provide service.

Services offered pursuant to this tariff are provided to inmates of correctional facilities, in accordance with institutionally authorized programs. The Company may request that facilities adopt, as part of the institutionally authorized program, terms that enable the Company to collect the charges for all inmate calls, including without limitation, the blocking of calls to certain telephone numbers when the amount charged to such telephone number (a) exceeds a predetermined amount or (b) becomes past due.

5.3    **Contested Charges**

For consideration of any disputed charge, a Customer must submit in writing to the Company, within thirty (30) days of the date the bill is issued, the call details and basis for any requested adjustment. The Company will promptly investigate and advise the Customer as to its findings and disposition.

5.4    **Returned Check Charge**

A charge of $20 may be applied if a check or draft presented for payment of service is not accepted by the institution on which it is written.  The Company reserves the right to refuse to accept such checks or drafts in payment for services and require prepayment or a certified or bank check or money order.

(D)

(D)

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 5. PAYMENTS AND CHARGES (Continued)                                    (N)

### 5.5    Payment Fee                                                    (N)(T)

**Automated Payment Fees (where available)** — Credit card payment, debit card payment, and bill processing fees, including fees for payments made by interactive voice response (IVR), web, or kiosk (where available).  This fee does not apply to payments mailed to the company or submitted via a customer's online banking service.                                  (N)

Automated payment fees - $3.00

**Live Agent Fee** — A fee associated with the optional use of a live operator to complete Inmate Calling Services transactions.  This fee does not apply to payments mailed to the company or submitted via a customer's online banking service.                             (N)

Live Agent Fee - $5.95

(N)

Issued: June 16, 2016                          Effective:  June 20, 2016

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

5.    **PAYMENTS AND CHARGES (Continued)**

    **5.6    Deposits**

      No advance deposits are required; provided, however, that in the event that any Customer wishes to exceed any maximum credit amount that may be predetermined by the Company that Customer may do so by first posting a deposit with the Company in an amount such that the level of credit sought is equal to ninety percent of the deposit amount. The Company shall pay simple interest on an annual basis at a rate that might be required under the regulations applicable to local exchange telephone companies under Section 5.1.2.

    **5.7    Taxes**

      All federal, commonwealth and local taxes (e.g. excise tax, gross receipts tax, sales tax, municipal utilities tax) for calls provided pursuant to this tariff are billed as separate line items and are not included in the rates set forth herein.

6.    **RATES AND CHARGES** – The charges for a particular call shall be the total of the measured usage charge.  Confinement Facility rates will not exceed the below rates and charges.    (T)(N)

    **6.1    Local, IntraLATA and InterLATA Collect Rates and Charges**    (D)(N)

      Per minute usage charge:    $0.25

(D)

(D)

Issued: June 16, 2016

Effective:  June 20, 2016

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

**Reserved for Future Use**

(D)(T)

(D)

(D)

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

**Reserved for Future Use** (D)(T)

(D)

(D)

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

**Reserved for Future Use**

(D)(T)

(D)

(D)

Issued: June 16, 2016

Effective: June 20, 2016

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

Reserved for Future Use (D)(T)

(D)

(D)

Issued: June 16, 2016

Effective:  June 20, 2016

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

**6.      RATES AND CHARGES (Continued)**

**6.2      Prepaid Service**

Prepaid Calling Cards and Debit Accounts

Where offered by the Confinement Facility, Inmates may either purchase a Prepaid Calling Card or set up a Prepaid Debit Account for calls made by the Inmate User or Authorized User. Prepaid Calling Cards and Debit Accounts provide an alternative method to make calls and are designed for those Inmates who prefer to prepay for their calls. Calls are made by dialing a special access dialing sequence that connects directly to the Company's network at the Confinement Facility. A valid Authorization Code must be entered to access the account.

The Company's system automatically informs the Inmate User or Authorized User of the Prepaid Balance remaining on the Prepaid Calling Card or in the Prepaid Debit Account, and provides prompts to place the call by entering the destination telephone number with area code. Network usage is deducted from the Prepaid Balance on a real time basis as the call progresses. Applicable state taxes and fees are included in the rates and charges for the calls made. On Prepaid Calling Card and Prepaid Debit Account calls, when the Prepaid Balance is one minute prior to depletion, the Inmate User or Authorized User will be interrupted with such an announcement.

Prepaid Calling Card and Debit Account services are available twenty-four (24) hours a day, seven (7) days per week to all terminating locations serviced. Access to such telephone services by an Inmate User may be subject to time-of-day and usage restrictions imposed by individual Confinement Facilities. No      (T) minimum service period applies. For debiting purposes, call timing is rounded up to the nearest one (1) minute increment. Usage charges are computed and rounded up to the nearest one (1) cent on a per call basis. Prepaid Balances are not charged for incomplete calls.

6.2.1      Prepaid Calling Cards

The Confinement Facilities that offer the option of Prepaid Calling Cards may purchase Prepaid Calling Cards directly from the Company. Inmates then purchase the Cards from authorized personnel at the Confinement Facilities. The Company does not engage in direct monetary transactions with the Inmate. The Inmate may purchase a Prepaid Calling Card in denominations determined by the Confinement Facility. Prepaid Calling Cards are offered only to Inmates at Confinement Facilities and not to the general public. Prepaid Calling Cards are valid for one hundred eighty (180) days from the date of first usage. Unused Prepaid Balances may be used by the Inmate User or Authorized User following release from the Confinement Facility only through the Company's network by dialing a special toll free access number with automatically connects the call to the Company's network. Unused Prepaid Balances are not refundable nor may Prepaid Calling Cards be replenished upon the depletion of the Prepaid Balance. Inmates may purchase additional cards, as permitted by their Confinement Facility.

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 6.    RATES AND CHARGES (Continued)

### 6.2    Prepaid Service (Continued)

#### 6.2.2    Prepaid Debit Accounts

For a Prepaid Debit Account, the Inmate may set up the account through the Confinement Facility administrators with an initial payment typically through the Inmate's commissary account, in those Confinement Facilities where this service is available. Upon the depletion of the Prepaid Balance, the Prepaid Debit Account may be replenished by depositing funds into the Account via the Confinement Facility administrator. Prepaid Debit Accounts are considered dormant if there is no activity for one hundred eighty (180) days following the last call made. Inactive accounts will be removed from the Company's system. In conjunction with their release from the Confinement Facility, the Inmate may request a refund from the Confinement Facility administrator.

#### 6.2.3    AdvanceConnect Accounts

End Users who prefer to pay in advance for Collect Calls that originate from Confinement Facilities, or else if the End User's local exchange carrier does not have a billing and collection agreement with the Company or its intermediary, may set up an AdvanceConnect Account with the Company with an initial payment. The Account is set up with the initial payment and may be replenished by the End User. Applicable state taxes and fees are calculated and deducted from the balance at the conclusion of the call.    (C)

When the balance in an AdvanceConnect Account reaches ten dollars ($10) or below, the End User will receive an automated courtesy call from the Company notifying the End User with such an announcement. If the End User's balance reaches zero prior to replenishment of the Account, the End User will be blocked from receiving further calls from any Confinement Facility served by the Company until the balance is replenished or an alternative billing arrangement is made.    (C)

The End User may request a refund of the available balance in the AdvanceConnect Account either by written request to the Company or by contacting the Company at its toll free telephone number once the End User verifies certain account information. Any such unused balances will expire in one hundred eighty (180) days following the last call made, unless the balance is either fully depleted or a refund has been requested. No refunds of unused balances will be issued after the expiration date.    (D)

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

6.    **RATES AND CHARGES (Continued)**

    6.2    **Prepaid Service (Continued)**

        6.2.3    <u>AdvanceConnect Accounts (Continued)</u>

        AdvanceConnect Account service is available twenty-four (24) hours a day, seven (7) days a week to all terminating locations served. Access to such services by the Inmate User may be subject to time-of-day and usage restrictions imposed by individual Confinement Facilities. No minimum service period applies. For debiting purposes, call timing is rounded up to the nearest one (1) minute increment. Usage charges are computed and rounded up to the nearest one (1) cent on a per call basis. Balances are not charged for incomplete calls.

(D)

(D)

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

## 6. RATES AND CHARGES (Continued)

(N)

### 6.2 Prepaid Service (Continued)

#### 6.2.4 Inmate Debit

Inmate Debit is a prepaid telephone account offering made available to Inmates by the Company when permitted by the Confinement Facility. Inmate Debit provides an alternative method for Inmates to prepay for and make calls. An Inmate Debit account associated with the Inmate's Personal Identification Number (PIN) is automatically established by the Company. Inmates fund and replenish their Inmate Debit account through electing to transfer funds from either their facility's inmate trust fund or commissary account to their Inmate Debit account. Inmate Debit accounts may also be funded by inmate friends and family members via the Company's points-of-sale. Funds placed in this account become the property of the inmate.

Inmate Debit calls are processed by dialing a special access dialing sequence that connects directly to the Company's network at the Confinement Facility. Inmates must enter a valid Authorization Code to access their Inmate Debit account. The Company's system automatically informs the Inmate of the prepaid balance remaining on the Inmate Debit account prior to each call, provides prompts to place the call by entering the destination telephone number, and informs the Inmate of the rates for the call being attempted. Call charges are deducted from the prepaid account balance on a real-time basis as the call progresses. Applicable state taxes and fees are in addition to the rates and charges for calling service. During an Inmate Debit call, when the prepaid account balance is one minute prior to depletion, the Inmate will be interrupted with such an announcement.

Inmate Debit services are available twenty-four (24) hours a day, seven (7) days per week to all terminating locations serviced. Access to such telephone services by an Inmate may be subject to time-of-day and usage restrictions imposed by individual Confinement Facilities. No minimum service period applies. For debiting purposes, call timing is rounded up to the nearest one (1) minute increment. Usage charges are computed and rounded up to the nearest one (1) cent on a per call basis. Prepaid balances are not charged for incomplete calls.

Refunds of unused Inmate Debit account balances are issued by the entity controlling the actual cash deposits, which is either the Company, the commissary, the Confinement Facility or its agent, depending on the specific arrangements, unless otherwise directed by state law. Depending on the entity issuing the refund, refund fees and/or minimum refund amounts may apply. The prepaid balance expires ninety (90) days from the date of the last call placed on the Inmate Debit account unless alternative arrangements are expressly requested by the Confinement Facility. No refunds of unused balances will be issued after the expiration date.

(N)

Issued by: Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

**6.2    Prepaid Service (Continued)**

    6.2.5    <u>Prepaid Services Rates</u>

        The rates listed below are applicable to the Company's Prepaid Services.  For billing purposes, call timing is rounded up to the next full minute increment after a minimum initial period of one (1) minute.  No time of day, holiday or volume discounts apply.  Confinement Facility rates will not exceed the below rates and charges.    (N) (N)

        <u>Prepaid Calling Cards and Debit Accounts</u>    (D)

        PER MINUTE USAGE CHARGE             $0.21    (N) (D)

    6.2.6    <u>AdvanceConnect Accounts</u>    (D)(N)

        PER MINUTE USAGE CHARGE             $0.21    (D)

    (D)

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

# 7.    PROMOTIONS

## 7.1    General

From time to time the Company shall, at its opinion, promote subscription or stimulate network usage by offering to waive some or all of the nonrecurring or recurring charges for the Customer (if eligible) of target services for a limited duration. Such promotions shall be made available to all similarly situated Customers in the target market area.

## 7.2    Demonstration of Service

From time to time the Company may demonstrate service for potential customers by providing free use of its network on a limited basis for a period of time, not to exceed one (1) month. Demonstration of service and the type and duration of service provided will be at the Company's discretion.

## 7.3    Comparable Pricing Promotion

The Company will, at its discretion, match certain standard or promotional offerings of other interexchange carriers or resellers in order to acquire new Customers or retain existing Customer accounts. The Customer must demonstrate to the Company's satisfaction that 1) an alternative service offering is valid and currently available from a competing interexchange carrier or reseller and 2) the Customer intends to either subscribe to or remain subscribed with the competing interexchange carrier or reseller.

## 7.4    Debit Services Sponsor Program

A sponsor program is offered to organizations or commercial entities for distribution of Company's Debit Cards to their members or patrons. The marketing vehicle and expiration period is selected by the sponsor upon joint agreement between the carrier and the sponsor. The sponsor is responsible for name, service mark or other image on the card. The carrier reserves the right to approve or reject any image and to specify the customer information language and use of the carrier's trade mark, trade name, service mark, or other image on the card. The sponsor may distribute the carrier's Debit Card accounts at reduced rates or free charge to end users for promotional purposes. At the option of the sponsor, these cards may not be renewed. Debit Cards and/or accounts issued through a sponsor program may not be used in conjunction with debit account services provided to inmate of confinement institutions.

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254

# 8.    CONTRACT SERVICES

## 8.1    General

At the option of the Company, service may be offered on a contract basis to meet specialized requirements of the Customer not contemplated in this tariff. The terms of each contract shall be mutually agreed upon between the Customer and Company and may include discounts off of rates contained herein, waiver of recurring or nonrecurring charges, charges for specially designed and constructed services not contained in the Company's general service offerings, or other customized features. The terms of the contract may be based partially or completely on the term and volume commitment, type of originating or terminating access, mixture of service for other distinguishing features. Service shall be available to all similarly situated Customers for a fixed period of time following the initial offering to the first Customer as specified in each individual contract.

Issued: October 22, 2010                                                    Effective:  November 21, 2010

Issued by:  Curtis L. Hopfinger, Director – Regulatory & Government Affairs
14651 Dallas Parkway, Suite 600
Dallas, Texas 75254