**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KELLIE PEARSON, ROGER BURRELL, ) <br> BRIAN GIVENS, and THE LAW ) <br> OFFICES OF MARK BOOKER, on ) <br> behalf of themselves and those ) <br> similarly situated, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THOMAS M. HODGSON, ) <br>  Individually and ) <br>  In His Official Capacity as Sheriff ) <br>  Of Bristol County ) <br> ) <br> and ) <br> ) <br> SECURUS TECHNOLOGIES, INC. ) <br> ) <br>       Defendants. ) | Case No. 1:18-cv-11130 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**SECURUS TECHNOLOGIES, INC.'S MOTION TO DISMISS**

Plaintiffs, Kellie Pearson, Roger Burrell, Brian Givens, and the Law Offices of Mark Booker, on behalf of themselves and those similarly situated (Plaintiffs) respectfully oppose the Motion to Dismiss (Motion) filed by Defendant Securus Technologies, Inc. (Securus or Defendant). *See* Motion, Dkt. 28. As discussed below, the Motion lacks merit and should be denied.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request a hearing to present their arguments in opposition to this Motion to the Court.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 5

THE LEGAL STANDARD ...................................................................................... 5

FACTUAL BACKGROUND .................................................................................... 6

ARGUMENT .......................................................................................................... 8

I.   THE COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF MAY

BE GRANTED. ....................................................................................................... 8

   A.  Securus's Unfair or Deceptive Conduct, as Defined in Chapter 93A, § 2, Gives

   Plaintiffs a Right to Relief Under Chapter 93A, § 9. ............................................. 8

   B.  Plaintiffs Properly Alleged a Claim of Conversion Against Securus. ........................... 13

II.   THE FILED RATE DOCTRINE DOES NOT INSULATE SECURUS FROM

LIABILITY. .......................................................................................................... 14

III.   PRISONERS HAVE STANDING TO BRING CLAIMS AGAINST DEFENDANTS

HODGSON AND SECURUS. ................................................................................ 18

CONCLUSION ..................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Shooting Sports Council, Inc. v. Attorney Gen.*, 711 N.E.2d 899, 907–08 (Mass. 1999) ..... 10

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 222
(1998) ................................................................................................................... 15

*Arney v. Simmons*, 26 F.Supp.2d 1288 (D. Kansas 1998) ........................................... 18

*Arsberry v. Illinois*, 244 F.3d 558, 561 (7th Cir. 2001) ............................................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ......................................................... 6

*Baker v. Goldman Sachs*, 949 F. Supp. 2d 298, 307 (D. Mass. 2013), *aff'd*, 771 F.3d 37 (1st Cir.
2014) ............................................................................................................. 10, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................. 5

*Borden, Inc. v. Comm'r of Pub. Health*, 448 N.E.2d 367, 378, 338 Mass. 707, 723 (1983)........ 19

*Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 413–14 (Mass. 2003) ................................. 12

*Cacicio v. Sec'y of Pub. Safety*, 665 N.E.2d 85, 422 Mass. 764 (1996) ................................ 18, 19

*Cahaly v. Benistar Prop. Exch. Trust Co.*, 864 N.E.2d 548, 559 (Mass. App. Ct. 2007) ........... 13

*Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308-09 (Mass. 2002) .......................... 9

*Commonwealth v. DeCotis*, 316 N.E.2d 748, 754 (Mass. 1974) ...................................... 9, 11, 13

*Cummings v. HPG International, Inc.*, 244 F.3d 16 (1st Cir. 2001).............................................. 11

*Gelb v. AT&T Co.*, 813 F.Supp. 1022, 1023, 1030 (S.D.N.Y. 1993) ......................................... 15

*Global*Tel Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017) ............................................................ 16

*Grand Pacific Finance Corp. v. Brauer*. 783 N.E.2d 849 (Mass. App. Ct 2003) ....................... 13

*Healey v. Murphy*, 2011 WL 2693688 *5 (D. Mass. 2011)..................................................... 18, 19

*Hershenow v. Enter. Rent-A-Car Co. of Bos.*, 840 N.E.2d 526, XXX (Mass. 2006) ............... 8, 19

*In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184  (1st Cir.2009) ............ 11

*Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000)........................................................... 10, 12

*Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)................... 9, 11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) ........................................................ 18

*Moore v. Comm'r of Corr.*, 53 Mass.App.Ct. 1107 (2007) ....................................................... 18

*Norris v. Global Tel Link Corp.*, No. 16-11323-LTS, 2016 WL 4574639 (D. Mass. Sept. 1, 2016)
...................................................................................................................... 16

*Riley v. O'Brien*, D.Mass., No. cv 16-11064-LTS, 2016 WL 8679258 (Sept. 2, 2016)........ 18, 19

*Sanchez v. Global Tel Link et al.*, 2015 WL 8215880 *1 (D. Mass. 2015) ................................. 19

*Schubach v. Household Fin. Corp.,* 376 N.E.2d 140, 142 (Mass. 1978)...................................... 10

*Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975)........................................... 12

*Souza v. Sheriff of Bristol Cty.*, 918 N.E.2d 823 (Mass. 2010).......................................... 5, 10, 14

*Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ................................................................ 18

*Spooner v. Manchester*, 133 Mass. 270, 274 (1882) ................................................................ 13

*Walton v. New York State Department of Correctional Services*, 921 N.E.2d 145, 160-63 (NY

App. Ct. 2009) ...................................................................................................................... 17

*Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) ........................................................ 19

**Statutes**

47 U.S.C. § 203............................................................................................................................ 16

Mass. Gen. Laws 25C, § 6A ....................................................................................................... 16

Mass. Gen. Laws ch. 159, § 19 ................................................................................................... 16

Mass. Gen. Laws Ch. 93A, § 2(a).................................................................................................. 9

**Regulations**

103 Mass. Code Regs. 3:16(3), (4) ............................................................................................... 9

103 Mass. Code Regs. 948.10...................................................................................................... 19

## INTRODUCTION

This is a classic case of a wealthy corporation taking advantage of its market power to extort funds from consumers who pay the inflated charges they are billed because they lack an alternative. Having obtained an exclusive contract to provide inmate calling services (ICS) at all of the correctional facilities run by the Bristol County Sheriff's Office (BCSO), Securus overcharged Plaintiffs for phone calls, so it could keep its profits and send excess revenue as kickbacks or site commissions to the BCSO. Their contract is illegal because the BCSO is not entitled to impose such unauthorized costs on Massachusetts residents. This is settled law in Massachusetts. *See Souza v. Sheriff of Bristol Cty.*, 918 N.E.2d 823 (Mass. 2010). Securus cannot do for the Sheriff what the Sheriff cannot lawfully do.

Securus grossly overcharged Plaintiffs, their loved ones, and attorneys for phone service to fund its illegal contract with the BCSO. Plaintiffs had no say in which telephone service to use. They had to pay the inflated rates Securus billed them or face losing contact with their family, friends, attorneys, and clients. Securus had them at its mercy and took full advantage of its monopoly power. Now Plaintiffs seek to hold Securus accountable for its wrongful conduct and the injuries it has caused. Plaintiffs pleaded their claims of conversion and violations of the Massachusetts Consumer Protection Act against Securus. This Court should deny Securus's Motion to Dismiss and allow Plaintiffs to proceed with their claims.

## THE LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving such a motion, the court must accept all factual allegations in the

complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## **FACTUAL BACKGROUND**

Defendant Securus Technologies, Inc. (Securus) is a private telecommunications service and technology provider of "inmate calling services" (ICS) in correctional facilities in Massachusetts and the United States. Compl. ¶ 17. Exclusionary terms in Securus's contracts with correctional facilities require that prisoners use the corporation's services for all telephone communications with family members, friends, attorneys, and other approved individuals. Id.

On August 8, 2011, Securus executed an exclusive contract with the Bristol County Sheriff's Office (BCSO) to provide ICS in all BCSO facilities. Id. ¶ 32. Defendant Thomas M. Hodgson is the Sheriff and head of the BCSO. Id. ¶ 4. In exchange for this exclusive contract, Securus agreed to pay kickbacks to the BCSO. Id. ¶ 2. Specifically, Securus agreed that it would pay the BCSO forty-eight percent of the gross revenues it derived from charging for ICS in Bristol County facilities, paid to the BCSO via monthly "site commission" payments. Id. ¶¶ 3, 34. Securus's payments were a supplemental source of revenue for the BCSO. Id. ¶¶ 4, 83.

Securus passed the cost of these kickback payments onto prisoners, their loved ones, and their attorneys in the form of grossly inflated—approximately doubled—phone call rates. Id. ¶¶ 1-2.

From August 2011 to June 2013, pursuant to this scheme, Securus siphoned from consumers and funneled to the BCSO an aggregate of $1,172,748.76 in monthly payments. Id. ¶ 35. The contract remained in effect for over four years. Id. ¶¶ 32, 41. On October 21, 2015, the day before the Federal Communications Commission (FCC) was scheduled to release an order on ICS declaring that "site commissions are the primary reason ICS rates are unjust and

unreasonable and ICS compensation is unfair," Hodgson amended the contract with Securus. Id. ¶¶ 39, 41. Securus and Hodgson altered the form and timing of Securus's kickback payments, arranging for Securus to pay the BCSO in a lump-sum instead of in monthly installments. Id. ¶¶ 42-43. But the structure of the cash transfers remained the same: now, as before, Securus inflates the cost of every call with overcharges that are then redirected to the BCSO as kickbacks. Id. ¶ 46. In exchange, Securus retained an exclusive contract with the BCSO for an additional four years. Id. ¶ 44. This contract remains in effect today. Id. ¶¶ 42-43, 46.

Securus is also a party to an action brought by consumers of ICS before the Massachusetts Department of Telecommunications and Cable (DTC) seeking just and reasonable ICS rates. Id. ¶ 47. On June 28, 2016, Securus notified the DTC of its belief that it was not subject to the jurisdiction of the DTC due to the Internet Protocol Enabled technology it uses and withdrew and cancelled its tariff effective August 1, 2016. Id. ¶ 48. Since then, Securus has charged consumers of its ICS—including consumers of its ICS in BSCO facilities—far in excess of what is permitted by the DTC. Id. ¶ 49.

Under the terms of its contract with BCSO, Securus has been and continues to participate in a kickback scheme with Defendant Hodgson to raise revenue and fill BCSO's coffers. Id. ¶¶ 4, 9-10. As a result of Securus's conduct, prisoners in Bristol County who want to communicate by phone with family, friends, and legal representatives have only one option: they must use the privatized system Securus operates and incur the markup charges Securus imposes to cover the cost of its kickbacks to the BCSO. Id. ¶ 2.

Securus's monopoly on phone services in BCSO facilities leaves consumers with no viable alternative. Id. ¶¶ 2, 9. For many—including those with physical disabilities or mental health conditions that make other forms of communication difficult or impossible—phone calls

are the primary means of securing legal counsel and maintaining ties with family during their own or their loved one's incarceration. Id. ¶ 5. The excessive cost of these calls has impeded prisoners' and their loved ones' ability to maintain regular contact and has imposed—and continues to impose—significant financial and emotional hardship on Plaintiffs. Id. ¶¶ 6, 12-15.

## ARGUMENT

I. **THE COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF MAY BE GRANTED.**

A. **Securus's Unfair or Deceptive Conduct, as Defined in Chapter 93A, § 2, Gives Plaintiffs a Right to Relief Under Chapter 93A, § 9.**

To state a claim for violation of Chapter 93A, § 9, of the Massachusetts General Laws, Plaintiffs need only allege (1) they have suffered an injury having a causal connection to some act or practice of the defendant; (2) the method, act, or practice was done in the conduct of any trade or commerce; (3) there is an unfair method of competition or an act or practice is unfair or deceptive; and (4) at least thirty days before filing suit the plaintiffs sent the defendant a written demand for relief, identifying themselves and reasonably describing the unfair or deceptive acts or practices and the injury suffered. *See, e.g., Hershenow v. Enter. Rent-A-Car Co. of Bos.*, 840 N.E.2d 526 (Mass. 2006). Plaintiffs alleged sufficient facts to state their Chapter 93A claim.

In its Memorandum of Law in Support of Its Motion to Dismiss (Securus Mot. Mem.), Securus argued that its conduct was not wrongful or egregiously wrongful and was, therefore, neither unfair nor deceptive. It thereby challenges the sufficiency of the Complaint's facts regarding only the third element of the Chapter 93A claim. Yet the Complaint alleges facts about Securus's illegal contract with and payments to the BCSO, and asserts that Securus's conduct was unfair or deceptive. Compl. ¶¶ 96-97. At the pleading stage, Federal Rule of Civil Procedure

8(a) requires Plaintiffs to provide only a "short and plain statement of the claim." Plaintiffs have more than satisfied that requirement.

The Massachusetts Consumer Protection Act does not define the "[unfair] methods of competition" or "unfair or deceptive acts or practices" that it prohibits. Mass. Gen. Laws ch. 93A, § 2(a). As one court observed, "What is unfair is a definitional problem of long standing, which statutory draftsmen have prudently avoided. It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field." *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979) (internal quotations omitted). The statute, instead, provides guidelines and instructions for consulting federal standards and judicial interpretations of these dynamic terms, as well as the rules and regulations of the Attorney General. Mass. Gen. Laws ch. 93A, § 2(b), (c). *See also Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308-09 (Mass. 2002) (discussing legislative intent and the history of federal and Massachusetts interpretations of these terms); *Commonwealth v. DeCotis*, 316 N.E.2d 748, 754 (Mass. 1974) (explaining the intended breadth of Chapter 93A, which is not "limited to practices forbidden at common law or by criminal statute").

Notably, the regulations of the Attorney General state that violations of other laws or regulations may constitute *per se* violations of Chapter 93A. 103 Mass. Code Regs. 3:16(3), (4). In addition to analyzing claims to identify *per se* violations of Chapter 93A, courts have applied a variety of standards and tests to identify unfairness, unconscionability, and deception. *See, e.g.*, *DeCotis*, 316 N.E.2d 748, 754. Here, Plaintiffs' Complaint contains facts about a scheme through which Securus contractually obligated itself to overcharge prisoners, their loved ones, and attorneys for phone calls so that Securus could pay site commissions to the BCSO even though the BCSO lacked the requisite authority to raise revenue by receiving such site

commissions. Compl. ¶ 4. As analyzed in *Souza v. Sheriff of Bristol Cty.*, 918 N.E.2d 823 (Mass. 2010), and discussed at greater length in Plaintiffs' Memorandum of Law in Opposition to Sheriff Hodgson's Motion to Dismiss, Section I, Massachusetts law protects its residents from bearing costs of incarceration that the Legislature has not levied upon them or specifically authorized county sheriffs to collect.

Even if it is true, as Securus argues, that site commissions—the kickbacks to the Sheriff that inflate the cost of ICS calls in Bristol County—are a common feature of ICS contracts, Massachusetts courts have rejected the argument that standard industry practices protect a defendant from liability for violations of Chapter 93A. "The existence of an industry-wide practice would not constitute a defense to unlawful conduct." *Id.* at 753. Further, even the "[l]egality of underlying conduct is not necessarily a defense to a claim under c. 93A." *Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000). *See Am. Shooting Sports Council, Inc. v. Attorney Gen.*, 711 N.E.2d 899, 907-08 (Mass. 1999) (concluding that it could be unfair and a 93A violation to sell guns that were in compliance with federal law); *Schubach v. Household Fin. Corp.,* 376 N.E.2d 140, 142 (Mass. 1978). To be clear, Plaintiffs object to the practice of charging site commissions, but that odious practice is not the basis for their Chapter 93A claim. Rather the illegal, exclusive contract between Securus and the BCSO is at the heart of Plaintiffs' claim for relief, as the inflated rates they were charged flow from that contract.

Over the past several decades, courts have applied different frameworks to evaluate the presence of unfairness or deception under Massachusetts law. In *Baker v. Goldman Sachs*, 949 F. Supp. 2d 298, 307 (D. Mass. 2013), *aff'd*, 771 F.3d 37 (1st Cir. 2014), the court articulated the standard as follows:

> An act or practice is unfair if it is within at least the penumbra of some common-law, statutory or other established concept of unfairness, is immoral, unethical, oppressive, or

unscrupulous, and causes substantial injury to consumers (or competitors or other businessmen)." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184 (1st Cir.2009) (internal quotations omitted). "The crucial factors in an unfairness inquiry are the nature of [the] challenged conduct and on the purpose and effect of that conduct." *Id.* (internal citations omitted).

It further stated that "[a]n act or practice is deceptive if it has the capacity or tendency to deceive." *Id.* at 185 (internal quotations omitted). Applying such a standard, a court could determine that Securus's wrongful conduct is certainly unfair or deceptive. [1]

Courts regularly examine the relative sophistication and bargaining power of disputing parties, as well as whether a business was taking undue advantage of consumers when evaluating Chapter 93A claims. As the Supreme Judicial Court of Massachusetts discussed in *Commonwealth v. DeCotis*, the defendants "undertook to impose an arbitrary provision on persons of limited means and limited choice for residences. The defendants were able to collect the resale fees solely because their tenants were in a position in which they had no reasonable alternative but to pay and to agree to pay." 316 N.E.2d at 755. In that case, the Court granted relief to tenants of a mobile home park whose property manager demanded payment of fees that were unrelated to the services rendered, saying "[t]he willingness of tenants to pay resale fees, and even to contract knowingly to pay those fees, does not make the collection of such a fee fair. It merely demonstrates the extent to which the defendants had their tenants at their mercy."

Here, Securus overcharged prisoners, their loved ones, and their attorneys simply because

---

[1] It is true that Massachusetts applies a heightened unfairness or deception standard, a more stringent test under § 2 of Chapter 93A, when evaluating claims by one business against another. For this proposition, Securus cites *Cummings v. HPG International, Inc.*, 244 F.3d 16 (1st Cir. 2001), a product liability action which involves the commercial law provision of Chapter 93A, § 11. Although Securus would have the Court believe that Plaintiffs must do more to demonstrate the unfairness or deception inherent in Securus's conduct, Massachusetts law does not erect such a bar to legitimate claims filed by consumers or the Attorney General. In *Cummings*, the court discussed "the more forgiving consumer standard contained in section 9 of Chapter 93A" and acknowledged that it is appropriate to have different standards for commercial parties. 244 F.3d. at 26. It then applied the commercial standard to resolve the issues in that case. Although this court could determine that Securus's conduct rises to the "level of rascality" required in the commercial context since *Levings v. Forbes Wallace, Inc.*, 396 N.E.2d 149, 153 (1979), the instant case involves a claim for relief under § 9 of Chapter 93A, so the stricter standard does not control.

it had an exclusive contract. Without competition in the ICS market, users had no other option for making the phone calls that would enable them to maintain ties with their parents, children, siblings, friends, other loved ones, and legal counsel. As the Supreme Judicial Court did in *DeCotis*, a court could find that Securus's conduct also violated Chapter 93A.

The Complaint alleged sufficient facts to show that Securus's wrongful conduct was unfair or deceptive. Nonetheless, Securus's contrary argument is not a proper basis for dismissal of a Chapter 93A claim. The question of whether a defendant's conduct is unfair or deceptive should be decided on a record of facts, rather than on a motion to dismiss. *See DeCotis*, 316 N.E.2d at 753-54; *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 413-14 (Mass. 2003). Therefore, to decide this Motion, the Court need not entertain Defendant's contention that its conduct was not wrongful. Plaintiffs should be allowed to proceed with their properly pleaded Chapter 93A claim.

Finally, Securus argues that Plaintiffs' Chapter 93A claim is based on their claim for conversion. Securus Mot. Mem. 9-11. However, Securus misstates Plaintiffs' case. They do not rely on the conversion claim as the basis for their 93A claim. As discussed earlier in this section, Chapter 93A created new, broader bases for relief for consumers. "The s 9 claim for relief is the creation of that statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of pree xisting [sic] causes of action such as tort for fraud and deceit." *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975). *See, e.g., Kattar*, 739 N.E.2d at 257; *Baker v. Goldman Sachs & Co.*, 949 F. Supp. 2d 298, 307 (D. Mass. 2013), *aff'd*, 771 F.3d 37 (1st Cir. 2014) (reiterating that for Chapter 93A claims "it is neither necessary nor sufficient that a particular act of practice violate common or statutory law"). Plaintiffs allege that Securus's conduct renders it culpable of both conversion

and violation of Chapter 93A. Certainly other businesses have been found liable of both. *See, e.g., Grand Pacific Finance Corp. v. Brauer.* 783 N.E.2d 849 (Mass. App. Ct. 2003). Neither claim is a premise for the other. The court may extend relief to Plaintiffs based on their Chapter 93A claim, their conversion claim, or both.

### B.  Plaintiffs Properly Alleged a Claim of Conversion Against Securus.

Separate and apart from their claim that Securus violated Chapter 93A, Plaintiffs alleged a claim of conversion against Securus. "Conversion consists of a wrongful exercise of dominion or control over the personal property of another." *Cahaly v. Benistar Prop. Exch. Trust Co.*, 864 N.E.2d 548, 559 (Mass. App. Ct. 2007), *aff'd*, 885 N.E.2d 800 (Mass. 2008); *see also Spooner v. Manchester*, 133 Mass. 270, 274 (1882). Plaintiffs allege that Securus was not entitled to charge them extra amounts for phone calls from Bristol County correctional facilities. *See, e.g.,* Compl. ¶¶ 2-3. Securus was not entitled to collect and is not entitled to keep or withhold those funds from Plaintiffs. Compl. ¶ 92. Therefore, Plaintiffs adequately pleaded facts in support of their conversion claim against Securus.

Securus argues that its conduct cannot be considered coercive if Plaintiffs consented to pay for phone calls. That argument fails, however, because Securus's business model is premised upon obtaining exclusive ICS contracts. Compl. ¶ 2. Through its monopoly on the provision of phone services in the Bristol County correctional facilities, Securus secured a powerful position from which to extract funds from the users of its services, as they have no viable alternative. *Id.* As discussed in the section above, courts have identified this kind of conduct as both coercive and unfair, as voluntariness or consent cannot be properly imputed from payment when ICS users had no meaningful alternative. *See DeCotis*, 316 N.E.2d at 755. Therefore, it is

disingenuous to claim that users, like Plaintiffs, *gave* their money to Securus or consented to repay Securus for the costs of the site commissions that Securus volunteered to bear.

Here, consumers agreed to pay for phone services. They did not agree to supplement the budget of the correctional facilities. They did not volunteer to pay for the costs of operating or maintaining the facilities. Yet, the disproportionately high costs imposed by the forty-eight percent markup on each call is essentially a coerced or extorted donation to support jail upkeep. Plaintiffs do not concede that there is no price gouging, contrary to Securus's statement otherwise. Securus Mot. Mem. 14. Massachusetts has made no public policy statement that gives the BCSO or Securus the authority to raise revenue for the prison in this way. Such an interpretation of the law is incorrect, as the SJC stated in *Souza v. Sheriff of Bristol Cty.*, 918 N.E.2d 823 (Mass. 2010). To impose such fees on consumers who use ICS services is illegal, so the amounts billed and paid were not, in fact, due to Securus. It had no right to the inflated amounts it charged Plaintiffs.

Here, Securus imposed costs on Plaintiffs so Securus could deliver funds to the Sheriff for which the Sheriff lacked the requisite legislative authorization to receive. Securus was not entitled to Plaintiffs' funds because it took the funds pursuant to an illegal contract and used the funds to make illegal payments to the BCSO. Neither Plaintiffs nor the Classes they represent could consent to pay illegal upcharges. Securus was not authorized to take additional money from them to pay the BCSO. For these reasons, Plaintiffs pleaded their claim for relief from Securus's conversion of their funds.

## II.   THE FILED RATE DOCTRINE DOES NOT INSULATE SECURUS FROM LIABILITY.

As discussed in the Complaint and clarified above, Plaintiffs do not seek to challenge Securus's call rates. Instead, Plaintiffs contest the scheme by which Securus colluded with the

BCSO to siphon funds from Plaintiffs to the BCSO even though neither Securus nor the BCSO had the necessary authority to extract those funds. Since this case is not about call rates, no tariff or filed rate doctrine could protect Securus from liability. Further, the filed rate doctrine was never designed to protect any business from liability for its intentional torts or consumer protection violations. *See, e.g.*, *Gelb v. AT&T Co.,* 813 F.Supp. 1022, 1023, 1030 (S.D.N.Y. 1993) (holding—in a case alleging, *inter alia*, a violation of a consumer protection statute and fraud as a matter of federal common law—that there was nothing in the policy underpinnings of the filed rate doctrine that would cause it to protect a defendant who unlawfully exacted payment, even at a lawful rate, and further holding that the defendant could not insulate itself from all tort claims by simply invoking the filed rate doctrine).

The historic filed rate doctrine developed to prevent common carriers from discriminating against different customers by requiring those carriers to publish uniform rates, in the form of a tariff, with a regulator. *See American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 222 (1998) (quoting *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97 (1915) (internal quotation marks omitted). Common carriers were not allowed to single out certain customers for special discounts or services. *Id.* That is the discrimination the doctrine seeks to prevent. Here, Securus invokes this doctrine to protect its rates from scrutiny even though it was essentially discriminating against its entire user base of prisoners, their loved ones, and their attorneys. Instead of singling out users and providing them with special benefits, Securus instead uniformly harmed its users by charging them rates that far exceeded market rates available to the general public. Plaintiffs seek redress for themselves and all other users of Securus's ICS, so all users would uniformly receive relief.

Nonetheless, Plaintiffs will briefly address the reasons why the filed rate doctrine would be inapplicable to Securus even if Plaintiffs sought to challenge the calling rates. Securus argues that the filed rate doctrine applies to claims based on call rates only if the carrier's tariff is on file with the proper regulatory authority. *See* Securus Mot. Mem. 16 (and citing *Norris v. Global Tel Link Corp.*, No. 16-11323-LTS, 2016 WL 4574639 (D. Mass. Sept. 1, 2016)). The filed rate doctrine is a feature of both state and federal law. *See* Securus Mot. Mem. 14 (citing 47 U.S.C. § 203 and Mass. Gen. Laws ch. 159, § 19). Securus argues the D.C. Circuit held that the Federal Communications Commission (FCC) lacks the authority to regulate intrastate ICS in *Global\*Tel Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017). *See* Securus Mot. Mem. 1-2. Accordingly, Securus argues the FCC does not regulate its rates.

Since July 1, 2010, Massachusetts has exempted Internet Protocol (IP) enabled calling technology from regulation by state entities. Mass. Gen. Laws ch. 25C, § 6A. In proceedings before the Massachusetts Department of Telecommunications and Cable (DTC), Securus asserted that its IP enabled calling service is a technology outside the DTC's jurisdiction. Compl. ¶ 48. Therefore, in withdrawing its tariff, Securus claimed that it is not subject to the jurisdiction of the DTC. *Id.* Accordingly, Securus argues that its rates are not regulated by any state entity, including the DTC.

Here, the fact that Securus filed a tariff with the DTC cannot insulate it from liability for calls made prior to August 1, 2016, if DTC lacked jurisdiction over the technology Securus used prior to that date. With or without a tariff on file, if Securus is correct that Mass. Gen. Laws ch. 25C, § 6A ended the DTC's jurisdiction, then Securus cannot reasonably raise a filed rate doctrine defense. Although the court disposed of the Plaintiffs' claims without reaching this defense, the dissent in *Walton v. New York State Department of Correctional Services*, 921

N.E.2d 145, 160-63 (N.Y. 2009) analyzed the applicability of the filed rate doctrine in a factually relevant scenario. Though the underlying claims were challenges to prisoner call rates in that case, Judge Smith wrote:

> [A]s in every other case applying the filed rate doctrine that I am aware of, the "appropriate" regulatory authority was one that had jurisdiction over the rate. If that were not so—if the word "filed" were taken literally, so that a rate that is placed in a regulatory agency's file were unchallengeable, whether the agency has authority to regulate that rate or not—the result would be intolerable."

*Id.* at 160. Plaintiffs agree. Applying its interpretation of the law, Securus cannot reasonably argue that the DTC lacked jurisdiction over its technology and at the same time argue that its tariff was still valid until 2016. In other words, Securus cannot at once argue that the DTC is not the proper regulatory authority and also argue that filing a tariff with the DTC shields it from liability.

Even if the filed rate doctrine applied to Plaintiffs' intentional tort and consumer protection claims, Securus has had no tariff on file with the DTC since August 1, 2016. Compl. ¶ 48. As Securus concedes, calls and class members since that date cannot possibly be precluded based on the filed rate doctrine. Securus Mot. Mem. 15, 17.

For these reasons, Plaintiffs seek to represent classes of Massachusetts consumers whose injuries arose well before August 2016. Securus argues that it has neither a state nor federal regulator. Therefore, there is no administrative agency to hear or resolve Plaintiffs' claims even if the claims were about the rates Securus charged. Accordingly, it would be appropriate for Plaintiffs' claims to be heard by a court of law. If the DTC lacked jurisdiction over Securus at any point prior to August 1, 2016, then the filed tariff provides Securus no safe harbor. Plaintiffs' claims cannot be precluded by Securus's invocation of the inapplicable filed rate doctrine.

### III.   PRISONERS HAVE STANDING TO BRING CLAIMS AGAINST DEFENDANTS HODGSON AND SECURUS.

The Defendants argue that the claims of prisoner Plaintiffs, Roger Burrell and Brian Givens, are moot. *See* Hodgson Mot. Mem. 18-20, adopted in Securus Mot. Mem. 17-18. The Plaintiffs concede that Messrs. Burrell and Givens may be barred from serving as class representatives due to mootness, given that they were released shortly before the Complaint was filed. However, current prisoners may be members of either or both of the injunctive and monetary relief classes. The Plaintiffs have proposed non-prisoner representatives for both classes and will in the future seek to add proposed prisoner class representative(s) with non-moot claims.

Defendants argue that prisoners do not suffer "concrete and particularized" harm from the kickbacks because they do not directly pay the telephone bill. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). However, the diminished ability to make telephone calls clearly constitutes "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Numerous courts have reached the merits of prisoner claims founded on impaired access to telephones, whether due to prison telephone charges[2] or other policies restricting telephone access.[3]

---

[2] *See Healey v. Murphy*, 2011 WL 2693688 *5 (D. Mass. 2011) (reaching prisoner's claims that prison telephone charges and restrictions were unlawful under the U.S. constitution and state law); *Riley v. O'Brien*, D.Mass., No. cv 16-11064-LTS, 2016 WL 8679258 (Sept. 2, 2016) (reaching prisoner's First Amendment challenge to prison phone charges and restrictions, *id.* at *8, while noting generally the Court's "independent obligation to inquire, *sua sponte*, into its own subject matter jurisdiction," and to dismiss it if it determines this is lacking, *id.* at *3); *Arsberry v. Illinois*, 244 F.3d 558, 561 (7th Cir. 2001) (in challenge to prison telephone charges by prisoners, family members and law firm, rejecting law firm standing due to lack of injury but not rejecting prisoners' standing; prisoners' claims instead barred by failure to exhaust administrative remedies).

[3] *See Cacicio v. Sec'y of Pub. Safety*, 665 N.E.2d 85 (1996) (reaching merits of challenge to regulations allowing monitoring and recording of calls); *Moore v. Comm'r of Corr.*, 53 Mass.App.Ct. 1107 (2007) (reaching merits of challenge to policy requiring approval for calls) (unpublished opinion); *Arney v. Simmons*, 26 F.Supp.2d 1288 (D. Kansas 1998) (reaching merits of challenge to policies limiting telephone access).

The Defendants' alleged misconduct invades prisoners' right to make telephone calls free of unreasonable restrictions, which is protected by the First Amendment. *See Healey v. Murphy*, 2011 WL 2693688 *5 (D. Mass. 2011) ("[F]ederal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, and have recognized that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment.") (denying summary judgment on prisoner challenge to telephone regulations, quoting *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994)). Courts have reached prisoner claims that telephone restrictions violated their Frist Amendment rights in many additional cases, even while holding the restrictions in those cases were not unreasonable. *See*, *e.g., Riley*, 2016 WL 8679258 *8; *Moore,* 53 Mass.App.Ct. 1107 at *2-3; *Sanchez v. Global Tel Link et al.*, 2015 WL 8215880 *1 (D. Mass. 2015). Further, Massachusetts regulations give prisoners in county facilities the right to "reasonable access" to telephones. *See* 103 Mass. Code Regs. 948.10. "A regulation 'has the force of law and must be accorded all the deference due to a statute..'" *Cacicio*, 665 N.E.2d 85 at 89 (quoting *Borden, Inc. v. Comm'r of Pub. Health*, 448 N.E.2d 367, 378 (1983)).

As regards prisoner claims made against Securus under Mass. Gen. Laws ch. 93A § 9, it is clearly established that the statute provides for recovery "when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no 'money' or property." *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 533 (2006) (citations omitted). Thus even if the Defendants were correct that prisoners suffer no more than emotional harm, this injury would confer standing for their claims under § 9.

19

Finally, contrary to the Defendants assertions, prisoners can suffer economic harm from the kickbacks. For example, a family member could fund a debit account with the prisoner's money, or with funds held jointly with the prisoner. Thus prisoners must not be excluded from the monetary or injunctive relief classes.

## **CONCLUSION**

For the reasons stated above, Defendant Securus's Motion to Dismiss should be DENIED.

Dated: August 17, 2018                                   Respectfully submitted,

By: /s/ Joanna K. Darcus
Stuart Rossman, BBO No. 430640
Joanna K. Darcus, BBO No. 601146 *
Brian Highsmith *
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
F: (617) 542-8028
srossman@nclc.org
jdarcus@nclc.org
bhighsmith@nclc.org

Bonita Tenneriello, BBO No. 662132
Elizabeth Matos, BBO No. 671505
PRISONERS' LEGAL SERVICES OF
MASSACHUSETTS
50 Federal St, 4th Floor
Boston, MA  02110
P: (617) 482-2773
F: (617) 451-6383
btenneriello@plsma.org
lmatos@plsma.org

Roger Bertling, BBO No. 560246
THE WILMERHALE LEGAL SERVICES
CENTER OF HARVARD LAW SCHOOL
122 Boylston Street

Jamaica Plain, MA 02130
P: (617) 522-3003
F: (617) 522-0715
rbertlin@law.harvard.edu

John Roddy, BBO No. 424240
Elizabeth Ryan, BBO No. 549632
BAILEY & GLASSER LLP
99 High Street, Suite 304
Boston MA 02110
P: (617) 439-6730
F: (617) 951-3954
jroddy@baileyglasser.com
eryan@baileyglasser.com

*Attorneys for Plaintiffs and Proposed
Classes*

*\* Admitted pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I, Joanna K. Darcus, hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 17, 2018.

/s/ Joanna K. Darcus
Joanna K. Darcus
