IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLIE PEARSON, ROGER BURRELL, BRIAN GIVENS, and THE LAW OFFICES OF MARK BOOKER, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS M. HODGSON, Individually and In His Official capacity as Sheriff Of Bristol County<br><br>and<br><br>SECURUS TECHNOLOGIES, INC.<br><br>Defendants. | Case No. 18-cv-11130<br><br>LEAVE TO FILE GRANTED ON SEPTEMBER 6, 2018 |

**SECURUS TECHNOLOGIES, INC.'S
REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## INTRODUCTION

In their Opposition, Plaintiffs raise no legitimate basis for this Court to deny Securus Technologies, Inc.'s ("Securus") Motion to Dismiss. Plaintiffs do not dispute that a plaintiff cannot state a conversion claim where, as in this case, that plaintiff has consented to the defendant's possession of her property. Plaintiffs admit that they "agreed to pay" for Securus's phone services, which were charged at published rates. That Plaintiffs allege that there was no viable alternative to communicating with their families and friends has no relevance to whether this Court should dismiss their conversion claim – indeed, prisoners and their families could levy that allegation against all providers of prison services. Plaintiffs' conversion claim thus fails.

Plaintiffs also fail to state a claim for violation of Chapter 93A. Plaintiffs do not allege any deception or misrepresentation by Securus. Nor do they allege any conduct by Securus that falls within the boundaries of what can be considered "unfair practices" under Massachusetts law. Plaintiffs draw heavily from their allegations attacking the conduct of Sheriff Hodgson to support their Chapter 93A claim against *Securus*. As to Securus, however, Plaintiffs only challenge "the inflated rates they were charged [that] flow from that contract" about which they complain. Under Massachusetts law, rates charged for a telephone call, approximately doubled by the provider in order to cover its approximately doubled costs, cannot be an "egregiously wrong" business practice sufficient to state a Chapter 93A claim.

Finally, Plaintiffs' Opposition confirms that none of their claims arising before August 1, 2016 can survive Rule 12(b)(1) under the filed rate doctrine. Although Plaintiffs argue that the "case is not about call rates" that argument is belied by their own allegations in the Complaint. Courts, including this Court, have rejected precisely these kinds of transparent efforts by plaintiffs to circumvent the filed rate doctrine by repackaging telephone rate claims as conspiracies, schemes, or other illegal conduct.

1

**ARGUMENT**

I.  **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST SECURUS.**

   A.  **Plaintiffs Have Not Alleged The Elements Of Conversion.**

In Securus's moving brief, Securus explained that plaintiffs who, like Plaintiffs in this action, voluntarily turned over the property at issue cannot sustain a claim for conversion. *See* Br. 7-8. Plaintiffs do not contest the validity of this argument, or the cases relied upon by Securus. *See* Opp. 13-14. They argue instead that because of the differences in bargaining power as between Securus and Plaintiffs, the act of paying the rates charged cannot be "voluntary" for purposes of assessing their conversion claim. Opp. 13. Plaintiffs cite no case that so holds.

Rather, Plaintiffs cite a single case, *Commw. v. DeCotis*, 316 N.E.2d 748 (Mass. 1974), which did not even address a claim for conversion. Plaintiffs suggest that in *DeCotis*, the Supreme Judicial Court recognized that consent cannot be imputed from payment when those making the payments have no meaningful alternative. Opp. 13. *DeCotis* stands for no such proposition. The *DeCotis* case addressed whether a fee was fair, and it discussed how an individual's willingness to pay a fee for a product or service where there was no other option bore on the issue of fairness. *DeCotis*, 316 N.E.2d at 755 ("The willingness of tenants to pay resale fees, and even to contract knowingly to pay those fees, does not make the collection of such a fee fair. It merely demonstrates the extent to which the defendants had their tenants at their mercy."). The *DeCotis* court did not adjudicate whether an individual's willingness to pay a fee for a product or service is *involuntary* for purposes of assessing a conversion claim. Plaintiffs do not (because they cannot) address this crucial distinction, and they identify no case in which a court even considered Plaintiffs' "no other viable option" argument to avoid dismissal of a conversion claim, let alone a case where a court applied such a theory. *See* Opp. 13-14.

That a consumer is not offered competing alternatives when it considers purchasing a product or service does not somehow render the decision to ultimately make the purchase inherently involuntary.[1] As the First Circuit has recognized, "[c]onversion implies appropriation." *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499-500 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009). Where appropriation is absent, such as where the defendant had voluntarily received credit card information from customers that was subsequently fraudulently used by a third party, conversion is "hardly the first word that comes to mind." *Id.* By contrast, unprivileged destruction of goods is a "classic case" of conversion. *Boston Educ. Research Co., Inc. v. Am. Mach. & Foundry Co.*, 488 F.2d 344, 348 (1st Cir. 1973). *See also Kelley v. LaForce*, 288 F.3d 1, 12 (1st Cir. 2002) ("[I]ntentional deprivation of property from the rightful owner is sufficient to demonstrate 'dominion or control'"). Likewise, even a plaintiff's mortgage payments, without allegations that "the funds [ ] earmarked for the mortgage were not used for that purpose or that [the plaintiff] gave the funds unwillingly," cannot support a conversion claim, because the payment for the mortgage—even though the alternative is to, eventually, lose the house—was made voluntarily. *Coyle v. Santucci*, No. 13-11204-DHH, 2014 WL 298843, at *7 (D. Mass. Jan. 24, 2014) (dismissing conversion claim). Claims for conversion are thus rooted in the act of defendants seizing control of plaintiffs' property. Plaintiffs do not allege that occurred here.

Plaintiffs fail to allege here the requisite seizing of control of their property. That should come as no surprise, as they themselves acknowledge that they "agreed to pay for phone services."

---

[1] While Plaintiffs liberally misuse the term "monopoly" to suggest that Plaintiffs' payments were involuntary, Securus is not a monopoly, and Plaintiffs have not alleged any antitrust claims in the Complaint. *See* Opp. 13. Further, courts reject allegations that service providers to prison populations are exercising monopolistic power. *See Arsberry v. Illinois*, 244 F.3d 558, 566 (7th Cir. 2001) (affirming dismissal of claims based on practice of prisons granting telephone company exclusive right to provide inmate telephone services in exchange for site commissions); *Holloway v. Magness*, No. 07CV00088, 2011 WL 204891, at *3-4, (E.D. Ark. Jan. 21, 2011) (entering summary judgment for defendants where plaintiffs alleged prison had "granted a monopoly to telephone company to provide services to inmates" in exchange for site commissions).

Opp. 14. It is a question of assent; the choice to pay or not to pay, is what matters, not a plaintiff's view of whether there was any alternative, or what may be lost by declining. *See* Opp. 13.

**B.      Plaintiffs Fail To State A Claim For Violation Of Chapter 93A.**

As a threshold matter, Plaintiffs incorrectly argue that this Court cannot decide, as a matter of law, that Plaintiffs have failed to plead an unfair or deceptive act, a required element of their Chapter 93A claim. Opp. 12. It is well-established that what can qualify as even potentially falling within the boundaries of a Chapter 93A violation is unquestionably a question of law, and Plaintiffs have no response to the case law Securus cited for that proposition. *See* Br. 9. If a plaintiff does not plead facts sufficient to state a legally viable claim that the defendant committed unfair or deceptive trade practices, courts can, and have routinely, dismissed that case on a motion to dismiss.[2] *See, e.g., GMO Trust. ex rel. GMO Emerging Country Debt Fund v. ICAP PLC*, No. 12-10293-DPW, 2012 WL 5197545, at *10 (D. Mass. Oct. 18, 2012) (dismissing claim where the "allegations simply do not rise to the level of unfair and deceptive practices contemplated by the statute"); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 41-43 (1st Cir. 1998) (dismissing complaint lacking facts sufficient to fall within bounds of "egregiously wrong" conduct); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (dismissing counterclaim for lack of sufficient facts demonstrating "bad faith").

As to the merits of Securus's argument, in its moving brief, Securus explained that, where dismissal is warranted with respect to all other claims pled by plaintiffs, courts typically dismiss a Chapter 93A claim that fails to include additional, unique allegations to support that claim. Br. 9-11. These decisions are grounded in the recognition that plaintiffs must allege a claim that comes

---

[2] Plaintiffs mis-cite *DeCotis*, 316 N.E.2d at 753-75, and *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 413-14 (Mass. 2003), to support their claim that "[t]he question of whether a defendant's conduct is unfair or deceptive should be decided on a record of facts, rather than on a motion to dismiss." Opp. 12. In neither case did the Supreme Judicial Court address the propriety of deciding a Chapter 93A claim on a motion to dismiss.

4

within "shouting distance of some established concept of unfairness." *Cummings v. HPG Int'l, Inc.* 244 F.3d 16, 25 (1st Cir. 2011) (citations omitted).[3] If a plaintiff cannot sustain any other statutory or common law claim, it is difficult to envision how the plaintiff can simultaneously state a claim for unfair or deceptive trade practices based on the identical set of facts. Plaintiffs state that "[t]hey do not rely on the conversion claim as the basis for their 93A claim," Opp. 12, and that "[n]either claim is a premise for the other," yet they proffer no facts or allegations unique to the Chapter 93A claim. *See* Opp. 12-13. To the contrary, they state that "Plaintiffs allege that Securus's conduct renders it culpable of both conversion and violation of Chapter 93A." Opp. 12-13. But that is the thrust of Securus's argument: the same "conduct" supports both claims. If the Court dismisses the conversion claim, Plaintiffs' Chapter 93A claim cannot proceed on its own because Plaintiffs have failed to plead facts demonstrating that Securus's conduct under Chapter 93A falls within "the penumbra of some common-law, statutory or other concept of unfairness." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184 (1st Cir. 2009).

To state a claim for an "unfair act" within the meaning of the statute, Plaintiffs rely on allegations regarding the conduct and authority of Sheriff Hodgson, not Securus. Opp. 9-10. Specifically, they argue that Sheriff Hodgson lacked the authority to enter into a contract that included site commissions, and argue that this violation of law by Sheriff Hodgson supports their Chapter 93A claim against Securus. Opp. 9-10. Plaintiffs, however, fail to identify any authority to support the proposition that the alleged violation of law by one party can somehow support a claim that a different party engaged in an unfair act or practice. That is, even *if* Sheriff Hodgson "lacked the requisite authority to raise revenue by receiving such site commissions" and even *if* he

---

[3] Plaintiffs point out that the *Cummings* case was an action pled under the business-to-business provision of Chapter 93A, and that the heightened standard of Section 11 does not control in this consumer case. Securus has never asserted that it does, nor cited to *Cummings* in support of this proposition. *See* Br. 10.

5

violated "Massachusetts law protect[ing] its residents from bearing costs of incarceration that the Legislature has not levied upon them or specifically authorized county sheriffs to collect," Opp. 9-10, that does not show that Securus violated Chapter 93A, nor do allegations of unlawful conduct by Sheriff Hodgson suggest that Securus engaged in any "unfairness, unconscionability, [or] deception." Opp. 9 (citing *DeCotis*, 316 N.E.2d at 754).

Rather, as to Securus itself, Plaintiffs challenge only "the inflated rates they were charged [that] flow from that contract." Opp. 10. Plaintiffs' allegation that Securus's rates are somehow unfair or deceptive, Compl. ¶ 22-24, is unfounded for two reasons. First, Securus's conduct is in no way deceptive, and Plaintiffs do not allege that it is. To the contrary, Securus's rates were on file with the Massachusetts Department of Telecommunication and Cable and were available to the public, including Plaintiffs, from the beginning of the relevant time period until August 1, 2016. *See* Br. at Exhibit A. Plaintiffs do not contest that Securus's rates were publicly available, and they do not allege any deviations from the stated rates.

Second, Securus's conduct does not fall within the boundaries of what could be considered unfair under Chapter 93A. There was no arbitrary mark-up that drove wild profits for Securus. *Cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 95 (D. Mass. 2007), *aff'd*, 582 F.3d 156 (1st Cir. 2009) (1,000% spreads for a drug). The rates were charged for services that were indeed provided as promised. *Cf. DeCotis*, 316 N.E.2d at 754 (fee for no services at all). Further, if Plaintiffs did not want to pay the rates, they simply had to use other methods of communication, less desirable though they perceived them to be. *Cf. id.* (homeowners were prevented from selling their homes if they did not pay fee). *See Vieira v. First. Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 292-94 (D. Mass. 2009) (granting a motion to dismiss Chapter 93A claim because "the pleadings do no support a claim that [defendant] engaged in unfair acts or

6

practices" when defendant did not inform plaintiffs that they may be eligible for a 60 percent discount on title insurance and "[p]laintiffs have failed to allege deception by [defendant] as defined by chapter 93A…. [because w]hat [plaintiffs] seek is a belated rebate rate from the rate to which they actually agreed"). In their Opposition, Plaintiffs identify no cases with analogous circumstances in which a court has found a Chapter 93A violation. *See* Opp. 8-12. Nor, as noted above, can they point to any court in this country finding violation of a consumer protection statute based on allegedly inflated rates charged by a telephone provider for prisoner telephone services. *See* Br. 13. Securus's alleged conduct was not unfair, it does fall within the boundaries of Chapter 93A, and Plaintiffs' claim should be dismissed.

## II. THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIMS.

In order to defeat the filed rate doctrine's jurisdictional bar, Plaintiffs argue that "this case is not about call rates" and that they "do not seek to challenge Securus's call rates." Opp. 14, 15. Plaintiffs' argument is belied by their own Complaint allegations and Opposition arguments. In their Complaint, Plaintiffs complain about "inflated charges," and state they seek "refunds of the excess amounts they were charged." Compl. ¶¶ 7, 70. Likewise, on the opening page of their Opposition, Plaintiffs state that "Securus overcharged Plaintiffs." Opp. 5. As much as Plaintiffs would like their Chapter 93A claim against Securus to be about something other than Securus's rates, their argument finds no support in their own papers.

That Plaintiffs allege a so-called "kickback scheme," Compl. ¶ 1, does not render the filed rate doctrine inapplicable. Courts here and elsewhere have rejected plaintiffs' efforts to circumvent the doctrine by claiming that their complaints are actually rooted in some scheme or conspiracy by defendants, rather than the rates ultimately charged. Plaintiffs ignore *Stote v. Maloney*, No. 03-12067-RWZ, 2006 WL 839497 (D. Mass. Mar. 31, 2006), Br. 15, where this Court observed that "the fact that a rate claim is susceptible to [ ] re-characterization [as another

7

type of claim] does not render the doctrine effective." *Id.* at *4. There, applying the filed rate doctrine, the Court dismissed RICO claims and a Chapter 93A claim[4] challenging rates. *Id.*

Plaintiffs also ignore entirely the numerous site commissions cases cited by Securus from all over the country where courts have dismissed cases based on the filed rate doctrine. Br. 15-17. Courts routinely refuse to credit plaintiffs' efforts to defeat the filed rate doctrine by recharacterizing their challenges to calling rates as something else -- as allegations of conspiracies, schemes, and violations to antitrust laws -- and dismissed those actions nonetheless. For example, in affirming the dismissal of antitrust claims under the doctrine, the Seventh Circuit explained:

> Insofar as the plaintiffs' concern is with the purely vertical arrangement between each defendant telephone company and a particular prison or jail, the filed-rate doctrine pops back in as a jurisdictional bar. The vertical agreement is effectively the tariff, that is, the contract between the provider of the regulated service (the phone company) and the customer.

*Arsberry v. Illinois*, 244 F.3d 558, 566 (7th Cir. 2001). Likewise, the Southern District of New York dismissed antitrust claims, rejecting plaintiffs' effort to recharacterize their claims:

> [C]ounsel for plaintiffs wrote "[t]ime and again, we have made clear that ours is not a case about rates.... Rather, this case is about the single provider/collect call-only system imposed by the Defendants *barring the bill payer recipients from using their chosen private provider*".... Despite plaintiffs' contention, cloaking their rate challenge in constitutional cloth is insufficient to defeat the fact that plaintiffs' claims against MCI, at heart, question the reasonableness of the rates charged…

*Byrd v. Goord*, No. 00 CIV. 2135 (GBD), 2005 WL 2086321, at *7 (S.D.N.Y. Aug. 29, 2005). *See also Daleure v. Cmmw. of Kentucky*, 119 F. Supp. 2d 683, 690 (W.D. Ky. 2000) (dismissing antitrust and § 1983 claim under the filed rate doctrine, rejecting as "disingenuous" argument that plaintiffs' claim did not attack rates but rather a "wide range of conspiratorial conduct"). As in

---

[4] The Court there did allow claims for unfair business practices under Ch. 93A to proceed as to allegations of substandard telephone connections. *Stote*, 2006 WL 89497, at *5. Plaintiffs do not challenge the calls' quality.

these analogous cases, Plaintiffs' claims against Securus attack the rates it charged.[5]

Plaintiffs' argument that the filed rate doctrine does not apply because the DTC *may have* lacked jurisdiction is also fundamentally flawed. Plaintiffs argue that "*[i]f the DTC lacked jurisdiction* over Securus at any point prior to August 1, 2016, then the filed tariff provides Securus no safe harbor." Opp. 17 (emphasis added). But this argument is not tethered to any allegation in the Complaint or one of which this Court can take judicial notice. Plaintiffs have cited no authority holding that the filed rate doctrine no longer applies where the regulator with which the rate was filed ultimately is proven to not have jurisdiction over the filed rate. *See* Opp. 17.[6] Finally, Plaintiffs argue that the DTC cannot hear Plaintiffs' claims because Securus withdrew its rates with the DTC, and the DTC currently does not have jurisdiction over Securus. Opp. 17. But Plaintiffs cite no authority to support their argument that the DTC would not be willing to hear a complaint challenging tariffs that were later withdrawn. *See* Opp. 17.

## III. PLAINTIFFS DO NOT CONTEST THAT PLAINTIFFS BURRELL AND GIVENS LACK STANDING AND THEIR CLAIMS ARE MOOT.

In its moving brief, Securus explained that plaintiffs Burrell and Givens lack standing to bring this case based on Plaintiffs' failure to allege that they paid for any Securus phone calls and that their claims for injunctive relief are moot given their status as former, and not current, prisoners. Br. 17-18. Plaintiffs do not contest these points, and in fact concede mootness. Opp. 18. Unable to defend the claims asserted on behalf of Burrell and Givens, Plaintiffs advance various arguments to support unfiled claims of unidentified other prisoners who Plaintiffs state

---

[5] Plaintiffs also argue that a complaint alleging violation of consumer protection and intentional tort claims cannot be barred under the filed rate doctrine. Opp. 15 (citing *Gelb v. AT&T Co.*, 813 F.Supp. 1022 (S.D.N.Y. 1993)). *Gelb* did not concern inflated rates, but rather fraud in advertising. Courts dismiss consumer protection and tort claims under this doctrine when those claims challenge telephone rates. *See e.g. Stote*, 2006 WL 839497, at *4.

[6] Plaintiffs cite the dissenting opinion in *Walton v. New York State Dep't of Corr. Servs.*, 921 N.E.2d 145, 160-63 (N.Y. 2009) to support their argument that, as a matter of policy, a party should not be able to invoke the filed rate doctrine while simultaneously stating that the regulator lacked jurisdiction. Opp. 16-17. In *Walton*, unlike here, the regulator found that it did not have jurisdiction over the relevant rates. *Walton,* 921 N.E.2d at 160.

may seek to serve as class representatives at a later date. Opp. 18. While Plaintiffs' substantive arguments regarding the rights of these unidentified prisoners are defective in various respects, they are all legally irrelevant on this motion to dismiss the claims of the current plaintiffs in this action. Further, any ruling on these substantive arguments would be an impermissible advisory opinion. *See United States v. Puerto Rico*, 642 F.3d 103, 104 (1st Cir. 2011).

## CONCLUSION

For the foregoing reasons, and for the reasons described in Securus's opening brief, Securus respectfully requests that this Court grant its motion to dismiss.

Dated: September 6, 2018

Respectfully submitted,

**SECURUS TECHNOLOGIES, INC.**

By: */s/ Elizabeth Herrington*
Jason D. Frank, BBO #634985
Amanda McGee, BBO #678883
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110-1726
Tel. 617.951.8000
Fax. 617.951.8736
jason.frank@morganlewis.com
amanda.mcgee@morganlewis.com

Elizabeth B. Herrington *
Megan R. Braden *
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601-5094
Tel. 312.324.1445
Fax. 312.324.1001
beth.herrington@morganlewis.com
megan.braden@morganlewis.com

*Attorneys for Securus Technologies, Inc.*

*Admitted pro hac vice

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 6, 2018.

*/s/ Elizabeth Herrington*
Elizabeth Herrington