UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLIE PEARSON, ROGER BURRELL, BRIAN GIVENS, and THE LAW OFFICES OF MARK BOOKER, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS M. HODGSON, individually and his official capacity as Sheriff of Bristol County, and SECURUS TECHNOLOGIES, INC., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 18-cv-11130-IT <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

December 20, 2018

TALWANI, D.J.

I.    Introduction

This case challenges costs imposed by a provider of inmate telephone services on the recipients of telephone calls made by inmates in Bristol County, Massachusetts, and paid by the provider as commissions to the Bristol County Sheriff's Office. Before the court is Defendant Thomas M. Hodgson's ("Sheriff Hodgson") Motion to Dismiss [#26] and Defendant Securus Technologies, Inc.'s ("Securus") Motion to Dismiss [#28]. Finding that the Complaint [#1-1] states claims upon which relief may be granted, but that certain matters alleged may not proceed, the motions are ALLOWED in part and DENIED in part.

II.    Factual Background

The facts alleged in the Complaint [#1-1] are as follows. Thomas M. Hodgson is the

Sheriff and head of the Bristol County Sheriff's Office (the "Sheriff's Office"). Compl. ¶ 4 [#1-1]. In May 2011, the Sheriff's Office issued a "Request for Responses" seeking bids to operate the inmate telephone calling services ("Inmate Calling Services") at the Bristol County Jail, Bristol County House of Correction, Bristol County Sheriff's Office Women's Center, Carlos Carreiro Immigration Detention Center, and Ash Street Jail and Regional Lock-Up (collectively, "Bristol County Correctional Facilities"). Id. ¶¶ 18, 28. Section 5.1.21 of the Sheriff Office's Request for Responses required each bidder to include in its bid site "commissions" or other "compensations" that the bidder would pay to the Sheriff's Office based on gross revenues that the bidder receives from operating its Inmate Calling Services. Id. ¶¶ 29-30.

On May 23, 2011, Securus responded to the Sheriff Office's Request for Responses and offered to pay to the Sheriff's Office monthly site commission payments in the amount of 48% of Securus's gross revenues from the Inmate Calling Services at the Bristol County Correctional Facilities if Securus was awarded the contract. Id. ¶¶ 31, 34. On August 8, 2011, the Sheriff's Office awarded Securus a five-year exclusive contract to operate the Inmate Calling Services at the Bristol County Correctional Facilities through a Coinless Inmate & Public Telephone System. Id. ¶ 32. The contract included Securus's payment of site commissions as one of its contractual terms and provided options for four additional one-year contract renewals. Id. ¶¶ 2, 33-34.

From August 2011 to June 2013, Securus operated the Inmate Calling Services for the Bristol County Correctional Facilities and paid the Sheriff's Office monthly site commissions totaling $1,172,748.76. Id. ¶ 35. This amounted to nearly half of all gross revenues that Securus received from collect and debit calls made from the Bristol County Correctional Facilities. Id. ¶ 23. Securus passed on the cost of these site commission payments to the recipients of telephone

calls from the Bristol County Correctional Facilities, including inmates' families, friends, attorneys, and others, by nearly doubling the cost of receiving credit and debit telephone calls made from the Bristol County Correctional Facilities. Id. ¶¶ 1-2, 24. The additional charge was used to pay these site commissions and bears no relationship to the actual cost of providing Inmate Calling Services or the quality of the Inmate Calling Services. Id. ¶¶ 21-25. This contract remained in effect for over four years. Id. ¶¶ 32, 41.

In 2013-2014, the Federal Communications Commission ("FCC") limited *interstate* site commissions by requiring that rates for inmates' interstate telephone calls be based on the cost of operation, and finding that site commission payments are not a legitimate cost of providing Inmate Calling Services. See Id. ¶¶ 36-37. In August 2016, the FCC attempted to set rate caps for local and long-distance inmate calling, but those rates were stayed by a court order. Id. ¶ 40 (citing Order, Securus Techs. v. FCC, No. 16-1321 (D.C. Cir. Nov. 2, 2016)). Thus, the FCC's rate caps existed for interstate calling, but not local or intrastate long-distance calling. Id.

On October 21, 2015, the Sheriff's Office and Securus amended the contract by altering the form and timing of the site commission payments. Id. ¶ 42. In lieu of monthly site commission payments, the amendment provided that Securus would pay the Sheriff's Office a lump-sum payment of $820,000 for the duration of the contract term, ending June 30, 2020. Id. ¶¶ 42-43. In exchange, Securus retained its exclusive contract with the Sheriff's office for an additional four years. Id. ¶ 44. While the form and timing of the site commission payments differed, Securus continues to increase the cost of calls from Bristol County Correctional Facilities and uses the additional charge to compensate the payment to the Sheriff's Office. Id. at ¶ 46. The contract remains in effect today. See id. ¶¶ 42-43, 46.

Up until June 2016, Securus filed a tariff, or a filing of its Inmate Calling Services call

rates, with the Massachusetts Department of Telecommunications and Cable ("DTC"). In June 2016, the DTC limited intrastate calling rates to the same rates set by the FCC for interstate Inmate Calling Services. Id. ¶ 47. On August 1, 2016, Securus withdrew and cancelled its tariff with the DTC, claiming exemption from regulation under Mass. Gen. Laws c. 25C, § 6A. Id. ¶ 48. Since then, Securus has charged Inmate Calling Service consumers more than the DTC rates for intrastate calls. Id. ¶ 49.

Plaintiff Kellie Pearson ("Pearson") received and paid for phone calls from her deceased fiancé, Michael T. Ray, while he was incarcerated at the Bristol County House of Corrections from September 2015 to June 2017. Id. ¶ 12. While incarcerated, Mr. Ray regularly called to speak to Pearson and their daughter. Id. Pearson states that the high cost of Securus phone calls placed a financial strain on her, forced her to decide whether to pay to receive her fiancé's calls or pay other bills, and caused stress to both her and Mr. Ray. Id.

Plaintiff Roger Burrell ("Burrell") was previously incarcerated at the Bristol County House of Corrections, where he used the Inmate Calling Services operated by Securus to call his mother, sister, and legal counsel, all of whom are Massachusetts residents. Id. ¶ 13. Burrell could not write letters by hand due to a medical issue. Id. The cost of Securus phone calls subjected his mother and sister to financial hardship and prevented them from having more regular contact with Burrell. Id.

Plaintiff Brian Givens ("Givens") was previously incarcerated at the Bristol County House of Corrections, during which time he called his attorney and his friend to coordinate his medical, financial, and legal needs. Id. ¶ 14. Both his attorney and his friend were Massachusetts residents. Id. He also regularly called his grandmother. Id. Givens felt anxious and alone when he was unable to reach his loved ones, and the cost of the phone calls was a source of hardship

4

for himself and the recipients of his calls. Id.

Plaintiff The Law Offices of Mark Booker is a criminal defense law firm in Boston that receives and pays for calls from its incarcerated clients. Id. ¶ 15. Those calls include calls from clients at Bristol County Correctional Facilities. Id.

III. Procedural History

On May 2, 2018, Plaintiffs filed this putative class action Complaint [#1-1] in the Massachusetts Superior Court alleging that payments made by Securus to the Sheriff's Office violate Massachusetts state law and the Massachusetts Constitution. See Compl. [#1-1]. Defendants removed the case to this court later that month, basing subject matter jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d), because minimal diversity exists, the proposed plaintiff class has more than 100 members, and the amount in controversy exceeds $5,000,000. See Not. of Removal ¶ 9 [#1].

Plaintiffs seek injunctive relief on their own behalf and on behalf all Massachusetts residents who reasonably anticipate or expect to use Securus's Inmate Calling Services to make or receive phone calls from Bristol County facilities in the future. Id. ¶¶ 52-63. Plaintiffs also seek monetary relief on their own behalf and on behalf of all Massachusetts residents who have paid Securus for use of Inmate Calling Services from Bristol County Correctional Facilities during the time period beginning on the first day permitted by the applicable statute of limitations and continuing until a judgment or settlement of this case. Id. ¶¶ 64-72.

Counts I through IV of Plaintiffs' Complaint [#1-1] are brought against Sheriff Hodgson. Count I seeks a declaratory judgment that the monthly site commissions and lump sum payments included in Securus's contract with the Bristol County contract is contrary to Massachusetts State law and the Supreme Judicial Court's Decision in Souza v. Sheriff of Bristol County, 455

Mass. 573, 918 N.E.2d 823 (2010). Compl. ¶¶ 73-75. Count II seeks a declaratory judgment that inflated Inmate Calling Services phone charges that Plaintiffs paid are unlawful taxes or unlawful fees. Id. ¶¶ 76-78. Count III alleges that the Sheriff's Office engaged in *ultra vires* taxation for which it does not have statutory authority, in violation of Part I, Article XXIII of the Massachusetts Constitution. Id. ¶¶ 79-85. Count IV alleges that, in the alternative to Count III, the Sheriff's Office extracted unlawful fees from Plaintiffs for which it has no statutory authority to charge, in violation of Mass. Gen. Laws ch. 126, § 29. Id. ¶¶ 86-93.

Counts V and VI are brought against Securus. Count V alleges that Securus committed the tort of conversion by taking the class members' money through coercion and without legal authority to do so. Id. ¶¶ 91-93. Count VI alleges that Securus engaged in unfair and deceptive trade practices, in violation of Mass. Gen. Laws ch. 93A, § 2. Id. ¶¶ 94-101.

Sheriff Hodgson and Securus moved to dismiss. Sheriff Hodgson's Mot. to Dismiss ("Sheriff's MTD") [#26]; Securus's Mot. to Dismiss ("Sec. MTD") [# 28].

IV. Preliminary Matters

First, a bit of housekeeping. Plaintiffs' Complaint [#1-1] is unclear as to the relief being sought against Sheriff Hodgson. Plaintiffs stated in their Opposition to Sheriff [] Hodgson's Motion to Dismiss ("Pls.' Opp'n to Sheriff's MTD") [#34] and at the hearing on these motions that they only seek equitable relief against Sheriff Hodgson. Plaintiffs further stated at the hearing that, despite naming Sheriff Hodgson in both his individual and official capacity, they do not object to dismissal of claims against Sheriff Hodgson in his individual capacity. Accordingly, to the extent that the Plaintiffs assert claims against Sheriff Hodgson in his individual capacity or seek monetary damages from Sheriff Hodgson in either his individual or official capacity, such claims are DISMISSED.

Next, Plaintiffs Burrell and Givens, two former inmates at Bristol County Correctional Facilities, seek injunctive relief. Defendants argue that because Plaintiffs Burrell and Givens were released from custody prior to the filing of this Complaint [#1-1], their claims for injunctive relief are moot. Therefore, they lack standing to bring these claims. Plaintiffs concede that Plaintiffs Burrell and Givens were released from custody and that their claims for injunctive relief are moot. In light of this concession, any claims for injunctive relief on behalf of Plaintiffs Burrell or Givens are also DISMISSED.

V.  Standard of Review

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Plaintiffs' Complaint [#1-1] must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550. U.S. 544, 570 (2007). This court must accept all factual allegations in Plaintiffs' complaint as true and draw all reasonable inference in favor of the Plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

VI. Sheriff Hodgson's Motion to Dismiss

A.  Count I – Contravenes Souza

In count 1, Plaintiffs contend that Sheriff Hodgson violated state law, as construed by Souza, 918 N.E.2d 823, by requiring Securus to make payments to the Sheriff's Office beyond what the legislature expressly gave the Sheriff authority to charge. Compl. ¶¶ 74-75 [#1-1]; Pls.' Opp'n to Sheriff's MTD 10 [#34]. Plaintiffs claim that forcing Securus to collect higher costs from Inmate Calling Services call recipients to fund the site commissions or lump sum payments is the functional equivalent to the Sheriff's Office raising revenue without statutory authorization. Pls.' Opp'n to Sheriff's MTD 10-11 [#34]. And, according to Plaintiffs, because financial charges imposed by county sheriffs "are invalid" "in the absence of specific legislative

7

authority," and no such legislative authority exists for a county sheriff to collect these payments, the site commissions and lump sum payments are unlawful. Id. at 10 (quoting Souza, 918 N.E.2d at 833).

In Souza, the plaintiffs challenged the imposition of certain fees that the sheriff of Bristol County imposed on inmates in his custody for their "cost of care," medical care, haircuts, and GED testing. 918 N.E.2d at 825-26. The five-dollar daily "cost of care" fees were automatically deducted or debited from inmates' account, while the fees for medical care, haircuts, and GED testing were deducted when an inmate asked for that specific service. Id. The Massachusetts Supreme Judicial court recognized that "[a]s a general rule[,] the powers, duties, rights, and liabilities of a sheriff as a jailer are prescribed by statute, and his powers, duties, rights and liabilities are thus circumscribed by the legislative enactments of the particular jurisdiction." Id. at 829 (alterations in original) (quoting 1 W.H. Anderson, Sheriffs, Coroners, and Constables § 42, ¶ 266 (1941)). In invalidating the imposed fees, the Supreme Judicial Court held that "[w]here the Legislature expressly authorized the sheriff to charge certain fees and use inmate funds in particular ways and only in circumscribed circumstances, . . . we conclude that the broad authority to have control and custody of county correctional institutions . . . does not confer authority to impose the challenged fees." Id. at 833.

Sheriff Hodgson argues that Plaintiffs read Souza too broadly, and that the comprehensive statutory scheme alleged to have been violated in Souza does not apply to the site commissions for three reasons. Sheriff Hodgson's Mem. in Support of its Mot. to Dismiss ("Sheriff's Mem.") 7-8 [#27]. He argues first that unlike the fees at issue in Souza, the Sheriff's Office is not deducting money from inmate funds but instead collecting payments contractually agreed to by Securus. Id. at 8. He also contends that Souza is in applicable because the Sheriff's

8

Office is not the one charging any fees to Plaintiffs. Id. Third, he argues that the fees at issue in Souza related to fees that sheriffs could charge "in the performance of their duties," whereas the site commissions at issue here are simply a contractual arrangement with a private telecommunications company. Id.

Sheriff Hodgson's argument that Souza's framework does not apply falters for several reasons. First, while the fees invalidated in Souza were deducted directly from inmates' accounts, Souza's holding was not limited to determining what fees sheriffs may deduct from inmates' accounts. See 918 N.E.2d at 832 (stating that a sheriff may only charge certain enumerated fees for service of criminal and civil process); id. at 826 (when an inmate had an outstanding balance in their account, the amount owed was deducted from funds sent to the inmates from friends and family). That the Sheriff's Office received funds that Securus collected from the recipients of inmates' calls, rather than requiring those call recipients to deposit the funds into the inmates' accounts for collection, is a distinction without a difference.

Second, although it is Securus, and not the Sheriff's Office, that is collecting telephone fees from the Inmate Calling Services call recipients, Plaintiffs challenge is to the Sheriff's Office's collection of revenue in the performance of the Sheriff's duties, see 103 Code Mass. Regs § 948.10—and not Securus's collection of the telephone fees that it does not pass back to the Sheriff. Allowing county correctional facilities to collect fees in excess of those allowed by the legislature by hiring a third-party vendor to collect those fees runs afoul of Souza. See 918 N.E.2d. at 833 ("[I]n the absence of specific legislative authority for the challenged fees, they are invalid.").

Finally, Sheriff Hodgson's claim that the Sheriff's Office is not collecting any fees "in the performance of [its] duties," but rather that he is exercising his right to enter into a private

contract, is to no avail. Providing the Bristol County correctional facility inmates reasonable access to public telephone calls is one of the sheriff's duties, see 103 Code Mass. Regs. § 948.10, and the contract with Securus—including the requirement that Securus make commission payments to the Sheriff's Office—was done in executing that duty. "The Legislature has expressly authorized sheriffs to charge certain fees in the performance of their duties." Souza, 918 N.E.2d at 832. Without express authority saying otherwise, Sheriff Hodgson may not require payments to perform his legislatively-assigned obligation. Sheriff Hodgson is not alleviated of this prohibition simply because he contracted the administration of his responsibility to a third party. See id. ("[A] government agency or officer does not have the authority to issue regulations, promulgate rules, or . . . create programs that conflict with or *exceed the authority* of the enabling statute." (emphasis added)). Although Sheriff Hodgson is allowed, and often must, enter into private contracts to operate the Bristol County Correctional Facilities, see Richardson v. Knight, 521 U.S. 399, 405-407 (discussing the role of private contractors in prisons), he may not do so in a manner that conflicts with state law.

Sheriff Hodgson contends that even if the site commission payments fall within the legislative scheme addressed in Souza, receiving site commissions to fulfill his duty cannot be inconsistent with that scheme as Massachusetts has indicated a policy choice in favor of site commissions. Sheriff's Mem. at 1 [#27]. Sheriff Hodgson notes that there are no Massachusetts laws, regulations, or rules prohibiting site commissions at the county level, and the Massachusetts legislature has explicitly approved them in state prisons. Id. at 1, 9 (citing 103 Mass. Code Regs. 482.06(6) ("All Commissions received [by the Department of Corrections]

10

that are derived from inmate calling shall be returned to the General Fund of the Commonwealth.")).

But, as the Supreme Judicial Court made clear in Souza, simply because the legislature has allowed a state-level official to engage in certain actions or collect certain fees does not grant a county sheriff the same authority. See, e.g., 918 N.E.2d. at 831 (statute giving Commissioner of Corrections the authority to establish a haircut fee does not allow sheriff to establish a haircut fee); cf. id. ("Even if the commissioner were to authorize the challenged fees (in the absence of express regulation), the question . . . [is] whether the sheriff was statutorily authorized to impose the fees."). And, as previously noted, the legislature has established a comprehensive framework of the fees that a county sheriff may charge in the performance of his duties. See id. at 832.

The Sheriff's reliance on the lack of an express prohibition on his collection of site commissions is the same argument that was rejected in Souza, where the sheriff argued that he could collect the challenged fees because "nothing in the statutory scheme proscribes them." Id. at 831. But, following the Supreme Judicial Court's guidance, the court finds that had the Massachusetts Legislature intended to grant county sheriffs the authority to collect site commissions derived from inmate calling, it would have stated as much—as it did for the Department of Corrections. See id. at 833 ("Had the Legislature intended to authorize the sheriff to impose the challenged fees, it would have said so expressly as it had done with other fees.").

Accordingly, "in the absence of specific legislative authority for the challenged [site commissions], they are invalid." Id. Sheriff Hodgson's Motion to Dismiss [#26] is DENIED as it relates to Count 1.

B.     Counts II – Improper Collection of Revenue

In counts II, III, and IV, Plaintiffs further challenge the legal status of payments made by Securus to the Sheriff's Office, to the extent that they are funded by increasing the cost of Inmate Calling Services well beyond the true cost of providing the service. Plaintiffs allege that Sheriff Hodgson is improperly collecting revenue, in the form of an unlawful fee or unlawful tax on the end users, through a third-party intermediary without having the statutory authority to do so.

Sheriff Hodgson states that these claims must be dismissed because the site commissions were voluntary payments by Securus not associated with any government benefit and therefore, because they were not mandatory, are not an unlawful tax. Sheriff's Mem. 10-11 [#27]. Sheriff Hodgson further argues that the contractual terms with Securus were not fees because the payments were not in exchange for a governmental service, and, even if construed as fees, were not unlawful.[1] Id. at 11-16.

Regardless of whether they are considered a fee or a tax, Plaintiffs' allegations provide plausible grounds that the site commissions and lump sum payments were unlawful monetary payments exacted from them and other Inmate Calling Services consumers without legislative authority. See Bell Atl., 550 U.S. at 555-58. Plaintiffs have alleged, and the court accepts as true for purposes of this motion, that at the public bidding process, the Sheriff's Office required payments from any potential Inmate Calling Services provider beyond any real costs that the Sheriff's Office incurs to provide Inmate Calling Services. See Compl. ¶¶ 81, 83, 87. Plaintiffs

---

[1] In his reply, Sheriff Hodgson contends further that Plaintiffs do not have standing to argue that these were unlawful fees or taxes on Securus. Sheriff's Rep. 7 [#41]. But Plaintiffs are contending that this fee or tax is imposed on the end user, and that they are directly affected by the requirement that Securus make such payments. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (stating that, to have Art. III standing, Plaintiffs must have suffered an injury that is fairly traceable to the challenged conduct, and can be resolved by the court's decision).

12

further claim that in doing so, Sheriff Hodgson has forced that Inmate Calling Services provider, Securus, to pass on their costs to Plaintiffs in the form of inflated call rates for telephone calls from the Bristol County Correctional Facilities. Id. ¶¶ 80, 81, 87. And, Defendants do not challenge Plaintiffs assertions that Plaintiffs have no say as to whether Securus—as a result of its obligation to pay these commissions to the Sheriff's Office—charges the inflated rate, and that Plaintiffs receive no additional benefit from increased rate beyond what they would receive if Plaintiffs were only charged the amounts Securus seeks for itself for providing Inmate Calling Services.

Given these allegations, in light of the court's finding as to count 1, see supra Part V (A), Plaintiffs have complied with Federal Rule of Civil Procedure 8(a)(2)'s pleading requirement that Plaintiffs plead factual content which "allows the court to draw the reasonable inference that [D]efendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While Sheriff Hodgson may disagree that Securus's payments to the Sheriff's Office go beyond the Sheriff Office's costs associated with providing Inmate Calling Services, that argument is for another day and is not appropriate at this procedural posture.

For the foregoing reasons, Sheriff Hodgson's Motion to Dismiss [#26] is also DENIED as to counts II, III, and IV.

VII.    Securus's Motion to Dismiss

   A. Count V – Conversion

In count V, Plaintiffs allege that Securus coerced or otherwise took Plaintiffs' money, in the amount of the inflated cost for the Inmate Calling Services from the Bristol County Correctional Facilities, without the legal authority to do so. Compl. ¶¶ 91-93 [#1-1]. Securus argues that count V must be dismissed because Plaintiffs' allegations do not meet the necessary

13

elements of the tort of conversion. Specifically, Securus argues that their conduct is not wrongful because Plaintiffs voluntarily accepted and paid for Securus's Inmate Calling Services without any misrepresentation or fraud by Securus. Securus' Memorandum in Support of Mot. to Dismiss ("Sec. Mem.") 6-9 [#29].

To prove the tort of conversion under Massachusetts law, Plaintiffs must show that Securus (1) exercised ownership or control over the plaintiffs' personal property; (2) intentionally and wrongfully; and (3) at the time when the Securus had no legal right of possession over that property. Beliveau v. Ware, 33 N.E.3d 459, 462 (Mass. App. 2015). Put differently, to survive a motion to dismiss, Plaintiffs must plead sufficient facts to show that Securus took their money without their consent. See In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489, 499-500 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) ("Conversion implies appropriation.").

Plaintiffs concede that Inmate Calling Services consumers agreed to pay for Inmate Calling Services phone calls, but cite Commonwealth v. Decotis, 316 N.E.2d 748, 754-55 (Mass. 1974), to support their argument that Securus's monopoly over the Inmate Calling Services from the Bristol County Correctional Facilities, and the lack of a viable alternative, make the transaction coercive and unfair, and thereby negate their voluntariness. Pls.' Opp'n to Sec. Mot. to Dismiss ("Pls.' Opp'n Sec. MTD") 13-14 [#35].

Plaintiffs citation to Decotis does not stand for the proposition for which they offer it. In Decotis, the Massachusetts Attorney General brought suit pursuant to M.G.L. ch. 93A, § 4 against defendants that managed a mobile home park and required their tenants to pay the defendants a resale fee when those tenants sold their mobile homes. 316 N.E.2d at 750. The Supreme Judicial Court found that the resale fee was *unfair* for purposes of chapter 93A even

14

though the tenants had voluntarily agreed to that contract term. Id. at 755. The court did not, however, find that the lack of viable alternatives made the fee *involuntary*. See id.

Here, while Plaintiffs may, and do, argue that the increased rate was unfair, see infra Part VI(B), they have failed to sufficiently plead that Securus committed the tort of conversion. The court need not accept as true Plaintiffs' charge that Securus coerced them in to paying the charged fee for Inmate Calling Services without appropriate factual support to establish a plausible claim of conversion. See Air Sunshine, Inc. v. Carl, 663 F.3d 27, 30 (1st Cir. 2011) (when considering a motion to dismiss, the court accepts the well-pleaded facts as alleged in the complaint but does "not accept the complaint's legal conclusions of naked assertion[s] devoid of further factual enhancement." (alteration in original) (internal quotation marks and citation omitted)). And, because Plaintiffs have conceded that they voluntarily agreed to pay Securus's fees, their claim for conversion cannot stand. See Edinburg v. Allen Squire Co., 12 N.E.2d 718, 721 (Mass. 1938) ("[C]onsent by the owner of the property to an act, which otherwise might be found to amount to conversion, would preclude such a finding.").

Accordingly, Securus's Motion to Dismiss [#28] is ALLOWED in regard to count V.

B. Count VI – Chapter 93A

Finally, Plaintiffs claim that Securus engaged in unfair or deceptive acts or practices including, but not limited to, charging inflated amounts from the putative monetary relief class in order to make unlawful payments to the Sheriff's Office, taking Plaintiffs' money through coercion, and using funds derived from inmates' telephone calls to make payments to the Sheriff's Office that contravene Massachusetts statutes and regulations. Compl. ¶ 97 [#1-1]. Plaintiffs allege that Securus's actions violate Mass. Gen. Laws ch. 93A, § 2, and 940 C.M.R.

§ 3.16(2), and that Plaintiffs have suffered monetary harm as a result of these unfair and deceptive practices. Id. ¶¶ 96, 99.

Securus argues that Plaintiffs' chapter 93A claim must be dismissed as a matter of law. As reasons therefore, Securus first states that because Plaintiffs' claim is dependent on their legally invalid claim for conversion and does not allege that Securus made any misrepresentations other than those asserted in count V, their chapter 93A claim cannot stand on its own. Sec. Mem. 10 [#29]. Next, Securus says that Plaintiffs should not be able to allege unfair or wrongful conduct where Massachusetts has expressly allowed site commission, and where Plaintiffs admit that Securus was simply passing on its costs of doing business with the Sheriff's Office. Id. at 12-14. Finally, Securus states that because it filed tariffs with the DTC from 2011 until it withdrew the tariff in August 2016, the filed rate doctrine bars recovery for any challenged conduct that occurred prior to August 1, 2016. Id. at 14.

"Although whether a particular set of facts constitutes unfair or deceptive acts or practices ordinarily is a question of fact, the boundaries of what may qualify for consideration as a chapter 93A violation is a question of law." Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 43-44 (1st Cir. 1995) (quoting Shepard's Pharm., Inc. v. Stop & Shop Cos., 640 N.E.2d 1112, 1115 (Mass. App. Ct. 1994)). "While it is true that an action under Chapter 93A need not articulate every element of a common law tort claim in order to survive, see Mass. Farm. Bureau Fed'n, Inc. v. Blue Cross, Inc., 522 N.E.2d 660 (Mass. 1989), a defendant's allegedly unfair conduct 'must at least come within shouting distance of some established concept of unfairness, Massachusetts School of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 42 (1st Cir. 1997).'" Cummings v. HPC Intern., Inc., 244 F.3d 16, 25 (1st Cir. 2001).

While a chapter 93A claim may fail when the cause of action upon which it is based is not legally viable, Sec. Mem. 10-11 [#29] (citing cases), the case law makes clear that this need not be the case. See Mass. Farm Bureau, 403 Mass. at 729 ("[A]] violation of [chapter 93A] need not be premised on a violation of an independent common law or statutory duty." (citing Linthicum v. Archambault, 379 Mass. 381, 383 (1979))); see Cummings, 244 F.3d at 25. Rather, "[c]hapter 93A liability may exist if the defendant's conduct falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or is 'immoral, unethical, oppressive, or unscrupulous.'" Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996) (quoting PMP Assoc., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "Although the words 'unfair,' 'unreasonable,' 'unconscionable,' and 'deceptive' may appear to lack specificity, . . . their meaning may be determined from the circumstances of each case." Commonwealth v. Gustafsson, 346 N.E.2d 706, 711 (citing Decotis, 316 N.E.2d 748).

In Decotis, in finding the resale fees for mobile homes located in the defendants' mobile home park to be unfair for purposes of chapter 93A, the Massachusetts Supreme Judicial Court highlighted the fact that the defendants furnished no goods or services to the plaintiffs in connection with the resale of the mobile homes located in defendants' mobile home park, that the defendants imposed the resale provision on persons of limited means and with limited choices for housing, and that the defendants were able to enforce the resale fee only because the tenants had no reasonable alternatives but to agree to pay. 316 N.E.2d at 755. Similarly, here, Securus is providing no additional benefit to the Inmate Calling Services call recipients for the additional fee charged, see Compl. ¶ 93 ("Securus has been unjustly enriched . . . ."), is imposing the fee on people often of limited means, see id. ¶ 6 ("The excessive costs . . . imposed significant financial

17

strain on prisoners and their loved ones . . . ."); ¶ 12 ("That financial strain was a constant source of stress for [Pearson] and Mr. Ray . . . [because of] the family's limited ability to pay for Securus calls); ¶ 24 ("Securus passes on this cost to [Inmate Calling Services] consumers . . . regardless of indigence."), and Plaintiffs often have no reasonable alternative to speak to their loved ones, see id. ¶ 2 ("Prisoners in Bristol County who want to communicate with family, friends, and legal representatives have only one option available to them . . . ."); id. ¶ 5 ("For many . . . phone calls are the primary means of maintaining family ties and securing legal counsel during their incarceration); id. ¶ 18 ("Securus is the exclusive provider of [Inmate Calling Services] at all correctional facilities operated by the [Sheriff's Office].").

Securus's second argument fairs no better because, even where the Massachusetts has allowed the Department of Corrections to collect site commissions, no such law expressly allows county sheriffs to do the same. Therefore, Sheriff Hodgson's collection of revenue from Securus in the form of site commissions or lump sum payments violates Massachusetts state law as construed in Souza. See supra Part V (A). And, while Securus may simply be passing on the cost of its contractual obligations, Plaintiffs allegations establishing that Securus is doing so in a manner that helps Sheriff Hodgson circumvent state law is enough to survive a motion to dismiss.

Finally, at this stage, the filed rate doctrine provides Securus no more protection than the prior two arguments. The filed rate doctrine "limits attacks outside the regulatory process on tariffed rates filed with . . . regulatory agencies." Town of Norwood v. New Eng. Power Co., 202 F.3d 408, 416 (1st Cir. 2000). "The doctrine 'is actually a set of rules that have evolved over time but revolve around the notion that . . . utility filings with the regulatory agency prevail over unfiled contracts or other claims seeking different rates or terms than those reflected in the

filings with the agency.'" Arroyo-Melicio v. Puerto Rican Am. Ins. Co., 398 F.3d 56, 73 (1st Cir. 2005) (quoting Town of Norwood v. Fed. Energy Regulatory Comm'n, 217 F.3d 24, 28 (1st Cir. 2000)). "[T]he fact that a rate claim is susceptible to . . . re-characterization [as a different claim] does not render the doctrine ineffective." Stote v. Maloney, No. 03-12067-RWZ, 2006 WL 839497, at *4 (D. Mass. Mar. 31, 2006) (citing Am. Tel. & Telegraph Co. v. Cent. Office Tel. Inc., 524 U.S. 214, 223 (1998)).

However, this is not a case in which Plaintiffs are alleging that a contractual rate that they had with Securus differed from the rates that Securus filed with the DTC. While parts of Plaintiffs' Complaint [#1-1] may implicate the cost of Inmate Calling Services that Securus charged Plaintiffs, at least part of Plaintiffs' chapter 93A claim makes clear that Plaintiffs are challenging Securus's act of "using funds derived from the telephone calls [to] pay 'commissions' and prearranged lump-sum payments to the [Sheriff's Office] in violation of Massachusetts statutes and regulations." Compl. ¶ 97(c) [#1-1]. Therefore, Plaintiffs' challenge to Securus's payments to the Sheriff's Office under the contract stands independent of any challenges to the specific rates charged. See, e.g., Stote, 2006 WL 839497, at *5 (finding that the plaintiffs' claim regarding the quality of voice service of telephone calls at Massachusetts state prisons stood independent of the filed rate). Nothing about Securus's filed tariffs deals with the issue of what Securus is doing with the revenue that it receives from the telephone calls, and the filed rate doctrine does not shield Securus from claims of unfair or deceptive acts relating to their use of these funds. Cf. Gelb v. Am. Tel. & Tel. Co, 813 F. Supp. 1022, 1030 (S.D.N.Y. 1993) (finding that nothing about AT&T's filed rate had anything to do with its advertising practice); Halloway v. Magness, No 5:07CV00088 JLH-BD, 2011 WL 204891, at *1 (E.D. Ark. Jan. 21,

2011) (challenge to site commissions on First Amendment grounds not barred by the filed rate doctrine).

On the circumstances of this case, the court finds that Plaintiffs have pled sufficient facts that the additional fees charged by Securus to pay the Sheriff's Office unlawful site commissions or lump sum payments violates Mass. Gen. Laws ch. 93A. Securus's Motion to Dismiss [#28] is DENIED as to Plaintiff's chapter 93A claim (count VI).

VIII. Conclusion

For the foregoing reasons, the court ALLOWS in part and DENIES in part Sheriff Hodgson's Motion to Dismiss [#26] and Securus's Motion to Dismiss [#28].

As the motions pertain to claims for injunctive relief on behalf of Plaintiffs Burrell and Givens, both motions are ALLOWED. To the extent that Plaintiffs' Complaint [#1-1] asserts claims against Sheriff Hodgson in his individual capacity or seeks monetary damages from Sheriff Hodgson in either his individual or official capacity, Sheriff Hodgson's motion is ALLOWED. Sheriff Hodgson's motion is otherwise DENIED. Securus's motion is ALLOWED as it relates to count V for conversion, but is DENIED as it pertains to count VI under Mass. Gen. Laws ch. 93A.

IT IS SO ORDERED.

Date: December 20, 2018 /s/ Indira Talwani
United States District Judge