UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KELLIE PEARSON, ROGER BURRELL, BRIAN GIVENS, and THE LAW OFFICES OF MARK BOOKER, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS M. HODGSON, individually and his official capacity as Sheriff of Bristol County, and SECURUS TECHNOLOGIES, INC.,<br><br>Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Civil Action No. 18-cv-11130-IT |

<u>MEMORANDUM & ORDER</u>

June 22, 2020

TALWANI, D.J.

Plaintiffs allege that Thomas Hodgson, the Sheriff of Bristol County, Massachusetts ("Sheriff Hodgson" or "Sheriff"), has acted outside of the authority granted to him by the Massachusetts Legislature by procuring an inmate calling service that was deployed, in part, to raise revenues for the office of the Sheriff. Plaintiffs have also brought suit against Securus Technologies, Inc. ("Securus"), the inmate calling service vendor, alleging that Securus engaged in unfair and deceptive practices under Massachusetts law. Pending before the court are Defendants' <u>Motions for Judgment on the Pleadings</u> [#61], [#65] and Plaintiffs' <u>Motion for Partial Summary Judgment on Count I</u> [#70] and <u>Motion for Class Certification</u> [#76].

The lynchpin of Plaintiffs' claims—set forth in Count I as a claim for declaratory judgment—is that Sheriff Hodgson used the inmate calling contract with Securus to generate

revenues in violation of Massachusetts law as set forth by the Massachusetts Supreme Judicial Court ("SJC") in Souza v. Sheriff of Bristol Cty., 455 Mass. 573 (2010). Defendants argue that the Massachusetts Legislature *has*, in fact, authorized inmate calling as a source of revenue in a 2009 Session Law. Plaintiffs counter that Defendants are misinterpreting and overextending the 2009 law and that the Legislature never endorsed the Sheriff's practices. The parties agree that the question of law underlying these motions—whether the Sheriff may collect revenue from inmate calling services—is ripe for resolution. For the reasons set forth below, the court concludes that the Massachusetts Legislature authorized the county sheriffs' use of inmate calling to generate revenue. Accordingly, Defendants' Motions for Judgment on the Pleadings [#61], [#65] are ALLOWED, and Plaintiffs' Motion for Partial Summary Judgment on Count I [#70] and Motion for Class Certification [#76] are DENIED.

I.    PROCEDURAL BACKGROUND

Plaintiffs filed this action in Massachusetts Superior Court. See Compl. [#1-1]. Plaintiffs sought both injunctive and monetary relief on behalf of themselves as well as on behalf of a class of plaintiffs similarly situated. Id. ¶¶ 52–63; id. ¶¶ 64–72. Securus timely removed the case to this court pursuant to the jurisdiction provided by the Class Action Fairness Act. See Not. of Removal ¶ 9 [#1].

The complaint alleged six causes of action. Compl. ¶¶ 73–101 [#1-1]. Counts I through IV are brought against Sheriff Hodgson. Count I seeks a declaratory judgment that the revenues generated from the Sheriff's inmate calling service contracts with Securus are contrary to Massachusetts law as set forth by the SJC in Souza. Compl. ¶¶ 73–75. Count II seeks a declaratory judgment that, to the extent Plaintiffs were charged amounts that went to the Sheriff as commissions, the Sheriff was charging unlawful taxes or fees. Id. ¶¶ 76–78. Count III alleges

that the Sheriff engaged in *ultra vires* taxation for which it does not have statutory authority in violation of Part I, Article XXIII of the Massachusetts Constitution. Id. ¶¶ 79–85. Count IV alleges that, in the alternative to Count III, the Sheriff extracted unlawful fees from Plaintiffs beyond its statutory authority in violation of Mass. Gen. Laws ch. 126, § 29. Id. ¶¶ 86–93.

Counts V and VI are brought against Securus. Count V alleges that Securus committed the tort of conversion by taking the class members' money through coercion and without legal authority to do so. Id. ¶¶ 91–93. Count VI alleges that Securus engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 2. Id. ¶¶ 94–101.

Both Sheriff Hodgson and Securus moved to dismiss all claims. See Hodgson Mot. [#26]; Securus Mot. [#28]. The court found that the alleged conduct fell outside of the Sheriff's authority, consistent with the SJC's holding in Souza that the Sheriff could not impose fees without the Legislature's approval where he had not identified legislative authority that authorized the collection of commissions. See Mem. & Order [#45]. Accordingly, the court denied these motions except as to Plaintiffs' claim against Securus for conversion and, on Plaintiffs' stipulation, claims for monetary relief against Sheriff Hodgson in both his individual and official capacity. See id. 6, 20. This left Counts I and II, to the extent they sought declaratory relief against Sheriff Hodgson, and Count VI—the ch. 93A claim seeking monetary and injunctive relief from Securus. Defendants answered, see Answers [#49], [#50], and discovery commenced. See Scheduling Order [#53].

Several months into discovery, Defendants filed the present Motions for Judgment on the Pleadings [#61], [#65]. These motions cite legislation from 2009 concerning the Sheriff's authority to collect revenues from inmate telephone systems that was not previously before the court. Plaintiffs, in turn, filed a Motion for Partial Summary Judgment on Count I [#70], seeking

a declaratory judgment that the revenues the Sheriff generated from Securus's contract with Bristol County are contrary to Massachusetts law. Plaintiffs also filed their Motion for Class Certification [#76].

## II.   STANDARD OF REVIEW

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (citing Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)). Accordingly, the court must view the facts contained in the pleadings "in the light most favorable to the nonmovant and draw all reasonable inferences in his favor." Id. In this way, a motion for a judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss" except for that a motion under Rule 12(c) is filed after the close of pleadings and implicates the pleadings as a whole. Harper v. Melendez, No. CV 18-12137-FDS, 2019 WL 6307201, at *1 (D. Mass. Nov. 22, 2019) (citing Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008); Aponte–Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006)). The court also takes into consideration "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

On Plaintiffs' Motion for Partial Summary Judgment on Count I, the court must construe the record "in the light most favorable to the non-movant and resolv[e] all reasonable inferences in that party's favor." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008); see also Fed. R. Civ. P. 56. ("Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7–8 (1st Cir. 1990) (internal quotation marks and citation omitted). "To defeat a motion for summary judgment, the evidence offered by the adverse party cannot be merely colorable or speculative . . . [it] must be significantly probative of specific facts." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (internal quotation omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Rossy v. Roche Prods., Inc., 880 F.2d 621, 623–24 (1st Cir. 1989).

III.   FACTUAL BACKGROUND[1]

In May 2011, Sheriff Hodgson solicited bids for an inmate calling service at several of Bristol County's correctional facilities through a Request for Responses ("RFR"). Compl. ¶ 28 [#1-1]; Hodgson Answer ¶ 28 [#50]. The RFR required each bidder to include in its bid "commissions" that the bidder would pay to the Sheriff based on gross revenues that the bidder received from operating the inmate calling service, including both "collect and direct dial (debit) modes." RFR §§ 5.1.20–5.1.21 [#62-2].

On August 8, 2011, the Sheriff awarded Securus a five-year contract to serve as the vendor for the Bristol County Correctional Facilities' inmate calling service. The contract provided that the Sheriff would receive annual funding for two on-site administrator positions at $65,000 each, a $75,000 annual technology fee, and "commission" in the amount of 48% of Securus's gross revenues from the inmate calling service. Compl. ¶¶ 31, 34 [#1-1]. Between August 2011 and June 2013, Securus paid the Sheriff an aggregate of $1,172,748.76. Id. ¶ 35.

---

[1] The court resolves this case on the pleadings by taking the well-pled allegations as true. However, as the parties noted at the hearing on these motions, there is no material factual dispute that is relevant to the motions at bar.

On October 21, 2015, the Sheriff and Securus entered into a new contract for a four-year term. The new contract discontinued commissions paid to the Sheriff based on revenue but continued to fund the on-site administrator positions and annual technology fee. Furthermore, the new contract provided that these amounts would be paid by Securus through a one-time upfront payment of $820,000 instead of $205,000 annually over the course of the four-year contract.[2] Id. ¶¶ 41–44.

IV.   DISCUSSION

A.   Cross-Motions on Count I (Declaratory Judgment)

Count I of Plaintiffs' complaint seeks a declaration that the manner in which the Sheriff has contracted with Securus to provide for inmate calling in county jails is prohibited by Massachusetts law. Hodgson's motion argues that, through the 2009 Session Law, "the Massachusetts Legislature expressly authorized the [Sheriff], along with other Massachusetts sheriffs' offices, to engage in the specific acts and practices that plaintiffs now allege were outside the scope of their authority." Def. Hodgson Mem. 1 [#62]. Plaintiffs' motion for partial summary judgment, in turn, argues that the 2009 Session Law does not change the conclusion reached by the court on the motion to dismiss that the alleged conduct fell outside of the Sheriff's authority. To resolve this issue, the court first reviews the Sheriff's authority, as provided in Souza, and then turns to the 2009 Session Law.

_____

[2] In the Complaint, Plaintiffs alleged that this lump sum payment was a roundabout way of continuing to pay the Sheriff commissions. Compl. ¶ 46 [#1-1]. Plaintiffs retracted this allegation during oral argument and stated that they were no longer claiming that the Sheriff was continuing to collect commissions from the inmate telephone system. Nevertheless, Plaintiffs maintain that there is still an ongoing dispute requiring declaratory relief because, Plaintiffs allege, the Sheriff's policy of charging inmates *any* amount of money if not authorized by the Legislature is unlawful.

1.    *The Limits of the Sheriffs' Authority as Set Forth in <u>Souza</u>*

In Massachusetts, correctional facilities are operated both by the state, through the

Massachusetts Department of Corrections, and by elected county sheriffs.[3] The Massachusetts

Legislature has enacted laws, codified for the most part in Title XVIII of Part I of the General

Laws, which provide the statutory scheme for these facilities. In general, they provide that

superintendents, appointed by the commissioner of the Department of Corrections, have custody

and control over inmates in state prisons. Mass. Gen. Laws ch. 125, §§ 1, 14. Custody and

control of inmates in county facilities rests with each county's elected sheriff, as "jailer,

superintendent or keeper." Mass. Gen. Laws ch. 126, § 16. <u>Souza</u> challenged the authority of an

elected sheriff in this role.

<u>Souza</u> arose from a claim filed against Sheriff Hodgson in July 2002. In that case, the

plaintiffs challenged Sheriff Hodgson's imposition of two different types of fees on inmates: a

daily, five dollar "cost of care" fee that was assessed to all inmates "for administrative services

rendered and to assist in defraying the costs of incarceration," and various fee-for-service

charges for medical care, haircut services, and GED testing. <u>See</u> <u>Souza</u>, 455 Mass. at 575.

Judgment was entered for the plaintiffs in 2008. <u>Souza v. Hodgson</u>, No. BR-CV-2002-00870,

2008 WL 6085022 (Mass. Super. June 12, 2008). The Sheriff appealed to the Massachusetts

Appeals Court, <u>Souza v. Hodgson</u>, No. 2008-P-1873 (Mass. App. Ct.), and the SJC transferred

the case to itself on its own initiative. <u>Souza v. Sheriff of Bristol Cty.</u>, 455 Mass. 573 (2010).

In finding that the Sheriff did not have the authority to charge the challenged fees, the

SJC rejected the Sheriff's argument that he had an inherent right under the common law to

charge fees to inmates. <u>Id.</u> at 577–80. Instead, the SJC found that "the powers, duties, rights, and

---

[3] As a general matter, *prisons* are operated by the state while *jails* and *houses of correction* are
county facilities. <u>Souza v. Sheriff of Bristol Cty.</u>, 455 Mass. 573, 580 (2010).

liabilities of a sheriff as a jailer are prescribed by statute, and his powers, duties, rights and liabilities are thus circumscribed by the legislative enactments of the particular jurisdiction." Id. at 580 (quoting 1 W.H. Anderson, Sheriffs, Coroners, and Constables § 42, ¶ 266 (1941)).

Consistent with the SJC's determination that the Sheriff's authority is not inherent, but rather is created and bounded by statute, the SJC ruled that the Sheriff exceeded his authority when he acted beyond the parameters of the Legislature's statutory scheme. Id. at 584 ("A government agency or officer does not have authority to issue regulations, promulgate rules, or, as in the instant case, create programs that conflict with or exceed the authority of the enabling statutes") (citing Massachusetts Hosp. Ass'n v. Department of Med. Sec., 412 Mass. 340, 342 (1992)). For example, by charging inmates GED testing fees the Sheriff had contravened the Legislature, since the Legislature had deemed that inmates should have free access to GED testing. Id. at 586. Similarly, the SJC ruled that the Legislature made it so that only the commissioner of the Department of Corrections had the authority to establish medical care fees and thus the Sheriff was not free to charge his own. Id. at 587–88. And, as for the cost-of-care fees that were used to recoup or offset the costs associated with incarcerating inmates, the SJC found that the Legislature intended that inmates contribute to such expenses only where the inmate is earning income in connection with a work-release program. Id. at 585–86. Given this broader statutory framework crafted by the Legislature, the SJC concluded that "[h]ad the Legislature intended to authorize the sheriff to impose the challenged fees, it would have said so expressly as it had done with other fees, such as fees for service of process, and as it had done by authorizing particular deductions from inmate funds." Id. at 586. As a result, the fees were charged "in the absence of specific legislative authority" and were "invalid." Id.

2.      *The 2009 Session Law*

All sheriffs' offices in the commonwealth were originally part of county government. That changed between 1997 and 2000 when the Massachusetts Legislature transferred seven of the fourteen sheriffs' offices to the commonwealth as part of the abolishment of their respective county governments. When Souza was filed in 2002, the remaining seven sheriffs' offices, including Bristol County's, were still operating within the county governments.

While Souza was making its way through the courts, this changed. As explained in the 2013 Report of the Special Commission on the Consolidation of Sheriffs' Offices 6–8 [#62-4], new legislation was precipitated by a shortfall towards the end of 2007 and 2008 in county revenues from Deed Excise Taxes used to cover sheriffs offices' expenses in seven counties. A version of this legislation was introduced in January 2008, but was not enacted. Hodgson's Additional Undisputed Facts ¶¶ 12–13 and Exh. B [#80]. A revised version of the bill, S.B. 2119, with the same title but including various changes, including the addition of Section 12, discussed below, was introduced in January 2009. Id. at ¶¶ 14–15 and Exh. C.

The final version, "An Act Transferring County Sheriffs to the Commonwealth" (the "2009 Session Law" or "Act"), including additional language in Section 22, also discussed below, was enacted on August 6, 2009, as "an emergency law, necessary for the immediate preservation of the public convenience." 2009 Mass. Legis. Serv. ch. 61. Some, but not all, sections were codified in the Massachusetts General Laws.[4]

---

[4] Some background regarding terminology may be helpful here. According to the Massachusetts Legislature's website, all bills that become laws are assigned chapter numbers based on the chronological order in which the bill was adopted. The chapters are referred to as "session laws" and are annually reported in a publication called the Acts and Resolves of Massachusetts. See https://malegislature.gov/Laws/SessionLaws. Some Session Laws are codified into the Massachusetts General Laws, as set forth in Mass. Gen. Laws ch. 3 § 51. "As a general matter, uncodified provisions of an act express the Legislature's view on some aspect of its operation; they are not the source of the substantive provisions of the law. Uncodified provisions may, for

Sections 3–5 of the 2009 Session Law transferred the offices, duties, and authority of the Barnstable, Bristol, Dukes, Nantucket, Norfolk, Plymouth, and Suffolk county sheriffs to the commonwealth. 2009 Session Law § 3–5 [#62-1]. This included "operation and management of the county jail and house of correction." Id. § 4. Section 1 of the 2009 Session Law amended an existing general law to account for the commonwealth paying salaries of the sheriffs, and Section 2 amended an existing law to create a Deeds Excise Fund from certain funds collected in the county of a transferred sheriff to satisfy unfunded county pension liabilities and other benefits, with other amounts to be transferred to the Commonwealth's General Fund. Id. §1–2. The Session Law provided further "all valid liabilities and debts of the office of the transferred sheriff" and  "all assets of the office of a transferred sheriff . . . shall become assets of the commonwealth, except as otherwise provided in this act." Id. § 6. Included in this conveyance were all rights, title, and interest in "all correctional facilities," "all leases and contracts," and "county correctional funds and other sources of income and revenue, to the credit of the office of a transferred sheriff on June 30, 2009." Id. § 7, 9, 11.

Section 12(a) of the 2009 Session Law provided that "[n]otwithstanding any general or special law to the contrary . . . revenues of the office of sheriff [of the affected counties] for civil process, inmate telephone and commissary funds shall remain with the office of sheriff." Section 12(b) provided that "notwithstanding any general or special law to the contrary, in order to

---

example, address when the legislation will take effect, state if it will have retroactive effect, and provide mechanisms for handling special situations during the transition period between the date of enactment and the effective date of the new statute." Chin v. Merriot, 470 Mass. 527, 532 (2015). It is not apparent why the portion of the Session Law on which Defendants rely, § 12(a), was not codified so that it could be easily accessed by the public. Nonetheless, the legal force of a Session Law is not necessarily augmented or reduced based on whether the Session Law is codified into the General Laws. See Com. v. Laltaprasad, 475 Mass. 692, 700 n.12 (2016) ("we did not intend to suggest . . . that uncodified provisions cannot or by definition do not serve as a source of substantive law").

encourage innovation and enterprise, each sheriff's office shall annually confer with the house and senate committees on ways and means regarding that sheriff's efforts to maximize and maintain grants, dedicated revenue accounts, revolving accounts, fee for service accounts and fees and payments from the federal, state and local governments and other such accounts and regarding which revenues shall remain with the sheriff's office." Section 12(c) provided that "[a]ny sheriff who has developed a revenue source derived apart from the state treasury may retain that funding to address the needs of the citizens within that county."

Section 22 provided for the creation of a special commission to make an investigation and study relative to reorganization and consolidation of sheriff's offices and to make formal recommendations, including best management practices addressing "the current use of civil process funds, including the amount of civil process funds collected by each county sheriff and the actual disposition of said funds currently, and, in the event of consolidation, realignment, elimination or reorganization [of sheriffs' offices], the collection and use of civil process fees in the future." Id. § 22(4).

4. *Does the 2009 Session Law Authorize County Sheriffs to Generate Revenue Using Inmate Calling Service Systems?*

The court now turns to the question posed by the pending motions: Did the 2009 Session Law provide the Sheriff with authority to generate revenue from inmate calling services? For the reasons set forth below, the court concludes that the 2009 Session Law confirmed the Legislatures' grant of authority to Sheriffs to derive revenue in this way, and that the Sheriff therefore did not act outside his authority.

The critical question is the meaning of § 12(a)'s provision that "revenues of the office of sheriff [of the affected counties] for civil process, inmate telephone and commissary funds shall remain with the office of sheriff." The court does not find the reference to "revenue . . . for . . .

11

inmate telephone and commissary funds" plain on its face. The court reads this provision, however, in harmony with another provision relating to inmate funds. In both state and county correctional facilities, the superintendent or jailer is required to be the custodian of an inmate's money and property. <u>See</u> Mass. Gen. Laws. ch. 127, § 3. In 1962, the Legislature recognized that these funds could generate income, and added the provision that "[a]ny interest accruing as a result of the deposit of such money may, by agreement with the prisoners concerned, be expended for the general welfare of all the inmates at the discretion of the superintendent." 1962 Mass. Legis. Serv. ch. 569; <u>see</u> Mass. Gen. Laws. ch. 127, § 3 (1962–1994). In 1994, the Legislature recognized a further source of revenue relating to these funds, amending the statute to provide that "[a]ny monies derived from interest earned upon the deposit of such money <u>and revenue generated by the sale or purchase of goods or services</u> to persons in the correctional facilities may be expended for the general welfare of all the inmates at the discretion of the superintendent." 1994 Mass. Legis. Serv. ch. 60, § 125 (emphasis added); <u>see</u> Mass. Gen. Laws. ch. 127, § 3 (1994).[5] The court reads Section 12(a) of the 2009 Legislation in harmony with Mass. Gen. Laws. ch. 127 § 3, understanding  "revenue . . . for . . . inmate telephone and commissary funds" to include both the interest on these inmate funds and "revenue generated by the sale or purchase of goods [at the commissary] or [telephone] services to persons in the correctional facilities." In other words, at the time the 2009 Session Law was enacted, the Massachusetts Legislature was aware that superintendents of correctional facilities, including the seven county sheriffs, were generating revenue from inmate telephone calls and canteen

---

[5] The corresponding regulation provides, in relevant part, that "any monies derived from interest earned upon the deposit of such moneys and revenue generated by the sale or purchase of goods or services to persons in county correctional facilities may be expended for the general welfare of all the inmates at the direction of the Sheriff/facility administrator." 103 Code Mass. Regs. § 911.08(2).

purchases, and it was the Legislature's intent to have such revenues "remain with the office of the sheriff" for these seven sheriffs' offices. 2009 Session Law § 12(a) [#62-1].

Plaintiffs present several contrary arguments. See Pls.' Mem. 10–19 [#71]. Plaintiffs argue first that the relevant portions of the 2009 Session Law are no more than "accounting instructions" setting forth how revenues from commissions should be handled during the one-time transfer of sheriffs' offices from the counties to the commonwealth. Pls.' Mem. 10–11 [#71]. Plaintiffs contend that "Section 12(a) states that revenues a sheriff obtains from 'inmate telephone and commissary funds shall remain with the office of the sheriff' *during the transition*" and that "any funds previously collected should 'remain' with the sheriff *during the one-time transfer*." Pls.' Mem. 11 [#71] (emphasis added). The qualifiers "during the transition" and "during the one-time transfer" do not appear in the statute, and Plaintiffs' construction would require the court to conclude that the Legislature also intended that the sheriffs' civil process revenues would also only remain with the sheriff "during the one-time transfer." This interpretation is explicitly contradicted by Section 22 of the Act, which establishes a commission tasked with studying possible ongoing operations of the sheriffs' offices, including "the amount of civil process funds collected by each county sheriff and the actual disposition of said funds currently and, in the event of consolidation, realignment, elimination or reorganization, the collection and use of civil process fees in the future." 2009 Session Law § 22(4) [#62–1]. Where the Legislature made apparent that the sheriffs' offices would continue to collect and use civil process funds after the 2009 consolidation in Section 22, the court cannot contort the language of Section 12 to say the opposite.

Plaintiffs' second and third argument are that the Legislature cannot grant authority by "vague implication" but must use language that constitutes an "express authorization," and that

13

the court should not read Section 12(a) in isolation, but rather should consider the confines of the cited provision and the broader purposes of the Act. Pls.' Mem. 12-13, 15–17 [#71]. Specifically, Plaintiffs argue that the 2009 Session Law does not use explicit language authorizing the revenue and was carefully crafted so as to *not* provide the county sheriffs any new authority, and thus the court should similarly constrain its reading of Section 12(a) so as to not grant the county sheriffs new authority. As noted earlier, however, in 1994 the Legislature authorized correctional facility superintendents to generate revenue from the sale of goods and services to inmates. Whether this provision included authority to generate revenue from inmate telephone services or canteen is not readily apparent and would require the court to engage in the same analysis the SJC performed in <u>Souza</u>: would charging inmates for telephone and canteen services frustrate the Legislature's broader statutory scheme? The 2009 Session Law effectively answered that question by making apparent that as to revenue derived from telephone and commissary accounts, the Legislature knew of the revenue and that, until the Legislature further amends the statutory scheme, the revenue would remain with the offices of the county sheriffs.

Fourth, Plaintiffs argue that Defendants' interpretation of the 2009 Session Law "make[s] no sense" insofar as it would authorize the sheriffs of these seven counties to charge telephone fees while failing to address the authority of sheriffs of the previously transferred counties to do the same. Pls.' Mem. 17–18 [#71]. Plaintiffs' argument is not persuasive considering that the 2009 Session Law was directed specifically towards these seven sheriffs' offices and, presumably, arose from negotiations between these seven sheriffs' offices and the Legislature.[6]

---

[6] The more interesting question may be the status of any revenue generated from inmates at facilities in the previously transferred counties or from inmates at state facilities. If this court is correct that the authority to generate revenue from inmate calls derives in part from Mass. Gen. Laws ch. 127, § 3, that same statute would limit the use of such revenue to "the general welfare of all the inmates at the discretion of the superintendent." However, a regulation adopted shortly

Fifth, Plaintiffs argue that Defendants' interpretation of the 2009 Session Law would have the effect of sanctioning the fees found invalid by the SJC in Souza, since Section 12(c) of the Act provides that "any sheriff who has developed a revenue source derived apart from the state treasury may retain that funding to address the needs of the citizens within that county." Id. at 18–19 (citing 2009 Session Law § 12(c)). Plaintiffs argue that, since the cost-of-care fees challenged in Souza were implemented before 2009, Section 12(c) of the 2009 Session Law would, under Defendants' interpretation, authorize them. Id.

But there is no conflict between the 2009 Session Law and Souza. Section 12(c) does not speak to generating revenue from inmates (the issue addressed in Mass. Gen. Laws ch. 127, § 3, and the reference to inmate telephone and commissary accounts in Section 12(a) of the 2009 Session Law), but of other (legal) sources of revenue funding the needs of the county's citizens generally. Instead, it is Section 12(a)—not 12(c)—that removes any ambiguity as to whether collecting revenue through inmate telephone and canteen sales is consistent with the Legislature's statutory scheme. Since Section 12(a) only references revenues from civil process, inmate telephone, and commissary, it cannot be used as authorization for the fees at issue in Souza, which concerned cost-of-care, medical care, haircut services, and GED testing. 455 Mass. at 574. Indeed, in this way, the 2009 Session Law affirms the SJC's conclusion in Souza, since the fees challenged in Souza are not enumerated in section 12(a).[7]

---

after the 2009 Session law was enacted provides, as to state-operated facilities, that "[a]ll commissions received that are derived from inmate shall be returned to the General Fund of the Commonwealth . . . . on a monthly basis." 103 Code Mass. Regs. § 482.06; 1136 Mass. Reg. 53 (Aug. 7, 2009). However, this question and the validity of that regulation are not before the court.

[7] The court recognizes that fees for haircuts, medical care, and GED testing could be considered "revenue generated by the sale or purchase of goods or services to persons in the correctional facilities" under Mass. Gen. Laws. ch. 127, § 3. But in contrast to the Legislative silence regarding inmate telephone calls and commissary accounts (other than in the 2009 Act), the

Accordingly, the court concludes that the revenues challenged in this petition are collected under authority granted to the county sheriffs by the Massachusetts Legislature, and thus Counts I and II, which request a declaratory judgment that the fees are unlawful, are subject to entry of judgment on the pleadings in favor of Defendants.

### B.  Count VI Against Securus and Motion for Class Certification

Throughout this litigation, Plaintiffs have rooted their argument that Securus is liable under ch. 93A solely on the allegation that Securus entered into an arrangement with the Sheriff to provide kickbacks in contravention of state law. As Plaintiffs allege in their complaint, Securus engaged in unfair and deceptive acts by: "charging and collecting money" from Plaintiffs "in order to make unlawful payments to the [Sheriff];" by "taking Plaintiffs' funds through coercion and without legal authority;" and, by "[u]sing funds derived from the telephone calls [to] pay 'commissions' and prearranged lump-sum payments to the [Sheriff] in violation of Massachusetts statutes and regulations." Compl. ¶ 97 [#1-1]. Then, at the hearing on Defendants' motions to dismiss, Plaintiffs' reasserted that their allegations did not arise out of the rates Securus charged, but that Securus facilitated the Sheriffs' violation of state law by paying the Sheriff unlawful commissions. See, e.g., Tr. Hr'g on Mot. Dismiss 57:18–22 [#43] ("Securus is benefitting from a contract by helping the Bristol County Sheriff's Office circumvent Massachusetts law and facilitating what the county lacks the authority to do on its own. We wouldn't be here today if Securus had instead kept all the money for itself.") Finally, Plaintiffs' Opposition [#69] to Securus's motion for judgment on the pleadings and Plaintiffs' arguments at

---

Legislature had enacted statutory provisions relating to haircuts, medical care, and GED testing critical to Souza's analysis. See Souza, 455 Mass. at 583 (citing Mass. Gen. Laws ch. 124, § 1(r) (haircut fee); Mass. Gen. Laws ch. 127, § 92A (GED fees); Mass. Gen. Laws ch. 124, § 1(t) (medical care)).

the hearing continued to eschew any other basis for Securus's liability under ch. 93A. Accordingly, in light of the court's determination on Count I that the generation of revenue from inmate telephone was within the county sheriffs' authority, Securus is entitled to judgment on the pleadings. Plaintiffs' Motion for Class Certification [#76], which only requests certification of a class as to Count VI against Securus, is consequently denied.

V.     CONCLUSION

Plaintiffs' concern that the Sheriff is generating revenue through charges paid by inmates' families and attorneys for phone service is timely as our communities consider how the criminal justice system may best achieve its stated goals. However, these policy questions are for the Legislature not the court. The court is tasked instead with determining the legal question of whether the Massachusetts Legislature granted the Sheriffs authority to generate revenues from inmate telephone services. On that question, the court finds that the Legislature has granted the Sheriff that authority and, accordingly, the claims brought against him and Securus must be dismissed. Thus, Sheriff Hodgson's Motion for Judgment on the Pleadings [#61] and Securus's Motion for Judgment on the Pleadings [#65] are ALLOWED. Plaintiffs' Motion for Partial Summary Judgment on Count I [#70] and Motion for Class Certification [#76] are DENIED.

IT IS SO ORDERED.

Date: June 22, 2020                                         /s/ Indira Talwani
                                                           United States District Judge