UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLIE PEARSON, ROGER BURRELL, BRIAN GIVENS, and THE LAW OFFICES OF MARK BOOKER, on behalf of themselves and those similarly situated, *<br><br>Plaintiffs, *<br><br>v. *<br><br>THOMAS M. HODGSON, individually and his official capacity as Sheriff of Bristol County, and SECURUS TECHNOLOGIES, INC., *<br><br>Defendants. * | Civil Action No. 18-cv-11130-IT |

MEMORANDUM & ORDER VACATING JUDGMENT
AND GRANTING REQUEST TO CERTIFY QUESTION TO THE
MASSACHUSETTS SUPREME JUDICIAL COURT

March 31, 2021

TALWANI, D.J.

Plaintiffs to this action sought declaratory relief stating that Thomas Hodgson, the Sheriff of Bristol County, Massachusetts ("Sheriff Hodgson" or "Sheriff"), violated Massachusetts law when he procured an inmate calling system to raise revenues for the office of the Sheriff. Plaintiffs also alleged that the vendor of the inmate calling system, Securus Technologies Inc. ("Securus"), engaged in unfair and deceptive practices in violation of Massachusetts' consumer protection laws, Mass. Gen. Laws ch. 93A. In a Memorandum and Order [#114], the court granted Defendants' motions for judgment on the pleadings. In so ruling, the court found that two different provisions of Massachusetts law—an uncodified section of a 2009 Session Law and Mass. Gen Laws. Ch. 127, § 3—provided the necessary legislative authority for the inmate

calling system used by Sheriff Hodgson. Importantly, the court found that neither statute was necessarily plain on its face and instead the court read the two provisions together to find that the Legislature knew that county sheriffs were using inmate calling systems to generate revenues and approved this practice. See Mem. & Order 14 [#114]. Accordingly, the court entered judgment in favor of Defendants. See Judgment [#115].

However, the court's finding that one of those two statutes, Mass. Gen. Laws ch. 127, § 3, was critical for interpreting the meaning of the 2009 Session Law was not an argument advanced by either party. Indeed, no party cited to, or relied upon, that statute in their briefs. And, at oral argument, despite the court's inquiry, see Elec. Order [#111], neither side agreed that the statute was relevant to the question presented. Nevertheless, the court's Memorandum and Order [#114] concluded that the statute was critical for understanding the broader statutory scheme and for contextualizing the 2009 Session Law.

Now before the court is Plaintiffs' Motion to Alter or Amend the Judgment and Certify the Question of Law to the Massachusetts Supreme Judicial Court [#118]. Plaintiffs argue that the court's analysis of ch. 127, § 3 ("the statute") was factually and legally flawed. Namely, Plaintiffs contend, inter alia, that (1) the statute only applies to the revenues generated from goods and services sold *to inmates* whereas the inmate calling system at question did not charge inmates, but instead charged those receiving the calls; (2) the statute is inapplicable to the commission-based contract between the Sheriff and Securus; (3) the court interpreted the statute in a manner inconsistent with the Supreme Judicial Court's interpretation of the same provision; (4) the court failed to interpret the statute in the context of other provisions contained in the enacting statute; (5) the statute did not intrinsically provide the sheriffs with any authority to sell goods and services to inmates; (6) the court's interpretation of the statute was in conflict with the

2009 Session Law; (7) the court's interpretation of the statute was inconsistent with the Massachusetts Department of Correction's interpretation of the same statute; and (8) the statute should be read only to apply to the sale of goods and services by prisoners to other prisoners. Pls.' Mot. Amend Judgment 4–16 [#118].

Defendants do not wrestle with the merits of Plaintiffs' arguments, but contend instead that the court addressed and rejected these points in its Memorandum and Order [#114] and must first conclude that the June 2020 Memorandum and Order constitutes a "manifest error of law"[1] before granting reconsideration. Hodgson Opp'n 3 [#119] (citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 (1st Cir. 2005)); see also Securus Opp'n [#120]. However, the court's authority to set aside a judgment under Rule 59(e) is not as constrained as Defendants contend. Relief under Rule 59(e) constitutes "an extraordinary remedy which should be used sparingly," Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)), but "[s]ince specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (3d ed.). Indeed, in Venegas-Hernandez v. Sonolux Recs., the First Circuit recognized, and held, that, absent new evidence, trial judges are not strictly constrained to setting aside a judgment only where there has been a manifest error of law. 370 F.3d 183, 195 (1st Cir. 2004). In that case, the First Circuit upheld the district court's decision to grant a Rule 59(e) motion where "the peculiar context" of that case resulted in an initial ruling in which "the

---

[1] A manifest error is an "error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Manifest Error, Black's Law Dictionary (11th ed. 2019). See also Venegas-Hernandez v. Sonolux Recs., 370 F.3d 183, 195 (1st Cir. 2004) (citing Black's Law Dictionary for the definition of "manifest error of law" in the context of a Rule 59(e) motion).

issue was never fairly presented" to the court. Id. Consistent with the First Circuit's ruling in Venegas-Hernandez, courts within and without this district have explicitly recognized that a Rule 59(e) motion is proper "where the Court has made a decision outside the adversarial issues presented to the Court by the parties." Rivera v. Melendez, 291 F.R.D. 21, 23 (D.P.R. 2013) (quoting Dugdale, Inc. v. Alcatel–Lucent USA, Inc., et al., 2011 WL 3298504 (S.D. Ind., August 11, 2011)); see also Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983) (same); Intermec Techs. Corp. v. Palm Inc., 830 F. Supp. 2d 1, 4 (D. Del. 2011) (same). This basis for Rule 59(e) relief makes good sense as it ensures that parties have an opportunity to be heard, while still "balanc[ing] the need for finality with the need for justice." Venegas-Hernandez, 370 F.3d at 190.

Here, the court reached a decision outside the adversarial issues presented by the parties. The court relied extensively on ch. 127, § 3, despite no party having briefed the proper construction and relevance of that statute. Now that Plaintiffs have articulated their contrary argument, the court concludes that these issues should be analyzed and addressed with the benefit of the adversarial process for justice to be done. Accordingly, the court sets aside the June 22, 2020 Memorandum and Order [#114] and Judgment [#115].[2]

---

[2] Plaintiff's Rule 59(e) motion was filed five minutes after 6:00 p.m. on the 28th day following the entry of judgment. Sheriff Hodgson asserts that the motion is therefore untimely and may not be considered. See Hodgson Opp'n 11 [#119]. Sheriff Hodgson is correct that under Fed. R. Civ. P. 6(a)(2), the court may not extend the 28-day deadline for motions brought under Rule 59(e). See also Banister v. Davis, 140 S. Ct. 1698, 1700 (2020) ("Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend a district court's judgment within 28 days from the entry of judgment, with no possibility of an extension"). Sheriff Hodgson is also correct that this district's Local Rule 5.4(d) requires electronic submissions to be filed by 6:00 p.m. But under Fed. R. Civ. P. 6(a)(4)(A), the last day for filing is midnight in the court's time zone "[u]nless a different time is set by a statute, local rule or court order" (emphasis added), and under Local Rule 5.4(a) the 6:00 p.m. deadline applies "[u]nless . . . otherwise ordered by the court." Accordingly, the court is authorized to extend the 6:00 p.m. filing deadline up until midnight on the 28th day. In light of the specific circumstances present here, the court orders the

The court next turns to Plaintiffs' request that the court certify the determinative question of law presented by Defendants' Motions for Judgment on the Pleadings [#61], [#65] and Plaintiffs' Motion for Partial Summary Judgment on Count I [#70] to the Massachusetts Supreme Judicial Court ("SJC"). Plaintiffs argue that the requirements for certification under the SJC's rules are met and that other considerations militate strongly in favor of certification. The court agrees.

This court may certify questions to the SJC where there are questions of law that: (1) "may be determinative of the cause then pending in the certifying court," and (2) are not subject to "controlling precedent" from the decisions of the SJC. SJC Rule 1:03(2). Both elements are met here.

As to the first element, the question of law presented—whether the Sheriff may collect revenue using inmate calling services—is the central question presented by this case. Although Securus argues that resolution of this issue is not necessary for its defense because Securus has an additional argument as to why the ch. 93A claim fails, Securus does not dispute that the issue is central to Plaintiffs' claims as to Sheriff Hodgson and that a resolution adverse to Plaintiffs would also resolve all claims against Securus. See Mem. & Order 16 [#114] (discussing how Plaintiffs did not challenge Securus' practices on grounds that would stand alone from Plaintiffs' claim that the Sheriff was acting outside of his legislative authority). Indeed, Securus' lead argument in its Memorandum in Support of Motion for Judgment on the Pleadings [#66] is the alleged legality of the Sheriff's collection of revenue from inmate calling services.

---

6:00 p.m. deadline provided by Local Rule 5.4(d) set aside, nunc pro tunc, and finds Plaintiffs' motion to have been timely filed.

As to the second element, the court finds that there is no "controlling precedent" from decisions of the SJC. The First Circuit has interpreted the "no controlling precedent" element to "to prevent certification in cases when 'the course the state court would take is reasonably clear.'" Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 n.3 (1st Cir. 2017) (quoting Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013)). Although Plaintiffs have argued throughout that this case is controlled by Souza v. Sheriff of Bristol County, 455 Mass. 573 (2010), the court and the parties have struggled with this question throughout the course of this litigation.

In addition, the court finds that the specific question presented by this case not only meets the requirements for certification, but also *should be* certified considering the overwhelming local interest and the principles of federalism at play. The dispositive motions focused on an uncodified session law enacted in connection with the transfer of county sheriffs to the Commonwealth, a law of such local interest that counsel for neither party had even noted the existence of the law in connection with Defendants' motions to dismiss.

Furthermore, Plaintiffs filed this action in state court and asserted only state claims. See Compl. [#1-1]. Defendants asserted that this court held jurisdiction to this action under the Class Action Fairness Act ("CAFA") since the action was pleaded as a class action with an amount in controversy greater than $5,000,000, while also meeting CAFA's minimal diversity requirement because Securus was a citizen of a different State than at least one member of the class of plaintiffs. See Notice of Removal [#1] (citing 28 U.S.C. § 1332(d)(2)). Given the nature of the claims here, and the local nature of the dispute, the federal interests in this action, even in light of CAFA, are minimal. In contrast, the state interests are substantial. At bottom, this is a case about the powers that have or have not been delegated to the county sheriffs by the state Legislature.

As the First Circuit wrote in Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, where cases involve the authority of state actors under state law, the dispute becomes "a matter of peculiarly state and local concern." 40 F.3d 18, 24 (1st Cir. 1994). As was true there and is equally true here "[w]here possible, state courts should rule in the first instance on the scope of local governmental authority." Id.

Defendants argue finally that certification is improper since Plaintiffs only sought certification after receiving an adverse ruling. See Hodgson Opp'n 10 [#119]; Securus Opp'n 5 [#120]. Defendants are correct that, as a general matter, "[t]he practice of requesting certification after an adverse judgment has been entered should be discouraged." Securus Opp'n 5 [#120] (quoting Bos. Car Co. v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 (1st Cir. 1992) (quoting Perkins v. Clark Equipment Co., 823 F.2d 207, 210 (8th Cir. 1987))). However, the court has concluded that the adverse ruling and judgment must be set aside independent of the certification question, and therefore this concern is no longer present.

For the reasons set forth above, the court will, by separate order, certify the following question of Massachusetts law to the SJC:

> Did the Massachusetts Legislature, through the provisions of 2009 Mass. Legis. Serv. Ch. 61 (S.B. 2119) §§ 12(a), 12(c), 15, or M. G. L. ch. 127, § 3, taken separately or together, authorize the Bristol County Sheriff's Office to raise revenues for the Office of the Sheriff through inmate calling service contracts?

IT IS SO ORDERED.

Date: March 31, 2021                                   /s/ Indira Talwani
                                                       United States District Judge